# EXHIBIT B

August 22, 2023

Sent Via E-mail: copyright@kickstarter.com, support@kickstarter.com

Re: DMCA Counter Notice re Anymaka: The Portable Hammock Stand that Sets Up in 3 Seconds

Dear Kickstarter Copyright Team,

I am writing to you to avail myself of my rights under the Digital Millennium Copyright Act (DMCA). This letter is a Counter-Notification as authorized in § 512(g) of the U.S. Copyright Law. My contact information is as follows:

**Description of Removed/Disabled Material:** Anymaka-the-portable-hammock-stand-that-setsup-in-3-seconds

**The material in question formerly appeared on Kickstarter under the following URLs:** https://www.kickstarter.com/projects/anymaka/anymaka-the-portable-hammock-stand-that-setsup-in-3-seconds

**Subscriber Name:** Easthills Inc.

**Subscriber Address:** 201 E CENTER ST STE 112 #3500, ANAHEIM, CA 92805, US

**Subscriber Telephone Number:** (872)222-6357

**Address for Service of Process:** 201 E CENTER ST STE 112 #3500, ANAHEIM, CA 92805, US

I have a good faith belief that the material removed or disabled following the Notice of Infringement was removed or disabled because of mistake or misidentification of the material.

In consideration of the below, demand is hereby made by Easthills Inc., owner of the Kickstarter campaign entitled "Anymaka: The Portable Hammock Stand that Sets Up in 3 Seconds" (the "Kickstarter Campaign") for the immediate reinstatement and resumption of said Kickstarter campaign as provided by Title 17 U.S.C. 512(g)(2) and (3).

I consent to the jurisdiction of the Federal District Court in which Kickstarter's may be found, namely, the Eastern District of New York. I agree to accept service of process from the person who provided the Notice of Infringement or an agent of such person.The Kickstarter campaign was removed or disabled from Kickstarter as a result of a complaint letter submitted by Loyal I.P. Law on behalf of Kammok Holdings, LLC ("Kammock").  The letter from Kammock claims Copyright, Trademark, and Patent infringement. Each of these are bad faith assertions of rights that Kammock either does not, or cannot – as a matter of law – have.

## Kammock Does Not – and Cannot – Have A Valid Copyright

Kammock has provided no tangible evidence that the material in question is in fact copyrighted as claimed and has not provided any verification of ownership of any rights. I have a good faith belief that Kammock does not own any rights in the alleged copyright and that our products are non-infringing. The allegation of copyright violation is therefore in dispute, and at present unsupported.

Kammock claims ownership of a copyright, but does not identify any copyright application or registration. In the Second Circuit, in which Kickstarter is located and jurisdictional consent is hereunder provided, a valid copyright registration is required for any copyright lawsuit to be filed by a U.S. citizen or entity. Kammock claims to be of Austin, Texas. Therefore, Kammock would require a valid U.S. registered copyright to bring a proper lawsuit for copyright infringement. No such valid U.S. registered copyright was provided. We believe this is because none exists and have confirmed with Kammock's counsel that they do not have any copyright applications or registrations.

Kammock vaguely claims copyright protection in the design of the oval-shaped anchor points on a hammock stand and a clamshell hammock holder. These design elements are not subject to copyright protection under U.S. law.

First of all, any element that is in reference to the utility patent 11,330,893 claimed by Kammock cannot be subject of copyright as copyrights do not extend to useful articles. *Star Athletica, LLC, v. Varsity Brands, Inc*, 137 S. Ct. 1002, 1008. Nor does it protect the overall form, shape, or configuration of a useful article. *See id.* at 1010, 1014. While the pictorial, graphic, or sculptural features of the design of a useful article may be eligible for copyright protection, the features must be able to be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

The Copyright Office will determine if the separable feature "would qualify as a protectable pictorial, graphic, or sculptural work – either on its own or fixed in some other tangible medium of expression – if it were imagined separately from the useful article into which it is incorporated." *Id.* at 1007. In this matter, the separable material would merely be an oval shaped piece of metal or the clamshell shape from the holder.

