## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02405-SCK-MEH

KAMMOK HOLDINGS, LLC,

      Plaintiff

v.

EASTHILLS, INC.; and DOES 1-10,

      Defendants

v.

KAMMOK HOLDINGS, LLC; LOYAL IP LAW, P.C.;
MARSHALL OLSON & HALL, P.C.; AND CAMBRIDGE LAW, LLC

      Counterclaim Defendants.

---

## DEFENDANT EASTHILLS, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO FIRST AMENDED COMPLAINT

---

Defendant EASTHILLS, INC. ("EASTHILLS"), by and through its undersigned counsel, hereby submits its Answer, Affirmative Defenses, and Counterclaims in response to Plaintiff KAMMOK's ("Plaintiff") First Amended Complaint (the "Complaint") [Dkt. No. 38], as follows:

### PARTIES

1.    EASTHILLS lacks knowledge or information sufficient to form a belief about the allegations in paragraph 1 of the Complaint and, therefore, denies the same.

2.     EASTHILLS lacks knowledge or information sufficient to form a belief about the allegations in paragraph 2 of the Complaint and, therefore, denies the same.

3.     EASTHILLS admits the allegations contained in paragraph 3 of the Complaint.

4.     EASTHILLS states that allegations asserted against "Defendants Does 1 through 10" are not permitted under the Federal Rules of Civil Procedure and, as such, are improperly included in the Complaint.

5.     EASTHILLS incorporates its response to the allegations set forth in paragraph 4 of the Complaint as its response to the allegations contained in paragraph 5.

## JURISDICTION AND VENUE

6.     EASTHILLS admits the allegations contained in paragraph 6 of the Complaint.

7.     EASTHILLS admits the allegations contained in paragraph 7 of the Complaint.

## GENERAL ALLEGATIONS

8.     EASTHILLS lacks knowledge or information sufficient to form a belief about the allegations in paragraph 8 of the Complaint and, therefore, denies the same.

9.     EASTHILLS lacks knowledge or information sufficient to form a belief about the allegations in paragraph 9 of the Complaint and, therefore, denies the same.

10.     EASTHILLS lacks knowledge or information sufficient to form a belief about the allegations in paragraph 10 of the Complaint and, therefore, denies the same.

11.    EASTHILLS denies the allegations contained in paragraph 11 of the Complaint.

12.    EASTHILLS denies the allegations in paragraph 12 of the Complaint.

13.    EASTHILLS admits that United States Patent No. 11,330,893 ("the '893 Patent") describes numerous utilitarian aspects of the Swiftlet. EASTHILLS denies that a copy of the '893 Patent is attached to the Complaint as Exhibit 1. EASTHILLS denies all other allegations contained in paragraph 13.

14.    EASTHILLS admits that the allegations in paragraph 15(a)–(d) represent some, but not all, of the useful, functional, and utilitarian characteristics described in the '893 Patent. EASTHILLS denies all other allegations contained in paragraph 13.

15.    EASTHILLS denies the allegations in paragraph 16 of the Complaint.

16.    EASTHILLS denies the allegations in paragraph 16 of the Complaint.

17.    EASTHILLS admits the allegations contained in Paragraph 17 of the Complaint.

18.    EASTHILLS admits that it had an on-going Kickstarter campaign for the Anymaka Hammock Stand. EASTHILLS lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 18 of the Complaint and, therefore, denies the same.

19.    EASTHILLS denies the allegations contained in paragraph 19 of the Complaint.

20.    EASTHILLS denies the allegations contained in paragraph 20 of the Complaint.

21.    EASTHILLS denies the allegations contained in paragraph 21 of the Complaint.

22.     EASTHILLS denies the allegations contained in paragraph 22 of the Complaint.

23.     EASTHILLS denies the allegations contained in paragraph 23 of the Complaint.

24.     EASTHILLS admits that the Anymaka hammock includes a carry bag but lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 24 of the Complaint and, therefore, denies the same.

25.     EASTHILLS denies the allegations contained in paragraph 25 of the Complaint.

26.     EASTHILLS admits that it received a letter from Plaintiff's counsel dated July 13, 2023 but lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 26 of the Complaint and, therefore, denies the same.

27.     EASTHILLS admits that the letter from Plaintiff's counsel dated July 13, 2023 alleged patent infringement but lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 27 of the Complaint and, therefore, denies the same.

28.     EASTHILLS admits that the letter from Plaintiff's counsel dated July 13, 2023 demanded that EASTHILLS end its Kickstarter campaign but lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 28 of the Complaint and, therefore, denies the same.

29.     EASTHILLS admits that it raised funds in its Kickstarter campaign and made pre-sale offerings but lacks knowledge or information sufficient to form a belief about the remaining allegations in paragraph 29 of the Complaint and, therefore, denies the same.

30.    EASTHILLS admits the allegations contained in paragraph 30 of the Complaint.

31.    EASTHILLS admits that it caused to be published an internet article titled "Production & Shipping Update" (the "Update") and asserts that contents of the Update speak for itself and on that basis denies the allegations in paragraph 31 of the Complaint to the extent they are inconsistent. and, therefore, denies the same.

32.    EASTHILLS admits that it caused to be published an internet article titled "Production & Shipping Update" (the "Update") and asserts that contents of the Update speak for itself and on that basis denies the allegations in paragraph 32 of the Complaint to the extent they are inconsistent. and, therefore, denies the same.

33.    EASTHILLS admits that it caused to be published the Update and asserts that contents of the Update speak for itself and on that basis denies the allegations in paragraph 33 of the Complaint to the extent they are inconsistent. and, therefore, denies the same.

