## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02405-SKC-MEH

KAMMOK HOLDINGS, LLC,

     Plaintiff,

v.

EASTHILLS, INC.; and DOES 1-10,

     Defendants.

---

## DEFENDANT EASTHILLS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S TRADE DRESS INFRINGEMENT CLAIM FOR RELIEF

---

Pursuant to Fed. R. Civ. P. 56, Defendant Easthills, Inc. ("Easthills") through its counsel Bayramoglu Law Offices LLC, moves for partial summary judgment (the "Motion") seeking dismissal of Plaintiff Kammok Holdings, LLC's ("Kammok") trade dress infringement claim for relief under § 43(a) of the Lanham Act as alleged in the First Amended Complaint. [Dkt. No. 38 ¶¶ 45 - 57.]

Easthills' Motion is made and based on the arguments asserted herein, the supporting Declaration of Shawn A. Mangano (the "Mangano Decl."), the evidence and exhibits attached thereto, and any argument the Court may entertain.

    ///

    ///

## I.      **INTRODUCTION**

Kammok alleges that Easthills' Anymaka hammock stand (the "Anymaka") infringes Kammok's trade dress rights in its Swiftlet portable hammock stand. [Dkt. No. 38 ¶¶ 49-52.] Kammok has admitted through its responses to Easthills' discovery requests that it does not hold a federal registration for the trade dress rights being asserted in this action. (Movant's Appx. p. 15 – Ex. B at 12.) Moreover, Kammok has further admitted that the company's attempts at securing federal copyright protection over virtually the same rights being asserted as common law trade dress rights in this action have been summarily denied because the United States Copyright Office (the "USCO") has determined them to be "useful", which is akin a finding the application contained functional content. (Movant's Appx. p. 23-34 – Ex. C.) In short, Kammok's trade dress infringement claim seeks to enforce rights that have neither been secured through registration by the United States Patent and Trademark Office and have essentially been denied after evaluation by the USCO.

Despite these circumstances, Kammok has proceeded to assert a that Easthills' Anymaka portable hammock somehow infringes its nebulous common law trade dress rights apparently reflected in its Swiftlet portable hammock. [Dkt. No. 38 ¶¶ 49-52.] Specifically, Kammok's trade dress infringement claim seeks to enforce certain common law rights in the Swiftlet's product configuration of a hammock stand consisting of "textured anchor points and a clamshell hammock holder." [*Id.* ¶ 46, and collectively referred to herein as the "Swiftlet Trade Dress".] The reality is, Kammok

has concocted its trade dress infringement claim, just as it did with its admittedly unviable copyright infringement claim [Dkt. No. 40], solely to add unjustified credibility to its improper takedown notice submitted to Kickstarter, PBC ("Kickstarter") under the Digital Millennium Copyright Act (the "DMCA"). [Dkt. No. 41 ¶ 37 at 16.] These actions were done, as admitted by Kammok's own counsel, expressly for continuing the suspension of Easthills' crowdfunding campaign and to bring the company to the negotiating table. [*Id.*]

Kammok's trade dress infringement claim is fatally flawed for several reasons. To begin with, a party cannot have a protectable trade dress interest where the alleged trade dress serves a functional or useful purpose. *See General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007). Kammok simply cannot demonstrate that its purported trade dress lacks such functionality. In fact, the USCO has expressly out refused to grant Kammok a copyright for the same elements Kammok is alleging is its trade dress because they are functional. (Movant's Appx. p. 23-34 – Ex. C.) Moreover, it is unquestionable that the textured anchor points allow the hammock to be attached to the structure and the clamshell holder holds the hammock in place and provides support. (Movant's Appx. p. 36 – Ex. D.)

