1

```
1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2

3    CIVIL ACTION NO. 23-cv-02405-SKC-MEH

4    _____

5    KAMMOK HOLDINGS, LLC,

6         Plaintiff & Counter Defendant,

7    v.

8    EASTHILLS, INC., and DOES 1-10,

9    Defendants & Counter Claimant.

10   _____

11             Proceedings before MICHAEL E. HEGARTY, United

12   States Magistrate Judge, for the District of Colorado,

13   commencing at 2:36 p.m. on February 8, 2024, in the United

14   States Courthouse, Denver, Colorado.

15   _____

16   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

17   HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18   _____

19                        APPEARANCES

20             P. DOUGLAS MARSH and DOMINIC SHAW, Attorneys at

21   Law, appearing on behalf of the Plaintiff/Counter Defendant.

22             SHAWN MANGANO, Attorney at Law, appearing on

23   behalf of the Defendant/Counter Claimant.

24   _____

25                        ORAL ARGUMENT
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

2

1              P R O C E E D I N G S

2              THE COURT:  All right.  We're here on 23-cv-02405,

3    Kammok Holdings, LLC V. Easthills, Inc.  And Does 1 to 10.

4    Please make your appearances.

5              MR. MARSH:  Good afternoon, Your Honor.  This is

6    Doug Marsh on behalf of Kammok Holdings, LLC.  Also with us

7    today is Dominic Shaw, who is also counsel for Kammok

8    Holdings, and I will be handling the argument today, Your

9    Honor.

10             THE COURT:  Thank you.  Do we have Easthills?  Is

11   this -- Mr. Marsh, you said you're -- you and Mr. Shaw are

12   both for Kammok?

13             MR. MARSH:  Yes, Your Honor, that's correct.

14             THE COURT:  Do we have defense in the house?

15   Anybody online for the defendant, Easthills, Inc.?

16             MR. MARSH:  Your Honor, in the sidebar, I see

17   Shawn Mangano, I see his name listed.  He would be counsel

18   for defense.  I don't know if there's just some connection

19   issue, but I do see him listed under "Participants."

20             THE DEPUTY:  Mr. Mangano, this is the courtroom

21   deputy.  I just want you to know that you are showing muted

22   in our host meeting room, if you want to unmute yourself.

23   And at the moment, you're not projecting video either.  All

24   right.  He just dropped off, so I believe he's probably

25   trying to reconnect.

1          Hi.  My name is Chris Thompson.  I'm a courtroom

2     deputy for Judge Hegarty, and we have a court hearing with

3     Mr. -- I believe Mr.  Mangano -- Mr. Shawn Mangano, and he

4     was popping into video, but got disconnected.

5          Is he there in the office so we can speak to him?

6     Yeah, not a problem.  My name is Chris Thompson.  I'm the

7     judge's courtroom deputy.  Not a problem.

8          MR. MANGANO:  Hello?

9          THE DEPUTY:  Mr. Mangano, is that you?

10          MR. MANGANO:  Yeah.  I got booted out of the

11     videoconference.

12          THE DEPUTY:  Yes, sir.  We -- we had you in the

13     wait -- in the room.  We did not have you by video or audio,

14     though.  I'm not sure if we -- were we projecting on your

15     end?

16          MR. MANGANO:  Yeah, yeah, you were projecting.

17     It's just I -- it kicked me out, and then I couldn't sign

18     back in, so I just figured I'd dial in.

19          THE DEPUTY:  Okay.

20          THE COURT:  Are we on the phone?

21          THE DEPUTY:  Well, calling through the video.

22          MR. MANGANO:  Yes.

23          THE COURT:  Oh, calling through the video.  Okay.

24          I've called the case 23-cv-02405, Kammok Holdings,

25     LLC V. Easthills Inc., LLC and Does 1 through 10.  Go ahead

4

1    and reenter your appearances for the plaintiff, please.

2            MR. MARSH:  Thank you, Your Honor.

3            Doug Marsh on behalf of Kammok Holdings, LLC, the

4    plaintiff.  Also with me is Mr. Dominic Shaw.

5            THE COURT:  Thank you.

6            MR. MANGANO:  And Shawn Mangano for defendant.

7            THE COURT:  All right.  So go ahead.  Who's going

8    to argue for the plaintiff and who's going to argue --

9            MR. SHAW:  Your Honor --

10            THE COURT:  Go ahead.  Is it you, Mr. Marsh?

11            MR. MARSH:  Your Honor, it's me.  I'll be arguing

12    on behalf of plaintiff.