The oval shaped piece of metal and the clamshell shape from the holder cannot be removed from their utilitarian functions, as both are specifically designed to secure, clasp, hold onto, or connect two different items. However, even if the aspects could be separated from their utilitarian function, they would still not be subject to copyright protection.

Even if the separability test has been satisfied, the U.S. Copyright Office still must determine if the design is sufficiently original to warrant registration. *See Star Athletica*, 137 S. Ct. at 1012 & n.1. The term "original" means that the design must be "independently created by the author" and must possess "at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 345 (1991). A standard oval and basic clamshell shape lack the necessary degree of creativity to be protectable.

Furthermore, the Copyright Act does not protect common geometric shapes, either in two-dimensional or three-dimensional form. There are numerous common geometric shapes, including, without limitation, straight or ***curved lines***, circles, ***ovals***, spheres, triangles, cones, squares, cubes, rectangles, diamonds, trapezoids, parallelograms, pentagons, hexagons, heptagons, octagons, and decagons. U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 906.01 (3d ed. 2021) (emphasis added).

The oval metal piece would not be protected as a common geometric shape, and the clamshell shape is just a curved line in a semi-circle shape. When separated from the utilitarian function of the design, if even possible, the only possible remaining elements are common geometric shapes, which are fundamentally not given protection as copyrights.

Therefore, Kammock has no valid copyright registration *or even an application* on which to rely, Kammock would be unable to obtain any such copyright registration, and Kammock has no valid copyright protection in the elements Kammock is attempting to vaguely claim are copyrightable.

## Our Product Does Not Infringe Upon Kammock's Patent

Kammock's letter also alleges patent infringement. Kammock asserts that Anymaka's product infringes upon Kammock's U.S. Patent No. 11,330,893 ('893 Patent). Kammock's assertions of patent infringement in a DMCA takedown notice are inappropriate. We would however like to take the opportunity to address the other alleged intellectual property infringement below including the completely baseless claim of patent infringement claim  by Kammock.

Anymaka's  product ("the product") is different from '893 Patent claims and the product does not infringe upon any claim of '893 Patent.

The structure of '893 Patent is to adapt various usage requirements in different physical space and conditions. The purpose is achieved by changing the footprint adjustment bar to adjust the covering area (dimensions between the frame's contacts on the ground). While the purpose of the accused product is to achieve rapid folding and unfolding of the frame and save storage space. The pedestal of the product is used in as the center, with two supporting arms and four supporting feet are respectively connected to the pedestal. In an unfolded state, the two supporting arms are unfolded up to fix the hammock, and four supporting feet unfold down to the ground to support the whole system. In a folded state, the supporting arms and the supporting feet are gathered roughly in parallel to save storage space in idle state. In contrast, the structure as defined and claimed in '893 Patent solves the problem of  "The broad range of users and use contexts for suspension seats presents significant opportunities for improvement in the design of suspension seat frames, both in terms of accommodating hetero-geneous users and in terms of adjusting the frames' footprints within a physical space." *See column 1 lines 30-35 of '893 Patent*. '893 Patent

provides solution to this problem by describing and claiming "an adjustable-footprint suspension seat frame includes three or more feet, a first cantilever arm with a first anchor for a suspension seat, a second cantilever arm with a second anchor for the suspension seat and a first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm." *See column 1 lines 41-46 of '893 Patent*.

Among other limitations, claim 1 of '893 Patent has the following limitation: "a first footprint adjustment bar connecting the first canti-lever arm to the second cantilever arm." *See '893 Patent column 12 lines 43-44*. The accused product does not have a first footprint adjustment bar as documented in Claim 1 of '893 Patent. The first footprint adjustment bar of claim 1 is actually used to **adjust** the dimensions between the feet, while the product doesn't have the parts that achieve the corresponding function. In the claim chart Kammock marked the product's pedestal as being the same as to claim 1's limitation of "footprint adjustment bar." The pedestal in the product does not provide adjustment. The footprint of our product is **fixed** rather than adjustable.