34.    EASTHILLS admits that it caused to be published the Update and asserts that contents of the Update speak for itself and on that basis denies the allegations in paragraph 35 of the Complaint to the extent they are inconsistent. and, therefore, denies the same.

35.    EASTHILLS admits that it caused to be published the Update and asserts that contents of the Update speak for itself and on that basis denies the allegations in paragraph 35 of the Complaint to the extent they are inconsistent. and, therefore, denies the same.

## FIRST CAUSE OF ACTION

### (Patent Infringement – 35 U.S.C. § 271)

36.    EASTHILLS incorporate their responses to the allegations contained in Paragraphs 1 – 35 above as if fully restated herein.

ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND          CASE NO. 1:23-cv-02405-SKC-MEH
COUNTERCLAIMS TO FIRST AMENDED COMPLAINT

37.     EASTHILLS denies the allegations contained in paragraph 37 of the Complaint.

38.     EASTHILLS denies the allegations in paragraph 38 of the Complaint.

39.     EASTHILLS denies the allegations in paragraph 39 of the Complaint.

40.     EASTHILLS denies the allegations in paragraph 40 of the Complaint.

41.     EASTHILLS denies the allegations in paragraph 41 of the Complaint.

42.     EASTHILLS denies the allegations in paragraph 42 of the Complaint.

43.     EASTHILLS denies the allegations in paragraph 43 of the Complaint.

44.     EASTHILLS denies the allegations in paragraph 44 of the Complaint.

## SECOND CAUSE OF ACTION

### (Trade Dress Infringement – Lanham Act § 43(a))

45.     EASTHILLS incorporate their responses to the allegations contained in Paragraphs 1 – 44 above as if fully restated herein.

46.     EASTHILLS denies the allegations in paragraph 46 of the Complaint.

47.     EASTHILLS denies the allegations in paragraph 47 of the Complaint.

48.     EASTHILLS denies the allegations in paragraph 48 of the Complaint.

49.     EASTHILLS denies the allegations in contained paragraph 49 of the Complaint.

50.     EASTHILLS denies the allegations contained in paragraph 50 of the Complaint.

51.     EASTHILLS denies the allegations contained in paragraph 51 of the Complaint.

52.     EASTHILLS denies the allegations contained in paragraph 52 of the Complaint.

53.     EASTHILLS denies the allegations in contained paragraph 53 of the Complaint.

54.    EASTHILLS denies the allegations in paragraph 54 of the Complaint.

55.    EASTHILLS denies the allegations in paragraph 55 of the Complaint.

56.    EASTHILLS denies the allegations in paragraph 56 of the Complaint.

57.    EASTHILLS denies the allegations in paragraph 57 of the Complaint.

## GENERAL DENIAL

EASTHILLS denies all allegations of the Complaint not specifically admitted herein.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

EASTHILLS does not infringe and has not infringed (either directly, contributorily, or by inducement), either literally or under the doctrine of equivalents, and is not liable for infringement of any valid and enforceable claim of the '893 Patent.

### THIRD AFFIRMATIVE DEFENSE – INVALIDITY

Each asserted claim of the '893 Patent is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, the non-statutory doctrine of double patenting, improper inventorship, and the rules, regulations, and laws pertaining thereto.

### FOURTH AFFIRMATIVE DEFENSE – UNENFORCEABILITY

On information and belief, Plaintiff is not entitled to any relief against EASTHILLS in this action because the '893 Patent is unenforceable.

**FIFTH AFFIRMATIVE DEFENSE – PATENT EXHAUSTION AND/OR**

**LICENSE**

On information and belief, Plaintiff's claims against EASTHILLS are barred by patent exhaustion and/or a license to the '893 Patent.

**SIXTH AFFIRMATIVE DEFENSE – IMPLIED LICENSE**

On information and belief, Plaintiff's claims against EASTHILLS are barred by the doctrine of implied license.

**SEVENTH AFFIRMATIVE DEFENSE – LACK OF STANDING**

On information and belief, Plaintiff's claims against EASTHILLS are barred because Plaintiff lacks standing to assert the '893 Patent.

**EIGHTH AFFIRMATIVE DEFENSE – EQUITABLE ESTOPPEL**

On information and belief, Plaintiff's claims against EASTHILLS are barred by the doctrine of equitable estoppel.

**NINTH AFFIRMATIVE DEFENSE – WAIVER**

On information and belief, Plaintiff's claims against EASTHILLS are barred by the doctrine of waiver.

**TENTH AFFIRMATIVE DEFENSE –**

**PROSECUTION HISTORY ESTOPPEL**

On information and belief, due to admissions and statements made to the United States Patent and Trademark Office during the prosecution of the applications that resulted in the '893 Patent or related patent applications, Plaintiff is estopped from construing a valid and enforceable claim, if any, of the asserted

patents as infringed literally or under the doctrine of equivalents by the accused products.

## ELEVENTH AFFIRMATIVE DEFENSE –

## UNAVAILABILITY OF ENHANCED DAMAGES

Plaintiff has failed to meet the requirements of 35 U.S.C. § 284 for enhanced damages and is not entitled to any damages prior to providing actual notice of the '893 Patent to Defendant.

## TWELFTH AFFIRMATIVE DEFENSE –

## NO WILLFUL INFRINGEMENT

Plaintiff is not entitled to enhanced or increased damages for willful infringement because EASTHILLS has not engaged in any conduct meeting the requirements for such an award.

## THIRTEENTH AFFIRMATIVE DEFENSE –

## NO ATTORNEYS' FEES

Plaintiff is barred from recovering attorneys' fees under 35 U.S.C. § 285 because this is not an exceptional case.