The functional or useful purpose of alleged trade dress rights in the textured anchor points and clamshell hammock holder is further exemplified by Kammok's own U.S. Patent No. 11,330,893 (the "'893 Patent"), of which the Swiftlet is a commercial embodiment. (Movant's Appx. p. 38-55 – Ex. E.) A utility patent claiming

2

DEFENDANT'S MOTION FOR PARTIAL            CASE NO. 2: 23-cv-02405-SKC-MEH
SUMMARY JUDGMENT ON TRADE DRESS
INFRINGEMENT CLAIM FOR RELIEF

the design features at issue is strong evidence that those features are functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 29-30 (2001). This is precisely the circumstances presented in this case. The '893 Patent repeatedly emphasizes the usefulness and functionality of the anchor points and clamshell hammock holder. (Movant's Appx. p. 38-55 - Ex. E at cols. 6:1-7, 3:43-48, 4:37-42, and 14:2-5.) For instance, the '893 Patent describes the usefulness of the anchor points as follows: "wherein the first anchor engages the first cantilever arm and slides distally and proximally along the first cantilever arm." (Movant's Appx. p. 38-55 - Ex. E at cols. 14:2-4.) Similarly, the '893 Patent describes the functionality of the clamshell hammock holder as cradles that "comprise guides disposed at the distal ends of the first and second cantilever arms to support and spread the tensile members of a suspension seat … enhancing the comfort and ease of entry to the hammock." (Movant's Appx. p. 38-55 - Ex. E. at cols. 6:2-7.)

Kammok can also not prove that its trade dress is distinctive or has acquired any secondary meaning. In fact, a significant number of other portable hammock designs in the market also consist of a textured anchor point and a clamshell hammock holder. (Movant's Appx. p. 57-74 - Ex. F.) Simply put, Kammok cannot reasonably assert that the alleged trade dress aspects of the company's Swiftlet hammock has attained secondary meaning when the claimed trade dress elements are embodied in numerous commercially available, competing portable hammocks.

In sum, no genuine issues of material fact exist as to whether Kammok's holds

any protectable interest in the trade dress rights asserted in the Swiftlet portable hammock's textured anchor points and/or its clamshell hammock holder. These alleged trade dress elements of the Swiftlet portable hammock are clearly functional, which is demonstrated not only by its useful, operational purpose, but also by the functionality claimed in the '893 Patent. Moreover, these allegedly trade dress protected elements of the Swiftlet portable hammock are unquestionably neither distinctive nor have they attained secondary meaning because numerous competing, commercially available portable hammocks are available in the marketplace that embody the same characteristics. Accordingly, as argued more fully below, Easthills is entitled to entry of partial summary judgment in its favor and against Kammok on the company's trade dress infringement claim.

## II.    <u>LEGAL STANDARDS</u>

a. ***Motion for Summary Judgment Standards.***

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

The existence of a genuinely disputed issue of material fact requires the submission of admissible evidence that presents a sufficient factual disagreement to require submission to a jury, or conversely, if the applicable law or evidentiary record is so persuasive, the moving party is entitled to entry of judgment. *Anderson*, 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

As argued below, application of the foregoing standards to Easthills' Motion demonstrates that it is entitled to entry of partial summary judgment in its favor and against Kammok's trade dress infringement claim for relief.

b. ***Trade Dress Infringement Standards.***

Section 43(a) of the Lanham Act provides for a federal cause of action for trade dress infringement. *Urban Gorilla, LLC*, 500 F.3d at 1226. Although trade dress protection was originally limited to product packaging, it has since been extended to "the design of a product." *Wal-Mart Stores v. Samara Bros., Inc.*, 529 U.S. 205, 209

(2000) "The trade dress of a product is its overall image and appearance, and may include features such as size, shape, color or color combinations, texture, graphics, and even particular sales techniques." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002).

To recover for trade dress infringement under § 43(a), "a plaintiff must show: (1) The trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) There is a likelihood of confusion among consumers as to the source of the competing products; and (3) The trade dress is nonfunctional." *Urban Gorilla, LLC,* 500 F.3d at 1227. Because product designs are not inherently distinctive, a plaintiff seeking protection for product design trade dress must prove that the design has acquired secondary meaning. *Wal-Mart Stores*, 529 U.S. at 212, 216.