13            THE COURT:  Go ahead, Mr. Mangano.  Your motion,

14    okay?

15            MR. MANGANO:  Okay.  Your Honor, what we have here

16    is obviously our motion for Rule 11 sanctions.  What we have

17    is two direct competitors in the portable hammock market.

18    Defendant, our clients, had initiated a Crowdfunding

19    campaign with -- with the platform Kickstarter.

20            It -- defendant had successfully raised over $1.6

21    million.  During the pendency of the Crowdfunding campaign,

22    plaintiff initiated a takedown request under the Digital

23    Millennium Copyright Act claiming that defendant's portable

24    hammock infringed their company's copyright.

25            At the time the plaintiff made these assertions,

5

1  they did not have a registered copyright and they did not

2  have a protectable copyright interest.

3         Defendant -- defendant's then provided DMCA

4  counter notices to advise plaintiff's lack of protective

5  copyright interest and the lack of a copyright registration.

6  The result of the (indiscernible) was sent to opposing

7  counsel, counsel for the plaintiff that advised the same

8  thing.

9         The -- under the DMCA, the takedown procedure

10  suspends the campaign for a period of some 14 days, and then

11  enters a -- there's a -- there's a counter notice that's

12  filed.  Actually, the -- the counter notice that's been

13  filed and then the party asserting the copyright

14  infringement has 14 days to file a federal action.

15         Plaintiff did that.  They filed a -- they filed a

16  complaint with this Court and have included a claim of

17  copyright infringement.  At the time of filing the copyright

18  infringement claim, they did not have a registered copyright

19  as is required by Supreme Court precedent.

20         They provided a copy of the complaint to

21  Kickstarter in an attempt to keep our client's Crowdfunding

22  campaign taken down and they provided that to Kickstarter.

23  Kickstarter also advised them that they needed to have a

24  registered copyright in order to validly assert a copyright

25  infringement claim.

6

1          Incidentally, the same -- the same day that they

2    filed the -- filed the complaint with the Court, they had

3    also received a rejection of a copyright application from

4    the United States Copyright Office.

5          So we're facing the situation where there was

6    multiple times that -- that the plaintiff was advised that

7    they required a registry -- a registration from the

8    copyright office in order to validly assert a copyright

9    infringement claim.  Kickstarter advised them, the -- our --

10   our office advised them, and they still went forward and

11   filed suit.

12         We filed the Rule 11 motion and, unfortunately,

13   due to a calendaring error, we did -- we filed our motion on

14   -- on the 21st day of the Safe Harbor.  In view of that,

15   Your Honor, we're not asking for an award of any monetary

16   sanctions paid in the form of attorney's fees and costs.

17         If the Court would want to issue some other

18   sanction payable to the Court, that's -- that's -- that's up

19   to the Court.

20         We feel that this was an act that it took them

21   basically all 21 days until they took corrective action.

22   They had been repeatedly advised that they did not have --

23   have a sufficient claim to proceed on a copyright

24   infringement theory.  And they, nonetheless, didn't do

25   anything until we brought the -- brought our Rule 11 motion.

7

1          We are seeking an order from the Court that

2     establishes that they filed this claim without a legal or

3     factual basis to do so, and that is -- that's the relief

4     we're seeking.

5          THE COURT:  Okay.  Mr. --

6          MR. MARSH:  Thank you, Your Honor.

7          So counsel for the defendant began by running

8     through the DMCA takedown procedure.  That's also how the

9     Rule 11 motion begins. The Rule 11 motion begins stating

10    that the basis for their motion was how Kammok behaved with

11    regard to filing a DMCA takedown notice with Kickstarter.

12         That may lead the Court to (indiscernible) believe

13    that the only issue in this litigation is that single

14    copyright infringement claim and that was filed for the

15    exclusive purpose of extending what they believe to be a bad

16    faith DMCA takedown request.

17         And that's simply not true, Your Honor.  This case

18    is not simply about a DMCA takedown request.  Kammok filed

19    suit to protect all of their intellectual property

20    interests, including patent interests, trade dress

21    interests, and, yes, it's copyright interests.

22         Easthills has answered the patent and trade dress

23    claims, at least the ones that were raised in the original

24    complaint -- the amended complaint was filed yesterday --

25    but have not moved to dismiss the patent or trade dress

8

1    claims, nor have they served any sort of Rule 11 motion with

2    regard to those claims.