Our analysis of the Patent against the accused product shows that there is no infringement either direct or under the doctrine of equivalence. There is no direct infringement because the product is missing the required "footprint adjustment bar" as described above. There is no infringement under doctrine of equivalence because there is no element in the accused product that corresponds to footprint adjustment bar. The result and the way the result is achieved by the pedestal of the accused product are very different than the footprint adjustment bar of the Patent. As a result function-way-result test fails.

Kammock's baseless patent infringement claim should be given no weight at all. Furthermore, Kickstart's own rules state that the only way to take down a campaign for patent infringement will require a court order. There is no court order in this instance as no Court case has been filed. Even if Kammock initiates a lawsuit in Federal District Court, they will not be successful in obtaining a court order as there is no infringement. Anymaka is confident that there is no infringement and is willing to defend any potential lawsuit for patent infringement and at the same time indemnify Kickstart against any lawsuit asserting contributory infringement.

<u>Kammock Does Not Have a Valid Trade Dress</u>

Kammock's letter alleges trade dress infringement based on the "clamshell hammock holder" and "anchor" portion of the product.

The design claimed by Kammock cannot be a trade dress because the design has no acquired distinctiveness and the product design is functional.

The claimed trade dress consists of a nondistinctive product design that is not registerable on the Principal Register without sufficient proof of acquired distinctiveness. Trademark Act Sections 1, 2, and 45, 15 U.S.C. §§1051- 1052, 1127; Kammock cannot establish sufficient proof of distinctiveness of the alleged Trade dress.

A product design can never be inherently distinctive as a matter of law; consumers are aware that such designs are intended to render the goods more useful or appealing rather than identify their source. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. at 212-13, 54 USPQ2d at 1068-69; *In re Slokevage*, 441 F.3d at 962, 78 USPQ2d at 1399. Thus, consumer predisposition to equate a product design with its source does not exist. *Wal-Mart Stores, Inc. v. Samara Bros.,* 529 U.S. at 213, 54 USPQ2d at 1069.

### **Functionality**

The "clamshell hammock holder" and "anchor" portion of the product.appear to be a functional design for the identified goods. Trademark Act Section 2I(5), 15 U.S.C. §1052(e)(5); see TMEP §1202.02(a)-(a)(ii). A feature is functional if it is "'essential to the use or purpose of the [product]'" or "'it affects the cost or quality of the [product].'" *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32, 58 USPQ2d 1001, 1006 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165, 34 USPQ2d 1161,1163-64 (1995)); *Inwood Labs., Inc., v. Ives Labs., Inc.*, 456 U.S. 844, 850 n.10, 214 USPQ 1, 4 n.10 (1982); TMEP §1202.02(a)(iii)(A).

Determining functionality normally involves consideration of one or more of the following factors, commonly known as the Morton-Norwich factors: (1) The existence of a utility patent disclosing the utilitarian advantages of the design sought to be registered, (2) advertising materials of the applicant that tout the design's utilitarian advantages, (3) the availability to competitors of alternative designs, and (4) facts indicating that the design results in a comparatively simple or inexpensive method of manufacture. *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1374-75, 102 USPQ2d 1372, 1377 (Fed. Cir. 2012) (citing *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 1340-41, 213 USPQ 9, 15-16 (C.C.P.A. 1982)); TMEP §1202.02(a)(v).

It is not required that all four factors be proven in every case, nor do all four factors have to weigh in favor of functionality to support a functionality refusal. *Poly-America, LP v. Ill. Tool Works, Inc.*, 124 USPQ2d 1508, 1514 (TTAB 2017) (citing *In re Change Wind Corp.*, 123 USPQ2d 1453, 1456 (TTAB 2017); *In re Heatcon, Inc.*, 116 USPQ2d 1366, 1370 (TTAB 2015)); TMEP §1202.02(a)(v).