## FOURTEENTH AFFIRMATIVE DEFENSE –

## LIMIATION OF DAMAGES

Plaintiff's claim for damages, if any, against EASTHILLS are barred or limited due to the failure to comply with the requirements of 35 U.S.C. § 287.

## FIFTHTEENTH AFFIRMATIVE DEFENSE –

## OTHER DEFENSES

EASTHILLS reserves the right to assert all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States and any other defenses, at law or equity, that may now or in the future be available based on discovery or any other factual investigation concerning this case or any related action.

## RESERVATION OF RIGHTS

EASTHILLS hereby gives notice that it intends to rely upon such other and further affirmative and other defenses it identifies and/or as may become available during discovery in this action, and EASTHILLS reserves the right to amend this Answer to assert any such defenses.

## COUNTERCLAIMS

EASTHILLS, by and through its counsel, the Bayramoglu Law Offices, LLC, asserts the following counterclaims against Plaintiff and Counter-Defendant KAMMOK HOLDINGS, LLC ("Kammok"):

## I.    INTRODUCTION

1.    EASTHILLS counterclaims against Kammok are, in part, based on violations of the Digital Millennium Copyright Act of 1998 (the "DMCA"), namely 17 U.S.C.A. § 512, *et. seq*.

2.    EASTHILLS counterclaims against Kammok are additionally brought pursuant to, and without limitation, 35 U.S.C. §§ 101-103 and 112 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES AND          CASE NO. 1:23-cv-02405-SKC-MEH
COUNTERCLAIMS TO FIRST AMENDED COMPLAINT

3.      Specifically, by way of its counterclaims, EASTHILLS seeks entry of judgment against Kammok for intentionally misrepresenting it copyright rights under the DMCA to Kickstarter, PBC ("Kickstarter") in submitting an intentionally false Takedown Notice, which resulted in the suspension of EASTHILLS' crowdfunding campaign on the platform.

4.      EASTHILLS alleges that all named Counterclaim Defendants acted in concert via a civil conspiracy to intentionally interfere with EASTHILLS' Kickstarter crowdfunding campaign.

5.      Kammok's intentional misrepresentations to Kickstarter continued when it submitted the underlying Complaint in this action as further evidence of its right to preclude the resumption of EASTHILLS' crowdfunding campaign despite not having secured a federal copyright registration for the asserted work from the United States Copyright Office (the "USCO") as is required to assert a copyright infringement action as established by controlling United States Supreme Court precedent.

6.      Kammok's actions were taken despite being repeatedly advised by EASTHILLS that it could not assert a claim for copyright infringement without having first secured a federal copyright registration for the asserted work from the USCO.

7.      By way of a certain Joint Stipulation entered in this action [Dkt. No. 40] on February 20, 2024, Kammok has admitted that: (1) it failed to apply for preregistration with the USCO before filing suit; (2) that it had failed to secure registration of the copyrighted work before filing suit; (3) that having filed its copyright application two days before commencing suit, accompanied by the statement in the Complaint that "a copyright registration is expected to be issued[]" [Dkt. No. 1 ¶ 40], it had not availed itself of, and did not avail itself of, the procedures

available for maintaining a copyright infringement suit upon issuance of denial of its application by the USCO; and (4) that, at the time it filed its copyright infringement action, it had not complied with the requirements of 17 U.S.C. § 411(a) or with the United States Supreme Court precedent cited by EASTHILLS in its Motion for Sanctions [Dkt. No. 19], and did not satisfy those requirements thereafter (the "Joint Stipulation).

8.     By way of its counterclaims, EASTHILLS further seeks a declaration from this Court that it does not infringe United States Patent No. 11,330,893 ("the '893 Patent").

9.     Simultaneously, or alternatively, EASTHILLS seeks a declaration from this Court that the '893 Patent is invalid for failing to comply with one or more of the provisions of 35 U.S.C. § 101, *et. seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102 and 103.

## II.    PARTIES

10.     EASTHILLS is a Colorado corporation with its principal place of business in Anaheim, California.

11.     Kammok is a Texas limited liability company with its principal place of business in Austin, Texas.

12.     Loyal IP Law, P.C. ("Loyal IP") is a Utah professional corporation with its principal place of business in Providence, Utah.

13.     Marshall Olson & Hall, P.C. ("MOH") is a Utah professional corporation with its principal place of business in Salt Lake City, Utah.

14.     Cambridge Law, LLC ("Cambridge" and collectively referred to herein with Loyal IP and MOH as the "Kammok Attorneys") is a Colorado limited liability company with its principal place of business in Denver, Colorado.

### III.    JURISDICTION AND VENUE

15.    EASTHILLS' counterclaims are compulsory under Federal Rule of Civil Procedure 13(a)(1)(A)-(B) because they arise from the same transaction or occurrence that is the subject matter of Kammok's Complaint and they do not require adding a party over which the Court cannot exercise personal jurisdiction.

16.    The Court has subject matter jurisdiction over EASTHILLS' counterclaim for violation of the DMCA pursuant to 28 U.S.C. § 1338(a).

17.    EASTHILLS' counterclaims are for declaratory judgment of non-infringement and/or invalidity of the '893 Patent. The Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202 as the arise under an Act of Congress relating to patents and the Declaratory Judgment Act.

18.    The Court has general and specific personal jurisdiction over Cambridge in that it is a Colorado limited liability company with its principal place of business in Denver, Colorado and is alleged to have caused the harm alleged herein to a Colorado corporation.

19.    The Court has specific personal jurisdiction over MOH in that counsel with MOH has appeared in this action, the commencement of which is alleged to have caused the harm asserted herein to EASTHILLS, by permission on a *pro hac vice* basis.

20.    The Court has specific personal jurisdiction over Loyal IP in that it is alleged to have, at least, acted in concert with Kammok and the Kammok Attorneys to commence this action which asserted to have caused the harm set forth herein to EASTHILLS.