As argued below, application of the foregoing standards to Easthills' Motion demonstrates that it is entitled to entry of partial summary judgment in its favor and against Kammok's trade dress infringement claim for relief.

## II.    ARGUMENT

In this action, Kammok alleges that it is entitled to legal protection of its Swiftlet Trade Dress, which includes its textured anchor points and a clamshell hammock holder. [Dkt. No. 38 ¶¶ 49-52.] Kammok, however, does not possess a federally registered trade dress for the Swiftlet Trade Dress. (Movant's Appx. p. 15 - Ex. B at 12.) Moreover, the USCO has denied Kammok's attempt to secure federal

6

DEFENDANT'S MOTION FOR PARTIAL            CASE NO. 2: 23-cv-02405-SKC-MEH
SUMMARY JUDGMENT ON TRADE DRESS
INFRINGEMENT CLAIM FOR RELIEF

copyright protection over virtually these same asserted aspects of the Swiftlet portable hammock on functionality grounds. (Movant's Appx. p. 23-34 – Ex. C.) These circumstances not only define the Court's analysis of the unviability of Kammok's asserted trade dress infringement claim, but they also support granting Easthills' Motion.

To succeed in a claim for infringement of an unregistered trade dress under § 43(a) of the Lanham Act, 15 U.S.C. § 1051, et seq., a plaintiff must establish three elements: "(1) [t]he trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) [t]here is a likelihood of confusion among consumers as to the source of the competing products; and (3) [t]he trade dress is nonfunctional." *Urban Gorilla*, LLC, 500 F.3d at 1227 (citations omitted). "If the plaintiff fails to present sufficient evidence for a reasonable jury to find in its favor on any one of these three elements, then judgment as a matter of law should be entered for the defendant." *Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 504 (6th Cir. 2013). Because Kammok cannot meet elements one and three of this test, Easthills is entitled to entry of partial summary judgment on Kammok's trade dress infringement claim as a matter of law.[1]

### a. Kammok's Asserted Swiftlet Trade Dress is Functional.

Kammok alleges it has trade dress rights in the "C-shaped holders," or

---

[1] Due to the strong evidence of lack of secondary meaning and non-functionality, Easthills is not seeking partial summary judgment on element three—likelihood of confusion or ownership - but reserves the right to do so at some later time.

specifically the "clamshell hammock holders," and the "textured anchors" in the product design of the Swiftlet. [Dkt. No. 38 ¶¶ 49-52.] Kammok cannot and does not have a valid trade dress, because these claimed features are functional.

To claim trade dress protection, the proponent of the trade dress rights must prove that the feature for which it seeks protection is "non-functional." *C5 Med. Werks, LLC v. CeramTec GmbH*, 249 F. Supp. 3d 1210 (D. Colo. 2017); *see also* 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."). A product's feature is "functional" if the "exclusive use of [the feature] would put competitors at a significant non-reputation-related disadvantage." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001).

Alternatively, a feature is functional if "it is essential to the use or purpose of the device or when it affects the cost or quality of the device." *Id*. at 33. Consequently if "a product feature is functional," it cannot serve as a trademark, "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article," that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850, n.10 (1982).

To determine whether an alleged trade dress should be deemed functional and, therefore, not subject to protection, the following four factors are considered: (1)

the existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered; (2) advertising by the applicant that touts the utilitarian advantages of the design; (3) facts pertaining to the availability of alternative designs; and (4) facts pertaining to whether the design results from a comparatively simple or inexpensive method of manufacture. *Jenny Yoo Collection, Inc. v. Essense of Australia, Inc.*, 448 F. Supp. 3d 1162, 1171–72 (D. Kan. 2020).