3          So I think it's important to take a step back at

4    the outset, Your Honor, and just understand that this is

5    only a small portion of the case that -- that we're talking

6    about.  And without a more holistic understanding of the

7    case, Kammok's position is that the Court should deny the

8    Rule 11 motion.

9          And there are two reasons that the Court should

10   deny that motion.  The first is that Easthills has failed to

11   follow the procedures required by Rule 11.  And second is

12   that Easthills is using its Rule 11 motion for the improper

13   purpose of conducting satellite litigation on one of the

14   counterclaims.

15         Now, diving into that -- that first reason,

16   Easthills has failed to comply with Rule 11.  Rule 11 has

17   been around since at least before 1913.  It was amended in

18   1913.  It was amended again in 1983, and then it was amended

19   a third time, most recently in 1993.

20         The 1993 amendment to Rule 11, as subsection

21   (C)(2) -- or I -- I should say here subsections (C)(2) the

22   amended Rule 11, parties now have a 21-day safe harbor

23   period during which they have the right to withdraw or

24   otherwise appropriately correct any challenge -- any claim

25   or paper that is challenged under Rule 11.

9

1          Rule 11(C)(2) reads in relevant part that after a

2    motion is served, that motion, quote, must not be filed or

3    presented to the Court if the challenged paper, claim,

4    defense, contention, or denial is withdrawn or appropriately

5    corrected within 21 days after service.

6          The District of Colorado in the Tenth Circuit at

7    large has repeatedly stated that that subsection (C)(2) is

8    to be strictly enforced.  And we can break that subsection

9    (C)(2) down into two parts.

10          First, there's the 21-day time period.  Easthills'

11    counsel has just conceded, correctly so, that prior -- that

12    they filed their Rule 11 motion prior to the expiration of

13    the 21-day safe harbor period.

14          Now, they tried to excuse this, their strict

15    compli- -- their failure to strictly comply with Rule 11 by

16    saying, "Well, we're just not go to ask the Court for our

17    attorney's fees any longer," but they've cited no case law,

18    no statute, no rule that allows them to fail to strictly

19    comply with Rule 11 and somehow still seek some other

20    non-economic sanction.

21          On the basis of -- of that failure alone, the

22    Court can deny their motion.

23          But they also failed to comply with the safe

24    harbor portion of the rule.  So, obviously, the -- the rule

25    states that the motion, quote, must not be filed or

1    presented to the Court, end quote, you know, if there is

2    sort of some withdrawal or correction.  And that's exactly

3    what happened here.

4              We -- my office was served with the Rule 11 motion

5    on December 11th.  17 days later, not 21 as Easthills has

6    already said -- 17 days later well within the safe harbor

7    period, we sent them an email back and we said, "Hey, we're

8    willing to withdraw the" -- "the copyright infringement

9    claim.  Here's a redline of the amended complaint that

10   completely removes that claim.  However, you have already

11   filed your answer, so we can't just file an amended

12   complaint.  Do we have the written consent to file this?"

13             Four days later on -- four or five days later on

14   January 2nd, which was the last day that we had to take

15   corrective action, I followed up in an email and said, "Hey.

16   I assume you're not going to file the Rule 11 motion.  Do we

17   have your consent to file this"?  And Easthills responded

18   and said, "No, you don't have our consent to file this

19   because you have not offered to pay our fees."

20             Kammok responded and said, "We're not obligated to

21   pay your fees.  We have the right to withdraw during this

22   period," to which Easthills responded, "Okay.  Well, you

23   don't have to pay our fees, but you do have to make a

24   concession that you never had a legal or factual basis to

25   raise this claim to begin with."

1          We said, "Well, we disagree.  We believe we have a

2     legal and a factual basis to raise this complaint, but you

3     know, even though we're willing to withdraw it, you aren't

4     allowed to demand that we make such a concession."  And so

5     we -- we said no, and went ahead and filed their motion a

6     day early.

7          That same day within a couple hours of their

8     filing their motion, we filed a motion to amend our

9     complaint, which Your Honor has already granted and which

10    totally removes the only challenged claim in our complaint.

11         So under Rule 11, because we took appropriate

12    action to withdraw or correct the claim, they should have

13    never filed their motion.