Further evidence and considerations regarding functionality will be discussed according the Morton-Norwich Factors:

*Existence of a Utility Patent*

There is a utility patent disclosing the utilitarian advantages of the design sought to be registered. US Patent Number 11,330,893, ("The Patent") the very patent Kammock used in their letter to Kickstarter. The utility patent discloses that the shape and design of the device is dictated by functionality. The "clamshell hammock holder" that is claimed in the letter, the Utility Patent

addresses as a "cradle". The Patent discloses the functionality under Column 6 lines 1-7 explaining that the cradles comprise guides disposed at the ends of the arms to "support and spread the tensile members of a suspension sI"... "enhancing the comfort and ease of entry to the hammock." Furthermore, claim 1 of the Patent, column 12 lines 32 and 39, claims the first cradle and second cradle as part of the invention. The Patent also discloses the function of the anchors, which are referred to in the Patent as side clips in Column 5 line 51-55 and again in column 3 lines 43-48.

These cradles and anchors/side clips discussed in the Patent are the exact product design Kammock is attempting to claim is a trade dress. However, A utility patent claiming the design features at issue is strong evidence that those features are functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 29-30, 58 USPQ2d 1001, 1005 (2001); *In re Becton, Dickinson & Co.,* 675 F.3d 1368, 1375, 102 USPQ2d 1372, 1377 (Fed. Cir. 2012); see TMEP§1202.02(a)(iv), (a)(v)(A). However, a patent need not claim the exact configuration for which trademark protection is sought to prove functionality. *See In re Becton, Dickinson & Co.,* 675 F.3d at 1375, 102 USPQ2d at 1377 (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. at 32-33, 34-35, 58 USPQ2d at 1005). "[S]tatements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality." *In re Loggerhead Tools, LLC*, 119 USPQ2d 1429, 1432 (TTAB 2016) (quoting *In re Becton, Dickinson & Co.*, 675 F.3d at 1375, 102 USPQ2d at 1377)

### *The Availability of Competitors of Alternative Designs*

The product design is incapable of functioning as an indicator of source because it is a basic design in the industry used by others. There are multiple products by sother manufacture with the same design can be/ The design of the cradle and anchors/clips is common in the marketplace and alternative designs are not as prevalent.

### **Distinctiveness**

TMEP 1202.02 (b)(i) indicates a product design trade dress is never inherently distinctive and is not registrable on the principal register unless the applicant establishes the mark has acquired distinctiveness. Furthermore, common or basic shapes are not registrable on the Principal Register under a 2(f) acquired distinctiveness. Here, the accused trade dress is a product design as the Applicant is trying to claim part of a patented product. Applicant is not trying to trademark the product packaging, but rather a key component of the patented product itself. In "close cases," courts have been instructed to err on the side of classifying trade dress as product design instead of product packaging, thereby requiring proof of secondary meaning. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 215, 54 USPQ2d 1065, 1070 (2000). Furthermore, as stated above, the product design is incapable of functioning as an indicator of source because it is basic design in the industry used by others. The fact the product design is used by others in the industry, clearly shows the use is not substantially exclusive, which is required to prove distinctiveness has been acquired.

In view of the above, the overall design of the applied for mark is functional and lacks distinctiveness.

### **CONCLUSION**

For all of the foregoing reasons, each and every one of Kammock's claims that we have infringed on their intellectual property are completely frivolous and have no basis in fact or law. All of the theories that Kammock has laid out are baseless and are rights that Kammock either does not, or cannot, have: (1) Kammock claims copyright infringement but has not filed for a copyright application and therefore does not have a copyright registration – and even if Kammock had applied for protection, it would not be able to, as a matter of law have protection for simple useful product design elements. (2) Kammock claims patent infringement but the required element of an *adjustable* footprint adjustment bar in the patent claims is simply not present in our product which instead has a fixed pedestal. (3) Kammock claims trade dress infringement but their product design elements they claim are functional and cannot have the requisite distinctiveness to obtain trade dress protection. Accordingly, through this DMCA counter notice we request an immediate reinstatement and resumption of our Kickstarter campaign and any other content Kickstarter may have taken down or removed in response to Kammock's DMCA takedown request.

I declare under the penalty of perjury laws of the United States of America that this notification and the information contained herein is true and correct.

<u>August 22, 2023</u>           _____*XI Lin*_____
Date                                              XI Lin