21.    The Kammok Attorneys have been properly joined in this action pursuant to Federal Rule of Civil Procedure 20 in that EASTHILLS' claims for relief

asserted against them seeks impose joint and several liability and/or arise out of the same transaction, occurrence, or series of transactions or occurrences and involve common questions of law and fact. *See* Fed. R. Civ. P. 20(a)(2)(A), (B); *see also FidoTV Channel, Inc. v. Inspirational Network, Inc.*, No. 18-cv-02295-CMA-NYW, 2019 WL 4043940, at *3 (D. Colo. Apr. 29, 2019), *report and recommendation adopted*, 2019 WL 2950153 (D. Colo. July 9, 2019).

## IV.    FACTUAL BACKGROUND

22.    EASTHILLS and Kammok are competitors in, at least, the personal hammock industry.

23.    EASTHILLS had initiated a crowdfunding campaign through Kickstarter for the launch of certain personal hammock products that would compete with Kammok's products.

24.    EASTHILLS' crowdfunding campaign was targeted to raise a total sum of between $2,500,000 and $3,000,000.

25.    EASTHILLS had generated significant crowdfunding interest for its campaign and was well on its way to satisfying its campaign fundraising goal, which would result in funds being released to the company by Kickstarter.

26.    Kammok became aware of EASTHILLS' Kickstarter campaign and intentionally sought to interfere with its progress and ultimate success.

27.    In furtherance of its scheme to derail EASTHILLS' campaign, Kammok sent Kickstarter a DMCA takedown notice (the "Takedown Notice") claiming that EASTHILLS' products infringed upon its copyrighted work consisting of a particular model of personal hammock.

28.    At the time the Takedown Notice was submitted to Kickstarter, Kammok did not have, and the company knew it did not have, a protectable copyright interest in the particular model of personal hammock being asserted as the copyright

protected work. Kammok has admitted these facts as set forth in the Joint Stipulation [Dkt. No. 40.]

29. At the time the Takedown Notice was submitted to Kickstarter, Kammok did not have, and the company knew it did not have, a registered copyright issued by the USCO for the particular model of personal hammock being asserted as the copyright protected work. Kammok has admitted these facts as set forth in the Joint Stipulation [Dkt. No. 40.]

30. The Takedown Notice was submitted by Travis Banta, Esq., of Loyal IP on behalf of Kammok.

31. Kammok's Takedown Notice additionally contained claims that EASTHILLS' products violated its trade dress and patent rights, both of which are not subject to DMCA protection.

32. Immediately prior to Kammok's submission of the Takedown Notice to Kickstarter, EASTHILLS' crowdfunding campaign had raised the sum of $1,800,000.

33. Kickstarter suspended EASTHILLS' crowdfunding campaign in response to Kammok's Takedown Notice.

34. After Kickstarter suspended EASTHILLS' crowdfunding campaign in response to Kammok's Takedown Notice, EASTHILLS' crowdfunding campaign decreased to the sum of $1,200,000 due to investor withdrawals.

35. Upon receiving the Takedown Notice from Kickstarter, EASTHILLS counsel contacted Kammok's counsel and engaged in telephone conversations and written correspondence that advised Kammok of the blatant deficiencies in its copyright infringement allegations. Travis Banta of Loyal IP participated in these telephone conversations on behalf of Kammok.

36. Upon receiving the Takedown Notice from Kickstarter, EASTHILLS counsel contacted Kammok's counsel and engaged in telephone conversations and

written correspondence that advised Kammok of the blatant deficiencies in its patent and trade dress infringement allegations. Travis Banta of Loyal IP participated in these telephone conversations on behalf of Kammok.

37.    During one initial communication between the parties, counsel for Kammok indicated that the company had initiated the DMCA takedown process as a means for bringing EASTHILLS to the negotiating table so that an exclusive manufacturing and/or licensing agreement could be entered into between the parties. These statements were made by Travis Banta of Loyal IP and made on behalf of Kammok.

38.    Kammok took no corrective action in response to being advised of the blatant deficiencies in its copyright infringement allegations.

39.    Kammok took no corrective action in response to being advised of the blatant deficiencies in its trade dress and patent infringement allegations.

40.    EASTHILLS submitted a timely DMCA counter notice (the "Counter Notice") to Kickstarter explaining why Kammok did not have a legitimate and viable copyright protectable interest in and to the particular model of personal hammock being asserted as the copyright protected work and that it had not secured a federal registration for the work from the USCO.

41.    EASTHILLS' Counter Notice further advised Kickstarter that Kammok had intentionally instituted the takedown request for an improper purpose.

42.    EASTHILLS' Counter Notice requested immediate reinstatement of its crowdfunding campaign with Kickstarter.

43.    Kickstarter refused to reinstate EASTHILLS' crowdfunding campaign following receipt to the Counter Notice.

44.    Kammok, understanding that Kickstarter was statutorily compelled to reinstate EASTHILLS' campaign if it had not received notice of commencement of a

lawsuit in not less than 10-days and not more than 14-days after notification of the Counter Notice, filed the underlying Complaint in this action.

45.     Kammok filed the Complaint in this action intentionally and with knowledge that it had not secured a federal copyright registration from the USCO for the alleged infringed work despite the clear jurisdictional requirement that such a registration be obtained in order to assert a claim for copyright infringement.

46.     Kammok's Complaint was filed by MOH and Cambridge. On information and belief, Loyal IP additionally participated in the decision to file the Complaint on behalf of Kammok. In this regard, Travis Banta of Loyal IP continued to pressure Kickstarter to continue the suspension of EASTHILLS' crowdfunding campaign.