Easthills maintains that Kammok cannot overcome two of the four elements required to establish enforceable, non-functional, trade dress rights in and to the Swiftlet Trade Dress. Specifically, Easthills asserts that Kammok cannot overcome the following elements supporting a finding of functionality: (1) the existence of a utility patent describing the functionality of the asserted trade dress features; and (2) the lack of any available alternative designs. *See, e.g., Jenny Yoo Collection, Inc.*, 448 F. Supp. 3d at 1171–72. Given Kammok's inability to satisfy these two key elements, which establishes the functionality of the Swiftlet Trade Dress, Easthills is entitled to entry of partial summary judgment as a matter of law.

### 1. *Kammok Holds a Utility Patent Embodying the Swiftlet.*

Here, it is unquestionable that Kammok holds a utility patent, the '893 Patent, for which the Swiftlet is a commercial embodiment. (Movant's Appx. p. 38-55 - Ex. E, and chart below.) This is the first element considered in support of finding unprotectable, functional in trade dress rights being asserted by a party. *See, e.g., Jenny Yoo Collection, Inc.*, 448 F. Supp. 3d at 1171–72.

With the initial backdrop of Kammok holding a utility patent covering numerous functional aspects of the commercial embodiment claimed to also contain protectable trade dress rights, the Court's examination turns next to whether the claimed trade dress rights are described as functional in the utility patent. Here, Kammok's '893 Patent clearly describes the utilitarian features of the Swiftlet Trade Dress that Easthills is accused of infringing in this action, which is summarized below in the following chart:

/// 

| Trade Dress Element | Swiftlet Product | '893 Patent Figs. |
|---|---|---|
| "Textured Anchors" |  (Movant's Appx. p. 6 - Ex. A) |  (Movant's Appx. p. 44 – Ex. E, Fig. 6) |

| | | |
|---|---|---|
| "Clamshell Hammock Holders" |   (Movant's Appx. p. 6 - Ex. A) | (Movant's Appx. p. 44 – Ex. E, Fig. 2) |

The foregoing examples the '893 Patent certainly depict the exact same functional aspects of the Swiftlet Trade Dress asserted against Easthills in this action.

The law is clear that a utility patent claiming the design features at issue is strong evidence that those features are functional. *TrafFix Devices, Inc.,* 532 U.S. at 29-30. "Utility patents serve as excellent cheat sheets because any design claimed in a patent is supposed to be useful." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 857 (7th Cir. 2010) (The utilitarian advantages of the circular shape of a beach towel were disclosed in a utility patent and in advertising.); *see also Flexible Steel Lacing Company v. Conveyor Accessories, Inc.*, 955 F.3d 632, 644, 646, (7th Cir. 2020) (Quoting the "cheat sheet" metaphor and finding that plaintiff's "utility patent discloses the utilitarian benefits of the beveled center scallop and is strong evidence of the functionality of [plaintiff's] trade dress.").

However, a patent need not claim the exact configuration for which trademark, or trade dress, protection is sought to prove functionality. *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1375 (Fed. Cir. 2012) ("[The Supreme Court's decision in *TrafFix*] does not require that a patent claim the exact configuration for which trademark protection is sought in order to undermine an applicant's assertion that an applied-for mark is not … functional. Indeed, *TrafFix* teaches that statements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality."); *accord In re Becton, Dickinson & Co.*, 675 F.3d at 1375 (citing *TrafFix Devices*, 532 U.S. at 32-33, 34-35). "[S]tatements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality." *In re Becton, Dickinson & Co.*, 675 F.3d at 1375.