14         And we've cited case law in our opposition to the

15    Rule 11 motion that says even just offering to withdraw your

16    claim is enough, that is sufficient corrective action, those

17    -- those recent cases that we've cited have gone unrebutted

18    by the defendant.

19         Instead, defendant has relied on exactly one

20    substantive case where they argue stands for the proposition

21    that the Court can still issue sanctions even after a party

22    has withdrawn the challenge claim.

23         The case they relied on is the Cooter (ph) case,

24    which is a Supreme Court case from 1990.  That case was

25    issued three years before Rule 11 was amended to add the

1  safe harbor provision and, therefore, it has absolutely no

2  bearing on this case.  It doesn't even cite the Rule that is

3  at issue here.

4         However, even if Cooter did somehow apply, the

5  facts are totally different.  In Cooter, the plaintiff filed

6  their complaint and the defendant filed a motion to dismiss

7  and contemporaneously at the same time as the motion to

8  dismiss, issued a Rule 11 motion.

9         The Department litigated that motion to dismiss.

10  They spent six months, you know, actively engaged in

11  litigation, and when the writing was finally on the wall for

12  the plaintiff, they tried to reach back six months to the

13  Rule 11 motion and to withdraw their claims.

14         You know, six months later and six months of fees

15  having gone by the, the defendant said, "Hey, you can't just

16  withdraw your claims now," and the Court agreed.  That's --

17  whether the facts of Cooter (indiscernible) the facts here,

18  here we received the Rule 11 motion, and within 17 days, we

19  offered to withdraw our claims.

20         So I mean, Cooter doesn't apply because it's not

21  -- you know, it's not addressing the Rule that is before the

22  Court, but it also factually is easily distinguishable from

23  the present action.

24         So those are the Rule -- those are the Rule 11

25  reasons that the Court may deny the motion.  But I also do

13

1   want to address the second reason that the Court may deny

2   the motion, and that is because the Rule 11 motion is being

3   used to litigate Easthills -- one of Easthills'

4   counterclaims.

5          Now, counsel for defendant went through at the

6   beginning of his argument and explained how they believe

7   that the DMCA takedown notice was taken in bad faith and how

8   it damaged his client.  That is one of their counterclaims;

9   they have a counterclaim under the DMCA.

10         Now -- and so because they're no longer seeking

11  economic sanctions, they're now turning to the Court and

12  asking the Court to make findings that our original

13  complaint was filed without any legal or factual basis.

14  This is the exact type of satellite litigation that the 1993

15  amendment to Rule 11 is designed to avoid.

16         There's (indiscernible) finding in support of the

17  counterclaim through a Rule 11 challenge to our complaint.

18  This should not be allowed.  A party who is willing to

19  dismiss the challenge claim should have the opportunity to

20  do so.

21         But supposing for a moment the Court is willing to

22  consider the satellite litigation, Kammok absolutely

23  believes that they were allowed to raise the claims that

24  they raised.  First, because this is all based on the DMCA,

25  the DMCA actually allows a party to challenge, you know --

14

1   allows Party A to challenge Party B's selling of a product

2   online, even if there is no registered copyright.  We've

3   cited that -- you know, those cases in our opposition to the

4   Rule 11 motion.

5           Additionally, a party has a copyright interest

6   when something is created, and we've cited those cases in

7   our rely to our motion to amend, because that was brought

8   into question with the opposition to the motion to amend.

9           But getting right down to the copyright

10  infringement claim, defendants rely on the Supreme Court

11  case for the State to say that a copyright infringement

12  claim can never be filed, unless there's a registered

13  copyright, and that is not the Rule.

14          The Rule comes from a statute, 17 U.S.C. 411(a).

15  That statute allows a party to file a copyright infringement

16  claim under three different circumstances, not one.

17          One is when there's a registered copyright.  Two

18  is when there's preregistration for a copyright.  And three

19  is, quote:  In any case, however, where the deposit,

20  application and fee required for registration have been

21  delivered to the copyright office in proper form and

22  registration has been refused, the applicant is entitled to

23  institute a civil action for infringement if notice thereof

24  with a copy of the complaint is served on the registered

25  copyrights.

1          Now, defendants have pointed out that our

2    registration was refused the day we filed this.  That's

3    fine.  All we had to do was file and then eventually serve

4    that on the register of copyrights.

5          Instead, they served their Rule 11 motion.  We

6    looked at it.  We decided we don't want to bring a third

7    party to litigate this, the register of copyrights, and

8    said, you know, "Let's just drop this claim.  We're still

9    protected with our patent claims, our trade dress claims."