47.     Kammok's own allegations in its Complaint expressly admit that it had not obtained a federal copyright registration for the alleged infringed work at the time this action was filed. Kammok has also admitted these facts as set forth in the Joint Stipulation [Dkt. No. 40.]

48.     In addition to its meritless copyright infringement claim, Kammok's Complaint additionally contained a meritless trade dress claim for relief – both of which are not subject to the DMCA.

49.     Kammok forwarded the Complaint to Kickstarter seeking to further hinder the reinstatement of EASTHILLS' campaign despite knowing that it did not meet the jurisdictional requirements to maintain a copyright infringement action. Travis Banta of Loyal IP forwarded the Complaint to Kickstarter on behalf of Kammok and repeatedly pressured Kickstarter to continue to suspend EASTHILL's crowdfunding campaign despite knowing the Complaint lacked the jurisdictional requirements to maintain a copyright infringement claim for relief.

50.     Kammok's bald desire to use the filing of the Complaint in this Court as a tool to further delay and hinder the reinstatement of EASTHILLS' campaign is further supported by the fact that it had not sought issuance of a summons in this action or otherwise taken steps to advise or serve EASTHILLS with the Complaint as of the filing of this Answer, Affirmative Defenses and Counterclaims.

51.     In sum, Kammok's Complaint was filed in this action in bad faith and with knowledge that multiple claims lacked a sufficient legal and/or factual basis to be filed. In fact, it was filed for the ulterior purpose of interfering with EASTHILLS' crowdfunding campaign. Kammok and the Kammok Attorneys acted in concert to file and maintain the patently jurisdictionally flawed copyright infringement claim in. blatant disregard for EASTHILLS rights, including its rights under the DMCA.

52.     Kammok's repeated and improper actions, all done with knowledge that it did not have a protectable copyright interest in the work and that it did not have a federal copyright registration for the work to file a copyright infringement claim in this Court, caused EASTHILLS' crowdfunding campaign to be improperly suspended by Kickstarter, significantly delayed the eventual reinstatement of its campaign, and caused the company to lose considerable financial support, brand momentum and goodwill.

53.     Kammok's conduct was engaged in knowingly and willfully despite being advised that it did not have a protectable copyright interest in the work and that it did not have a federal copyright registration for the work to file a copyright infringement claim.

54.     Kammok's conduct was engaged in knowingly and willfully despite being advised that it did not have viable trade dress or patent infringement claims prior to filing suit.

55.    Kammok's initiation and prosecution of this action despite its prior knowledge that doing so was improper has unnecessarily caused EASTHILLS to incur attorneys' fees, costs and suffer damages.

## V.    CLAIM I - VIOLATION 17 U.S.C. § 512

### (Against Kammok and Loyal IP)

56.    EASTHILLS restates and realleges the allegations set forth in paragraphs 1 through 55, above, as if separately set forth herein.

57.    Any person who knowingly materially misrepresents under the DMCA that material or activity is infringing shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer under 17 U.S.C. § 512(f).

58.    Kammok knowingly materially misrepresented to Kickstarter in its Takedown Notice that EASTHILLS' personal hammock products infringed its copyright held in its own personal hammock products because, at a minimum, it knew the company did not have a protectable copyright interest in the asserted work and it did not hold a federal copyright registration for the asserted work.

59.    Kammok and Travis Banta of Loyal IP filed the Takedown Notice for the admitted improper purpose of bringing EASTHILLS to the negotiating table so that an exclusive manufacturing and/or licensing agreement could be entered into between the parties.

60.    Kammok filed the Complaint in this action intentionally and with knowledge that it had not secured a federal copyright registration from the USCO for the alleged infringed work despite the clear jurisdictional requirement that such a registration be obtained in order to assert a claim for copyright infringement.

61.    Kammok's Complaint was filed by MOH and Cambridge. On information and belief, Loyal IP additionally participated in the decision to file the Complaint on behalf of Kammok. In this regard, Travis Banta of Loyal IP continued

to pressure Kickstarter to continue the suspension of EASTHILLS' crowdfunding campaign.

62.     Kammok's own allegations in its Complaint expressly admit that it had not obtained a federal copyright registration for the alleged infringed work at the time this action was filed. Kammok has also admitted these facts as set forth in the Joint Stipulation [Dkt. No. 40.]

63.     After receiving EASTHILLS' Counter Notice, Kammok knowingly materially misrepresented to Kickstarter, pursuant to 17 U.S.C. § 512(g)(2)(c), through Loyal IP, that it had viably commenced a copyright infringement action in which it was seeking injunctive relief to restrain EASTHILLS' allegedly infringing activity when it knew it did not hold a federal copyright registration for the asserted work, which is a prerequisite for filing a federal copyright infringement action.

64.     As a result of Kammok's actions, EASTHILLS has been damaged.

65.     EASTHILLS is entitled to an award of damages, subject to proof at trial, pursuant to 17 U.S.C. § 512(f).

66.     EASTHILLS is entitled to an award of attorneys' fees and costs pursuant to 17 U.S.C. § 512(f).

## VI.     CLAIM II - DECLARATION OF NON-INFRINGEMENT

### (Against Kammok)

67.     EASTHILLS restates and realleges the allegations set forth in paragraphs 1 through 55, above, as if separately set forth herein.

68.     Kammok has alleged that EASTHILLS has infringed and continues to infringe the '893 Patent and that the '893 Patent has been duly and legally issued to it.

69.     Contrary to the allegations in the Complaint, EASTHILLS and the allegedly accused EASTHILLS' products do not infringe (either directly,

contributorily, or by inducement), either literally or under the doctrine of equivalents, any claims of the '893 Patent, willfully or otherwise.