The '893 Patent is a utility patent that discloses the utilitarian advantages of the Swiftlet design that is also sought to be protected as the Swiftlet Trade Dress. (Movant's Appx. p. 38-55 - Ex. E.) The '893 Patent discloses that the shape and design of the portable hammock holder is dictated by functionality. (Movant's Appx. p. 38-55 - Ex. E. at cols. 6:1-7, 3:43-48, 4:37-42, and 14:2-5.) First, the "clamshell hammock holder" that Kammok asserts is an element of the Swiftlet Trade Dress is also claimed in the '893 Patent as a "cradle." (*Id.* at col. 6:1-14.) The '893 Patent describes the functionality of the "clamshell hammock holder" by explaining that the cradles comprise guides disposed at the ends of the arms to "support and spread the tensile

12

members of a suspension" … "enhancing the comfort and ease of entry to the hammock." (*Id.* at col. 6:1-7.) Furthermore, the '893 Patent claims "the first and second cradles" as elements of the invention disclosed. (*Id.* at col. 12:32, 39, and Figs. 1-2.) The '893 Patent clearly claims the "clamshell hammock holder" design feature as the "cradle". Surely referring to a functional element described in a patent by a different name does not remove the fact that the element is functional and therefore unprotectable as trade dress.

Likewise, the '893 Patent also discloses the function of the "textured anchors", which are referred to as the "side clips" that secure the hammock in place. (*Id.* at cols. 5:51-55, 3:43-48 and Fig. 6.) Moreover, Kammok's own allegations in its Amended Complaint admit that the "textured anchors" serve a function. [*See* Dkt. No. 38, ¶10] "The Swiftlet includes textured anchor points on which a hammock may be attached."] In short, the cradles and anchors are a reason the device works, therefore precluding Kammok, as a matter of law, from asserting trade dress protection rights in these functional features of the Swiftlet portable hammock. *See TrafFix Devices*, 532 U.S. at 33.

In sum. the "cradles" and "side clips/anchors" described in the '893 Patent are the exact same product design that Kammok alleges is a protectable trade dress feature of the Swiftlet portable hammock. As argued above, Kammok has expressly claimed the functionality of the exact same rights alleged to exist under the Swiftlet Trade Dress in the '893 Patent. Simply put, any trade dress rights asserted by

Kammok in and to the "clamshell hammock holder" or the "textured anchors" are clearly functional and, as such, cannot be relied upon to support the company's trade dress infringement claim for relief. Accordingly, Easthills is entitled to entry of partial summary judgment in its favor against Kammok's trade dress infringement claim for relief.

### 2. *The Availability of Alternative Designs to Competitors.*

Kammok's assertion of protectable rights in and to the Swiftlet Trade Dress is further undermined by the availability of alternative designs to competitors. This is another factor supporting a finding of an unprotectable right in the trade dress rights being asserted by Kammok under a functionality analysis. *See Jenny Yoo Collection, Inc.*, 448 F. Supp. 3d at 1171–72. Thus, this analysis factor further supports Easthills' request for entry of partial summary judgment on Kammok's trade dress claim for relief.

The Lanham Act does not provide trademark protection to a mark's functional features. *Brunswick Corp. v. Spinit Reel Co*., 832 F.2d 513, 517 (10th Cir.1987). The test for functionality in the Tenth Circuit is relatively clear. *See Hartford House, Ltd. v. Hallmark Cards, Inc*., 846 F.2d 1268, 1272 (10th Cir. 1988). "Whether the feature is functional should turn on 'whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods.'" *Id*. 846 F.2d at 1272 (citations omitted).

If competitors need to be able to use a particular configuration to make an

equally competitive product, it is functional, but if they do not, it may be nonfunctional. *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1507 (10th Cir. 1995). The availability of equally satisfactory alternatives for a particular feature, and not its inherent usefulness, is often the fulcrum on which Lanham Act functionality analysis turns. *Id.* However, "the crucial determination is not the availability of alternative designs, but whether the design at issue is 'the reason the device works.'" *OraLabs, Inc. v. Kind Grp. LLC,* No. 13-CV-00170-PAB-KLM, 2015 WL 4538444, at *12 (D. Colo. July 28, 2015) (quoting *TrafFix*, 532 U.S. at 34).