10   And so for strategic reasons, we agreed to withdraw.

11         So we have every right to make the claim that we

12   did and we're hoping that that would avoid the satellite

13   litigation where we're getting into, you know, the statutes,

14   where we're get into to all this case law about DMCA and how

15   that works.

16         Yet, defendants have pushed us to this point where

17   we've spent all of this time and effort when we could have

18   just relied on the -- the safe harbor provision.

19         And so we would -- we would have some other basis

20   for the Court to deny the Rule 11 motion.  The Court in its

21   recent order, which was Docket No. 36, also said that the

22   Court would consider their request for additional relief

23   that was raised in the opposite -- their opposition to the

24   motion to amend.

25         In that opposition, we asked the Court to make

1    three findings.  One is the one that defense counsel

2    addressed, which is that there was never a legal or factual

3    basis for Kammok to file.  I believe I've addressed that

4    one.  The Court should not make that finding.

5           The second condition is that plaintiff has waived

6    all copyright claims for relief, as alleged in the

7    complaint.  That request for relief in the opposition to the

8    motion to amend is not supported by any case law.

9           Imagine for a moment that as Kammok is appealing

10   the decision that registration was denied, imagine for a

11   moment we get the copyright office to reverse that decision

12   and give us a copyright.  What would be the basis for us to

13   not be able to then enforce those copyright rights?

14          There's been none cited, and I'm not aware of any,

15   Your Honor.  And so the Court should deny that request for

16   relief.

17          The final request for relief that is raised in the

18   motion to amend opposition is they want the Court to make a

19   finding and order that the complaint is admissible as an

20   admission against plaintiff.  Frankly, Kammok does not

21   really disagree with that position, Your Honor.  I think the

22   original complaint, it's part of the record, it -- it will

23   likely be used as support for their DMCA counterclaim.  I

24   just think it's unnecessary for the Court at this stage to

25   adjudicate it as admissible in every instance.

1          I don't really see any -- any objections we would

2    ever have to it being admissible; but to the extent that any

3    may exist, those should be dealt with at the time that

4    they're trying to introduce the complaint as evidence, and

5    so I think we're just a little bit too early on that.

6          And I believe that's everything that they've

7    requested through the Rule 11 complaint, or the Rule 11

8    motion and their opposition.  I believe, based on the

9    authority that we've cited in our briefs, Kammok should

10   prevail on all of these claims, which would set Kammok up as

11   the prevailing party as in regard to this issue.

12         And so under Rule 11(C)(2), we would believe it's

13   warranted, particularly given the fact that we tried to

14   withdraw and they refused our withdrawal, we believe that

15   it's warranted for the Court to award us all reasonable

16   expenses and attorney's fees, including those that were

17   incurred through the motion to amend, which wouldn't have

18   been incurred, but for their refusal to allow us to withdraw

19   the claim that they specifically requested we withdraw.

20         So unless the Court has any questions, that's all

21   -- all I have.

22         THE COURT:  I have a question for you.  You said

23   that the Supreme Court authorized a circumstance when a

24   registration has been denied and then you have the right to

25   do what?

1          MR. MARSH:  Excuse me.  So that's -- in front of

2    the Supreme Court, it's Federal Statute -- it's Federal

3    Statute 17 U.S.C. 411(a).  That statute determines when a

4    copyright infringement claim may be filed and so it -- it

5    gives three circumstances in which a copyright infringement

6    claim can be filed.

7          The first is if the claim receives said

8    preregistration.  The second is if the claim receives --

9          THE COURT:  Well, stop there.  You didn't receive

10   preregistration, correct?

11         MR. MARSH:  No, no.  We -- we -- we would not.

12         THE COURT:  Okay.  Go ahead.

13         MR. MARSH:  Second is registration, which we also

14   did not receive.

15         THE COURT:  Right.

16         MR. MARSH:  And then the third, the -- to quote

17   from the statute directly, it says, "In any case, however,

18   where the deposit, application, and fee required for

19   registration has been delivered to the copyright office in

20   proper form and registration has been refused," so I'm going

21   to -- I'm going to pause right there.

22         We did -- we did deliver deposit, application, and

23   fee for registration to the copyright office and so -- and

24   it was refused.