70.     An actionable and justiciable controversy exists between EASTHILLS and Kammok by virtue of the Complaint and Answer in this action as to the non-infringement of the '893 Patent.

71.     EASTHILLS is entitled to a Declaratory Judgment issued by this Court that determines and finds that the '893 Patent is not infringed.

72.     EASTHILLS is entitled to an award of attorneys' fees and costs as permitted by statute, rule or otherwise authorized by law.

## VII.    CLAIM III - DECLARATION OF INVALIDITY
### (Against Kammok)

73.     EASTHILLS restates and realleges the allegations set forth in paragraphs 1 through 55, above, as if separately set forth herein.

74.     Kammok has alleged that EASTHILLS has infringed and continues to infringe the '893 Patent and that the '893 Patent has been duly and legally issued to it.

75.     The claims of the '893 Patent are invalid for failing to comply with one of more provisions of the Patent Laws of the United States, as codified in Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

76.     An actionable and justiciable controversy exists between EASTHILLS and Kammok by virtue of the Complaint and Answer in this action as to the invalidity of the '893 Patent.

77.     EASTHILLS is entitled to a Declaratory Judgment issued by this Court that determines and finds that the '893 Patent is invalid for failing to comply with one or more provisions of the Patent Laws of the United States, as codified in Title

21

35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103 and 112.

78.    EASTHILLS is entitled to an award of attorneys' fees and costs as permitted by statute, rule or otherwise authorized by law.

### VIII.   CLAIM IV - INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

**(Against Kammok and the Kammok Attorneys)**

79.    EASTHILLS restates and realleges the allegations set forth in paragraphs 1 through 55, above, as if separately set forth herein.

80.    EASTHILLS enjoyed numerous prospective contractual and business relationships with individuals that had pledged investment into the company through its crowdfunding campaign with Kickstarter.

81.    Kammok intentionally interfered with EASTHILLS' prospective contractual and business relationships by submitting its Takedown Notice to Kickstarter that included alleged trade dress and patent infringement claims that were irrelevant and unnecessary to consideration of its rights under the DMCA.

82.    Kammok intentionally included alleged trade dress and patent infringement claims in its Takedown Notice so that Kickstarter would give additional, unwarranted, credibility to its DMCA claims and/or take independent action to remove EASTHILLS' campaign on grounds not authorized by the DMCA.

83.    Kammok knew, or should have known, that its trade dress infringement claim was not supportable in fact or in law.

84.    Kammok and the Kammok Attorneys knew, or should have known, that its copyright infringement claim was not supported in fact or law because it had not availed itself of the jurisdictional requirements for filing or maintaining such an

action as required under 17 U.S.C. § 411(a). These facts are admitted by Kammok in the Joint Stipulation [Dkt. No. 40].

85.     Kammok knew, or should have known, that its patent infringement claim raised serious questions as to, at least, its factual viability in view of existing law.

86.     Upon receiving the Takedown Notice from Kickstarter, EASTHILLS counsel contacted Kammok's counsel and engaged in telephone conversations and written correspondence that advised Kammok of the blatant deficiencies in its patent and trade dress infringement allegations.

87.     During one initial communication between the parties, counsel for Kammok indicated that the company had initiated the DMCA takedown process, which included the assertion of improper and baseless trademark, copyright, and patent infringement claims, as a means for bringing EASTHILLS to the negotiating table so that an exclusive manufacturing and/or licensing agreement could be entered into between the parties.

88.     Kammok took no corrective action in response to being informed of the blatant deficiencies in its patent, copyright, and trade dress infringement allegations.

89.     Kammok was further advised of the deficiencies of its copyright, trade dress and patent infringement claims through EASTHILLS' Counter Notice.

90.     Kammok once again took no corrective action in response.

91.     Kammok proceeded to file the underlying Complaint in this action, which formally asserted its untenable trade dress, copyright, and patent infringement claim for relief and its factually suspect patent infringement claim for relief.

92.     In addition to its suspect trade dress and patent infringement claims for relief, Kammok asserted a copyright infringement claim for which it admittedly did

not hold a federal copyright registration for the alleged infringed work, which is a jurisdictional prerequisite to such a claim.

93.    Kammok knowingly materially misrepresented to Kickstarter in its Takedown Notice that EASTHILLS' personal hammock products infringed its copyright held in its own personal hammock products because, at a minimum, it knew the company did not have a protectable copyright interest in the asserted work and it did not hold a federal copyright registration for the asserted work.

94.    Kammok and Travis Banta of Loyal IP filed the Takedown Notice for the admitted improper purpose of bringing EASTHILLS to the negotiating table so that an exclusive manufacturing and/or licensing agreement could be entered into between the parties.

95.    Kammok filed the Complaint in this action intentionally and with knowledge that it had not secured a federal copyright registration from the USCO for the alleged infringed work despite the clear jurisdictional requirement that such a registration be obtained in order to assert a claim for copyright infringement.

96.    Kammok's Complaint was filed by MOH and Cambridge. On information and belief, Loyal IP additionally participated in the decision to file the Complaint on behalf of Kammok. In this regard, Travis Banta of Loyal IP continued to pressure Kickstarter to continue the suspension of EASTHILLS' crowdfunding campaign.

97.    On information and belief, Kammok and the Kammok Attorneys knew, or should have known, that Kammok had asserted its copyright infringement claim for the express purpose of improperly seeking to extend the suspension of its Kickstarter crowdfunding campaign by availing the company through, at least, reliance on 17 U.S.C. § 512(g)(2)(c).

98.    Kammok's own allegations in its Complaint expressly admit that it had not obtained a federal copyright registration for the alleged infringed work at the time this action was filed. Kammok has also admitted these facts as set forth in the Joint Stipulation [Dkt. No. 40.]