Here, Kammok's asserted trade dress rights are incapable of functioning as an indicator of source because they are basically design features that are commonly used by others in the industry. Stated differently, Kammok is trying to claim that a "clamshell holder," which is basically a C-shaped or U-shaped hook, and certain associated, required anchors, are non-functional indicators of source. Kammok's position is objectively unreasonable because these design features are the reason its Swiftlet and many other competitors' portable hammocks work.

Support for this proposition is readily available through a rudimentary Internet search. For instance, the Yellow Leaf Adjustable Hammock Stand, the Parkway Adjustable Hammock Stand, the BCP Portable Heavy-Duty Steel Hammock Stand, and the FDW Hammock Stand, to name only a few, all have U-shaped (i.e. "clam shaped") holders where a hammock is spread through and

15

attached to the anchor points on the sides of the stand's arms to secure the hammock in place. (Movant's Appx. p. 57-74 - Ex. F) The presence of these easily ascertainable and commonly utilized design features implemented by competitors in the portable hammock industry demonstrates that Kammok is not entitled to trade dress protection of the alleged Swiftlet Trade Dress. Accordingly, these circumstances further support Easthills' request for entry of partial summary judgment against Kammok's trade dress infringement claim for relief as a matter of law.

### b. Kammok's Swiftlet Trade Dress is Not Distinctive.

Kammok's asserted rights in the Swiftlet Trade Dress are also incapable of protection under § 43(a) of the Lanham Act, 15 U.S.C. § 1051, et seq., because it is not distinctive and is incapable of having acquired secondary meaning. Accordingly, this conclusion also supports Easthills' request for entry of partial summary judgment against Kammok's trade dress infringement claim for relief.

A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular source." *Sally Beauty Co.*, 304 F.3d at 977 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). A trade dress which is not inherently distinctive, however, may acquire distinctiveness through secondary meaning. *Id.* at 769. Trade dress based on product design, as in this case, is protectable only if the design has acquired secondary meaning. *See Wal-Mart Stores*, 529 U.S. at 212, 216.

A trade dress acquires secondary meaning when "its primary significance in the minds of potential consumers is no longer as an indicator of something about the

product itself but as an indicator of its source or brand." *Vornado Air Circulation Sys.*, 58 F.3d at 1502. To acquire secondary meaning, a trade dress "must have been used so long and so exclusively by one producer with reference to his goods or articles that, in the trade and to that branch of the purchasing public, the [trade dress] has come to mean that the article is his product." *Water Pik, Inc. v. Med–Sys., Inc.*, 726 F.3d 1136, 1154 (10th Cir.2013). Put another way, secondary meaning exists when "in the consumer's mind the [trade dress] denotes a single thing coming from a single source." *Sally Beauty Co.*, 304 F.3d at 978.

Here, Kammok's claimed rights in and to the Swiftlet Trade Dress simply cannot be entitled to trade dress protection because the design features are not distinctive and have not acquired secondary meaning. To begin with, the Swiftlet Trade Dress is a part of a patented product design. (Movant's Appx. p. 38-55 - Ex. E) Further, the Swiftlet Trade Dress is incapable of acquiring secondary meaning because the claimed elements are used by others in the portable hammock industry as shown below.





(Movant's Appx. p. 57-74 - Ex. F)