25         Resuming from the statute, it says:  -- "the

1  applicant is entitled to institute a civil action for

2  infringement if notice thereof with a copy of the complaint

3  is served on the register of the copyrights."

4          Now, we did not get to the point of serving the

5  register of copyrights because we -- we hadn't even served

6  the defendant at the time that they answered this claim and

7  then began this Rule 11 issue.

8          There's no exact timeline in the statute as to

9  when we would be expected to serve our complaint on the

10  register of copyrights.  We just would have had to do that

11  to maintain our claim.

12          Obviously, we're not maintaining our claim.  We

13  don't want to bother getting the register of copyrights

14  involved in this litigation.  We don't want the expense.

15  And so we're just withdrawing the claim instead.

16          THE COURT:  Okay.  I -- I want to ask you this,

17  because I think the defense believes it needs something, and

18  I want to see if this will satisfy everybody.

19          Would you be -- would you be amenable to entering

20  a stipulation that you filed the copyright claim in a

21  circumstance that 411(a) did not authorize, nor did the

22  Supreme Court, because the Supreme Court said that

23  registration is akin to an administrative exhaustion

24  requirement that the owner must satisfy before suing to

25  enforce ownership rights?

1          So would you be amenable to entering to, at least,

2     that stipulation that the claim was filed at a time when

3     neither the statute, nor the Supreme Court authorized such a

4     claim?

5          MR. MARSH:  No, Your Honor, I -- I wouldn't.  411

6     allows us to file and -- and -- and entitles us to institute

7     a civil action where we don't have registration.  All we

8     have to do is at some point -- and the statute doesn't make

9     clear -- also serve a copy of the complaint on the register

10    of copyrights.

11         THE COURT:  And I don't -- I don't think --

12         MR. MARSH:  So the (indiscernible) --

13         THE COURT:  I'm going to find that that statute

14    has not been met under a plain language analysis, so you're

15    not entitled to that.  Would --

16         MR. MARSH:  I -- I appreciate your -- your reading

17    of the statute, Your Honor.  But the question is whether or

18    not we had a legal basis.  And I think there's at least a

19    legal argument, because the statute does not stipulate as to

20    whether we file and then serve, or we have to serve the

21    copyright, and then file.

22         I -- I -- our -- our understanding was that we

23    would have to have filed because the -- the statute goes on

24    to say that the register may at his or her option become a

25    party to the action with respect to the issue of

1    registerability.  And the -- the -- the register of

2    copyrights can do that if we serve on them an unfiled

3    complaint that happens to have a copyright infringement

4    claim.

5         And remember, Your Honor, we're here on Rule 11

6    where the question is whether there was a legal or factual

7    basis for our -- our filing.  And so I mean, Your Honor may

8    disagree ultimately with our legal position, and that's

9    fine, we've withdrawn the claim; but I don't think there's a

10   reason to issue a finding when we had a viable -- at least a

11   colorable legal argument as to why we filed --

12        THE COURT:  I'm not talking --

13        MR. MARSH:  -- and when we had --

14        THE COURT:  -- about a finding though.  I'm trying

15   to avoid a finding.  I'm inviting you to just sign a

16   stipulation that doesn't involve the Court.

17        MR. MARSH:  I appreciate that, Your Honor.  But,

18   ultimately, a stipulation has the same effect as a finding.

19   They would turn around and they would say, "Hey, they did

20   not have a legal right to file this; therefore, our DMCA

21   claim is all but proven they acted in bad faith."

22        And because this is really about their DMCA

23   counterclaim, I think we should have the opportunity to

24   present all of the evidence as to why we filed when we did

25   and how we filed the way we did.  We -- we think it's way

1  too early, especially given the fact that they have not

2  complied with Rule 11.

3          MR. MANGANO:  Your Honor, you have the authority

4  to sua sponte issue sanctions in any action, regardless of

5  Rule 11.

6          MR. SHAW:  Your Honor, essentially, no, you do

7  not.  Rule 11 says that this Court can sua sponte issue

8  sanctions only where it issues a show-cause order.  And

9  under Rule 11(c)(3) and (5), the Court does not have

10  authority to do that if we've already taken the corrective

11  action.  Your Honor does not have the authority to issue

12  corrective action on your own at this point, based on

13  something that's already been withdrawn.

14          THE COURT:  Well, the statute actually -- Rule 11

15  doesn't say "in order to show cause."  It says, "If, after

16  notice and a reasonable opportunity to respond, the Court

17  determines 11(b) has been violated."  That's what -- that's

18  what the Rule says.