99.    After receiving EASTHILLS' Counter Notice, Kammok knowingly materially misrepresented to Kickstarter, pursuant to 17 U.S.C. § 512(g)(2)(c), through Loyal IP, that it had viably commenced a copyright infringement action in which it was seeking injunctive relief to restrain EASTHILLS' allegedly infringing activity when it knew it did not hold a federal copyright registration for the asserted work, which is a prerequisite for filing a federal copyright infringement action.

100.    Kammok and Loyal IP knew the inherent defects in the Complaint before it was filed with this Court. Such knowledge is evident from, at least, EASTHILLS' counsel's communications with Travis Banta of Loyal IP and the company's Counter Notice.

101.    Upon filing the Complaint in this action, Kammok took no steps to secure issuance of a summons or to otherwise effectuate service on EASTHILLS. Rather, the Complaint was filed simply to submit to Kickstarter to justify extending the suspension of EASTHILLS' crowdfunding campaign.

102.    Kammok's Complaint was filed at the behest and with the assistance of the Kammok Attorneys and done in bad faith and for an improper purpose.

103.    Kammok, through Loyal IP, submitted the Complaint to Kickstarter in furtherance of its scheme to have EASTHILLS' crowdfunding campaign continue to be suspended – pursuant to 17 U.S.C. § 512(g)(2)(c) for Kammok's alleged copyright infringement claim and on other grounds based on its factually and legally untenable/suspect trade dress and patent infringement claims.

104. As a result of Kammok's and the Kammok Attorneys' conduct, EASTHILLS' crowdfunding campaign lost numerous investors that had previously agreed to provide funding to the company.

105. As a result of Kammok's and the Kammok Attorneys' conduct, EASTHILLS' crowdfunding campaign lost significant investment momentum and trajectory due to its campaign being taken down by Kickstarter based on, in part, the assertion of the untenable trade dress infringement allegations and factually suspect patent infringement allegations.

106. As a result of Kammok's and the Kammok Attorneys' conduct, EASTHILLS' crowdfunding campaign lost significant investment and company goodwill due to its campaign being taken down by Kickstarter based on, in part, the assertion of the untenable trade dress infringement allegations and factually suspect patent infringement allegations.

107. As a result of Kammok's and the Kammok Attorneys' conduct, EASTHILLS' has lost the ability to contract with certain distributors accessible through crowdfunding due to its campaign being taken down by Kickstarter based on, in part, the assertion of the untenable trade dress infringement allegations and factually suspect patent infringement allegations.

108. EASTHILLS has suffered damages in the form of actual loss and future profit loss based on Kammok's and the Kammok Attorneys' conduct.

109. Kammok's and the Kammok Attorneys' conduct was intentional, willful, and done with oppression and malice, thereby entitling EASTHILLS to an award of punitive damages.

110. EASTHILLS is entitled to an award of attorneys' fees and costs as permitted by statute, rule or otherwise authorized by law.

## IX.    CLAIM V – COMMON LAW UNFAIR COMPETITION

### (Against Kammok)

111.    EASTHILLS restates and realleges the allegations set forth in paragraphs 1 through 55, above, as if separately set forth herein.

112.    EASTHILLS and Kammok are competitors in the personal hammock product marketplace.

113.    Kammok engaged in a deceptive and/or wrongful business practice designed to disrupt EASTHILLS' crowdfunding campaign by, among other things, intentionally including alleged trade dress and patent infringement claims in its Takedown Notice so that Kickstarter would give additional, unwarranted, credibility to its DMCA claims and/or take independent action to remove EASTHILLS' campaign on grounds not authorized by the DMCA.

114.    During one initial communication between the parties, counsel for Kammok indicated that the company had initiated the DMCA takedown process, which included the assertion of improper and baseless trademark and patent infringement claims, as a means for bringing EASTHILLS to the negotiating table so that an exclusive manufacturing and/or licensing agreement could be entered into between the parties.

115.    Kammok's actions were further designed to deceive and/or induce EASTHILLS' then current and prospective crowdfunding investors to either withdraw their support from the company's campaign or to not invest in the company's campaign.

116.    Kammok was advised through communications with EASTHILLS' counsel that its trade dress infringement claim was factually and legally untenable and that its patent infringement claim was factually suspect in view of existing law.

117.    Kammok was advised through EASTHILLS' Counter Notice that its trade dress infringement claim was factually and legally untenable and that its patent infringement claim was factually suspect in view of existing law.

118.    Kammok took no corrective action in response to EASTHILLS' counsel's communications or the company's Counter Notice.

119.    Kammok proceeded to file the underlying Complaint in this action, which formally asserted its untenable trade dress infringement claim for relief and its factually suspect patent infringement claim for relief.

120.    In addition to its suspect trade dress and patent infringement claims for relief, Kammok asserted a copyright infringement claim for which it admittedly did not hold a federal copyright registration for the alleged infringed work, which is a jurisdictional prerequisite to such a claim.

121.    Kammok knew the inherent defects in its Complaint before it was filed with this Court. Such knowledge is evident from, at least, EASTHILLS' counsel's communications and the company's Counter Notice.

122.    Kammok's Complaint was filed in bad faith and for an improper purpose.

123.    Kammok submitted the Complaint to Kickstarter in furtherance of its scheme to have EASTHILLS' crowdfunding campaign continue to be suspended – pursuant to 17 U.S.C. § 512(g)(2)(c) for Kammok's alleged copyright infringement claim and on other grounds based on its factually and legally untenable/suspect trade dress and patent infringement claims.