As illustrated above, the Yellow Leaf portable hammock contains similar elements to those asserted by Kammok in the Swiftlet Trade Dress in that it includes U-shaped holders positioned at the end of the stand's arms to hold the hammock and textured anchors very similar in shape to the Swiftlet's to secure the hammock ends. (Movant's Appx. p. 68 - Ex. F) Likewise, the Parkway adjustable hammock stand includes clamshell-shaped holders at the end of the stand's arms which are nearly identical to the Swiftlet's and anchored hooks to secure the hammock ends. (Movant's Appx. p. 67 – Ex. F) Similarly, the Best Choice Products' portable hammock stand includes U-shaped ends positioned at the end of the stand's arms to hold the hammock and bent anchors in which to secure the hammock, both of which are also similar to the elements asserted in the Swiftlet Trade Dress. (Movant's Appx. p. 57 – Ex. F) Finally, the FWD portable hammock stand contains similar elements to those asserted by Kammok in the Swiftlet Trade Dress in that it also

includes U-shaped ends positioned at the end of the stand's arms to hold the hammock and anchored hooks in which to secure the hammock. (Movant's Appx. p. 63 – Ex. F) Unsurprisingly, the above referenced examples are far from exhaustive of portable hammock competitors employing identical or virtually identical elements to those being asserted by Kammok in its alleged rights reflected in the Swiftlet Trade Dress.

The fact that Kammok's alleged protectable elements in the Swiftlet Trade Dress are being used in the product design of so many others direct competitors clearly shows that their use is neither exclusive nor a distinctive indicator of product source, which is required to prove distinctiveness. *See Water Pik, Inc.*, 726 F.3d at 1154. Even if the "clamshell hammock holder" and "textured anchors" are somehow deemed not to be functional, which they clearly are, they cannot serve as a source identifier when they are widely used by others in the same industry. *See id.* Without having inherent distinctiveness, or acquiring secondary meaning, Kammok's trade dress claim cannot survive entry of partial summary judgment. Accordingly, Easthills' Motion should be granted.

## **CONCLUSION**

In conclusion, for Kammok to succeed on its claim for trade dress infringement, it must show that the Swiftlet Trade Dress is functional or that it has acquired secondary meaning through its distinctiveness. As argued above, the Swiftlet Trade Dress is clearly functional based on the descriptions contained in the '893 Patent and

the fact that other competitors in the portable hammock industry employ virtually identical features for which the company bases its asserted trade dress rights. Moreover, the asserted Swiftlet Trade Dress rights could not have acquired secondary meaning through its distinctiveness because these same features are used by numerous other portable hammock competitors. Accordingly, having demonstrated that Kammok does not, and cannot satisfy, that its asserted trade dress infringement rights are functional and not distinctive, the Court should grant Easthills' Motion.

 DATED" April 2, 2024.

                                        **BAYRAMOGLU LAW OFFICES LLC.**
                                        Respectfully submitted,

                                        */s/ Shawn A. Mangano*
                                        SHAWN A. MANGANO (NV Bar No. 6730)
                                        shawnmangano@bayramoglu-legal.com
                                        NIHAT DENIZ BAYRAMOGLU (NV Bar No. 14030)
                                        deniz@bayramoglu-legal.com
                                        Emily M. Heim (FL Bar No.
                                        emily@bayramoglu-legal.com
                                        **BAYRAMOGLU LAW OFFICES LLC**
                                        1540 West Warm Springs Road Ste 100
                                        Henderson Nevada 89014
                                        Telephone: 702.462.5973
                                        Facsimile: 702.553.3404

## CERTIFICATE OF SERVICE

I hereby certified that a true correct copy of the foregoing **DEFENDANT EASTHILLS, INC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served upon Kammok by ECF on this 2nd day of April 2024.

DATED: April 2, 2024                /s/ *Shawn A. Mangano*
                                    SHAWN A. MANGANO
                                    **BAYRAMOGLU LAW OFFICES LLC**


## Certification Re: Use of Artificial Intelligence (AI) for Drafting

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that (a) no portion of the filing was drafted by AI, or that (b) any language drafted by AI (even if later edited by a human being) was personally reviewed by the filer or another human being for accuracy using print reporters or traditional legal databases and attests that the legal citations are to actual existing cases or cited authority.

/s/ *Shawn A. Mangano*
SHAWN A. MANGANO
**Bayramoglu Law Offices LLC**