19          And I -- I don't think I would have a problem

20  finding that their Rule 11 motion is notice that you did

21  respond, actually.  So I'm not saying I'm going to do that;

22  I'm saying I think there's authority to do that.

23          So -- and I mean, my reading of the statute is

24  this:  You can institute a civil action if notice thereof

25  and a copy of the complaint is served on the register of

1    copyrights.  Well, that's no longer possible, since there's

2    no longer a copyright claim, so you can't have complied with

3    the statute.

4         Now, what you're saying is the noncompliance isn't

5    a Rule 11 issue because if you wanted to persist in your

6    copyright claim, you would well have, under your reading of

7    the statute, filed that notice and a copy of the complaint

8    some reasonable time after you filed it in this court.

9         Ultimately, I guess I -- I'm wondering what the

10   defense believes it -- it achieves by either -- well, by a

11   simple order from me without any sanction.

12        What do you achieve by that?

13        MR. MANGANO:  Well, Your Honor, it solidifies what

14   we've been telling them well before suit was filed:  They

15   did not have a legal or factual basis to bring this claim.

16        Now, I'm hearing about this other service of

17   mechanism that service of the register of copyrights and all

18   that, that essentially they've been trying to use that as a

19   get-out-of-jail-free card.

20        Now, they were told by us, they were told by the

21   platform, Kickstarter, they needed to have a registered

22   copyright.  The other circumstances, they were not complying

23   with.  They could have served the register of copyrights.

24   They elected not to do so.

25        So we are simply looking -- first of all, we're

1  looking to the Court to say, You're not allowed to --

2  allowed to come into this court, file a claim without a

3  legal or factual basis, and then not serve the -- not serve

4  the defendant.

5         We voluntarily appeared when we learned about the

6  complaint from Kickstarter.  They cannot be using this court

7  as a sword for their anti-competitive behavior, it's just

8  inappropriate.

9         They've used it to try to continue our -- our --

10  suspend our campaign with Kickstarter, even though everyone

11  told them they couldn't do it.  At some point, it's got to

12  stop.  And that's -- that's -- that's --

13         THE COURT:  I understand.

14         MR. MANGANO:  -- what we're looking for.  We're

15  looking for --

16         THE COURT:  No.  I'm -- I'm --

17         MR. MANGANO:  -- an order that says --

18         THE COURT:  Hold on.  I'm sympathetic.

19         I also believe the statute wasn't complied with

20  because it assumes at the filing of the complaint,

21  registration has been refused.  That did not happen here.

22  The complaint --

23         MR. MANGANO:  Yeah.

24         THE COURT:  The complaint in Paragraph 40 says,

25  "Because the sculptural designs are original works, a

1   copyright registration is expected to be issued."  So I --

2   I'm --

3           MR. MANGANO:  Correct, Your Honor.

4           THE COURT:  -- going to find as a matter of fact

5   that the complaint was filed with the expectation that the

6   registration would be issued and, therefore, could not have

7   been filed, regardless of if it's the same day that those

8   two things happened, when it was already refused.

9           So that is not availing to the plaintiff.

10          So we're sitting here with a situation where it

11  seems as a matter of fact to a preponderance of the

12  evidence, the complaint was filed in a manner that neither

13  the statute nor the Supreme Court would permit.  That's just

14  a fact.

15          Now, what the consequence of that fact is, is what

16  I'm dealing with, and I'm offering sort of an olive branch,

17  but it sounds like the plaintiffs are not taking it.

18          So I guess I'll take the matter under advisement

19  and issue a ruling.

20          MR. MANGANO:  Thank you, Your Honor.

21          THE COURT:  Anything else from the plaintiff?

22          MR. MARSH:  Not from the plaintiff, Your Honor.

23          THE COURT:  Okay.  Then the matter's submitted.

24  Thank you so much.

25          MR. MARSH:  Thank you.

1              THE COURT:  Take care.

2              (Whereupon, the within proceedings concluded at

3    3:13 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

27

1                    TRANSCRIBER'S CERTIFICATE

2    I certify that the forgoing is a correct transcript, to the

3    best of my knowledge and belief (pursuant to the quality of

4    the recording) from the record of proceeding in the

5    above-entitled matter.

6    /s/Brittany Payne                     March 4, 2024

7    Signature of Transcriber              Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25