124.    As a result of Kammok's acts of unfair competition, EASTHILLS' crowdfunding campaign lost numerous investors that had previously agreed to provide funding to the company.

125.    As a result of Kammok's conduct, EASTHILLS' crowdfunding campaign lost significant investment momentum and trajectory due to its campaign being taken down by Kickstarter based on, in part, the assertion of the untenable trade dress infringement allegations and factually suspect patent infringement allegations.

126.    As a result of Kammok's conduct, EASTHILLS' crowdfunding campaign lost significant investment and company goodwill due to its campaign being taken down by Kickstarter based on, in part, the assertion of the untenable trade dress infringement allegations and factually suspect patent infringement allegations.

127.    As a result of Kammok's conduct, EASTHILLS' has lost the ability to contract with certain distributors accessible through crowdfunding due to its campaign being taken down by Kickstarter based on, in part, the assertion of the untenable trade dress infringement allegations and factually suspect patent infringement allegations.

128.    EASTHILLS has suffered damages based on Kammok's conduct.

129.    EASTHILLS is entitled to an award of attorneys' fees and costs as permitted by statute, rule or otherwise authorized by law.

## X. CLAIM SIX – CIVIL CONSPIRACY

### (Against Kammok and the Kammok Attorneys)

130.    EASTHILLS restates and realleges the allegations set forth in paragraphs 1 through 55, above, as if separately set forth herein.

131.    Kammok and the Kammok Attorneys had a meeting of the minds on the object or course of action to improperly keep EASTHILLS' Kickstarter crowdfunding campaign suspended by improperly asserting a jurisdictionally unviable copyright infringement claim and submitting a copy of the Complaint in this action containing said claim to Kickstarter in an attempt to invoke the provisions of 17 U.S.C. § 512(g)(2)(c) and/or in reliance on Kickstarter's own terms and conditions.

132.    The overt acts of submitting the Complaint to Kickstarter in an attempt
to invoke the provisions of 17 U.S.C. § 512(g)(2)(c) and/or in reliance on Kickstarter's
own terms and conditions was improper, in clear violation of the DMCA, and
unlawful.

133.    The object of the civil conspiracy gives rise to damages, including costs
and attorneys' fees, incurred by the alleged infringer under 17 U.S.C. § 512(f).

134.    The object of the civil conspiracy gives rise to a claim for relief for
intentional interference with prospective business relations.

135.    EASTHILLS has suffered damages as a result of Kammok's and the
Kammok Attorneys' conduct.

136.    Kammok and the Kammok Attorneys should be held jointly and
severally liable for their conduct.

137.    EASTHILLS has suffered damages in the form of actual loss and future
profit loss based on Kammok's and the Kammok Attorneys' conduct.

138.    Kammok's and the Kammok Attorneys' conduct was intentional, willful,
and done with oppression and malice, thereby entitling EASTHILLS to an award of
punitive damages.

139.    EASTHILLS is entitled to an award of attorneys' fees and costs as
permitted by statute, rule or otherwise authorized by law.

## **PRAYER FOR RELIEF**

WHEREFORE, EASTHILLS prays for judgment as follows:

a.    That Plaintiff/Kammok take nothing by way of its asserted claims for
relief against EASTHILLS alleged in the Complaint;

b.    The Court enter judgment in favor of EASTHILLS in this action and
against Plaintiff/Kammok, thereby dismissing the Complaint in its entirety, with
prejudice, and deny all relief requested therein;

c.     The Court enter judgment in favor of EASTHILLS and against Kammok and Loyal IP for violation of 17 U.S.C. § 512 and award EASTHILLS all compensatory, special, exemplary and enhanced damages permitted thereunder;

d.     The Court award EASTHILLS its attorneys' fees and costs for Kammok's and Loyal IP's violation of 17 U.S.C. § 512;

e.     The Court enter a Declaratory Judgment that the claims of the '893 Patent are not infringed by EASTHILLS;

f.     The Court enter a Declaratory Judgment that the claims of the '893 Patent is invalid and/or unenforceable;

g.     The Court declares EASTHILLS' defenses present an exceptional case entitling it to an award of reasonable attorneys' fees under 35 U.S.C. § 285;

h.     The Court award EASTHILLS damages for actual and future profit loss for Kammok's and the Kammok Attorneys' intentional interference with prospective business relations;

i.     The Court award EASTHILLS punitive damages because Kammok's and the Kammok Attorneys' intentional interference with prospective business relations was intentional, willful, and done with oppression and malice;

j.     The Court award EASTHILLS damages for Kammok's acts of common law unfair competition;

k.     The Court award EASTHILLS its attorneys' fees and costs as permitted by statute, rule or otherwise authorized by law;

l.     The Court award EASTHILLS damages for actual and future profit loss for Kammok's and the Kammok Attorneys' civil conspiracy;

m.     The Court enter judgment against Kammok and the Kammok Attorneys, jointly and severally, for civil conspiracy;

n.    The Court award EASTHILLS punitive damages because Kammok's and the Kammok Attorneys' civil conspiracy was intentional, willful, and done with oppression and malice;

o.    The Court award EASTHILLS attorneys' fees and costs as permitted by statute, rule or otherwise authorized by law; and

p.    The Court grant and enter all other and further relief as it deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

EASTHILLS demands a trial by jury of all issues so triable in this action.

DATED: February 29, 2024             Respectfully submitted,

*/s/ Shawn A. Mangano*
NIHAT DENIZ BAYRAMOGLU
(Nevada Bar No. 14030)
deniz@bayramoglu-legal.com
SHAWN A. MANGANO
(Nevada Bar No. 6730)
shawnmangano@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road Suite 100
Henderson Nevada 89014
Telephone:  702.462.5973
Facsimile:  702.553.3404