**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:23-cv-02405-CNS-MEH

KAMMOK HOLDINGS, LLC,

      Plaintiff,

v.

EASTHILLS, INC., and DOES 1–10.

      Defendants

---

**OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ON PLAINTIFF'S TRADE DRESS INFRINGEMENT CLAIM FOR RELIEF**

---

      Plaintiff Kammok Holdings, LLC ("**Kammok**") hereby opposes the April 2, 2024 motion for partial summary judgment on Plaintiff's trade dress infringement claim for relief (the "**Motion**") (ECF No. 56) filed by defendant Easthills, Inc. ("**Easthills**").

## <u>INTRODUCTION</u>

      Kammok manufactures and sells a portable, adjustable hammock stand called the "Swiftlet." Kammok has invested significant money to make the Swiftlet both functional and aesthetically pleasing. The functional aspects of the Swiftlet are protected via the patent (the "'**893 Patent**"), and the aesthetic aspects of the Swiftlet should be protected as trade dress.

      In its First Amended Complaint (ECF No. 38), Kammok has alleged that Easthills has copied both the functional and aesthetic aspects of the Swiftlet through its design of the "Anymaka," another hammock stand. Through the Motion, Easthills seeks the summary dismissal of Kammok's trade dress claim.

The Court should deny this request in its entirety for several reasons. First, the Motion fails on its legal merits, and, at minimum, there are disputed material facts precluding summary judgment. Second, the Swiftlet trade dress is distinctive because it has acquired secondary meaning entitling it to trade dress protection. And third, Kammok's clamshell design for the Swiftlet's hammock holder and its textured anchor points are each nonfunctional and thus entitled to trade dress protection.

In addition, Easthills has failed to provide analysis regarding the entirety of Kammok's trade dress claim. Kammok has alleged three aspects of the Swiftlet that constitute protectible trade dress: (1) sculptural or "textured" designs on Swiftlet's buttons, *see* First Am. Compl. ¶ 19; (2) the clamshell-shaped hammock holder, *id.* ¶ 20; and (3) a black carry bag with gray webbing highlights, *id.* ¶ 24. The Motion addresses only trade dress points one and two. For the reasons noted above, the Court should deny the Motion in its entirety; at a minimum, however, the Court should not dismiss Kammok's trade dress claim as it relates to the carry bag.

## RESPONSE TO STATEMENT OF FACTS

Pursuant to Rule 56, Kammok includes a Statement of Additional Facts ("**SOAF**") below, which is cited throughout. For purposes of the Motion only, Kammok disputes the following statement of fact ("**SOF**") paragraph from the Motion:

> SOF 8: Moreover, the USCO has refused to grant Kammok a copyright for the same elements Kammok is alleging is its trade dress because they are functional. Mangano Decl. ¶ 7, Ex. C.

RESPONSE: Disputed. First, the documents cited by Easthills—Exhibit C to the Motion—do not describe the items for which Kammok sought copyright registration. Easthills bears the initial burden of proving the "the absence of a genuine issue of material fact and entitlement to judgment

as a matter of law." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). By failing to provide evidence that demonstrates the sameness of the copyright and trade dress elements, Easthills has failed to meet its burden. Moreover, even if the Court were to simply assume that the elements in the copyright application were the same as the trade dress elements on which Easthills now seeks summary judgment, this statement would still be disputed because Kammok seeks trade dress protections for its carry bag, which is not addressed in the Motion. First Am. Compl. ¶ 16; *see also* Movant's Appendix, Exhibit C.[1]

### STATEMENT OF ADDITIONAL FACTS

1.      Kammok has invested time, resources, and money into creating a distinct hammock holder at the end of cantilever arms in a clamshell design for the Swiftlet to make it known to consumers. Declaration of Greg McEvilly ¶ 4 (April 23, 2024) ("**McEvilly Decl.**") (attached as Ex. 1).

2.      Kammok has invested time, resources, and money into creating distinct textured anchor points ("textured anchor points") on which a hammock may be attached for the Swiftlet to make it known to consumers. *Id.* ¶ 5.

3.      Kammok has invested time, resources, and money into creating a distinct carry bag in which the Swiftlet can be stored to make it known to consumers. *Id.* ¶ 6.

---

[1] In addition to Easthills's failure to properly support this allegation, the Court should reject any implication that the USCO rejection supports the dismissal of Kammok's trade dress claim because Easthills mentions that the United States Copyright Office has denied Kammok's attempts at securing federal copyright protection "over virtually the same rights being asserted as common law trade dress rights in this action," but it fails to tie this assertion to a supported legal argument. Motion at 1–2, 6. The assertion is sprinkled in the introduction and mentioned once in the preliminary argument. *Id.* This factual assertion should thus have no bearing on the outcome of the Motion.

4.      Kammok's clamshell design is sculptural in nature and separate from the utilitarian purpose of the design. *Id.* ¶ 7; ECF No. 38 ¶ 12.

5.      Kammok's textured anchor points include sculptural features separate from the utilitarian purpose of the design. McEvilly Decl. ¶ 8; ECF No. 38 ¶ 11.

6.      Consumers have commented publicly on the uniqueness of the Swiftlet, particularly its clamshell design and textured anchor points. McEvilly Decl. ¶ 9.

## **ARGUMENT**

The Court should deny the Motion because (1) the clamshell design and textured anchor points are distinct as they have acquired secondary meaning, and (2) they are nonfunctional. These points entitle the Swiftlet trade dress to protection. At minimum, there are disputed material facts relating to the trade dress infringement claim.

A product's trade dress "is its overall image and appearance, and may include features such as size, *shape, color or color combinations, texture*, graphics, and even particular sales technique." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 977 (10th Cir. 2002) (emphasis added). "To establish a claim of trade dress infringement [under the Lanham Act], a plaintiff must show: (1) [t]he trade dress is inherently distinctive or has become distinctive through secondary meaning; (2) [t]here is a likelihood of confusion among consumers as to the source of the competing products; and (3) [t]he trade dress is nonfunctional." *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007). Because Easthills does not challenge the second element of likelihood of confusion,[2] Kammok opposes only Easthills's argument on element one (trade dress

---

[2] *See* Motion at 7 n.1 (note that Easthills incorrectly states it is not seeking summary judgment on element three regarding likelihood of confusion, which is actually element two according to Easthills's cited case law and brief).

distinctiveness) and element three (functionality of the trade dress). The Court should deny Easthills summary judgment because Kammok's trade dress has become distinctive through secondary meaning and is nonfunctional. Kammok's trade dress is therefore entitled to protection.

## I.     THE CLAMSHELL DESIGN AND TEXTURED ANCHOR POINTS HAVE BECOME DISTINCTIVE THROUGH THEIR SECONDARY MEANING.

The Swiftlet trade dress, including the distinctive carry bag, clamshell design, and textured anchor points, has secondary meaning entitling it to trade dress protection; or, at minimum, there is a dispute of material fact about the Swiftlet trade dress's secondary meaning. "[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 216 (2000). "Whether a trade dress has acquired secondary meaning is a question of fact and thus generally should not be decided at the summary judgment stage." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 978 (10th Cir. 2002). Trade dress acquires secondary meaning when "its primary significance in the minds of potential consumers is no longer as an indicator of something about the product itself but as an indicator of its source or brand." *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995).

Here, Kammok's trade dress has acquired secondary meaning because its carry bag, clamshell design, and textured anchored points indicate to consumers that the product is a Swiftlet. SOAF ¶¶ 4–6. Kammok's customers have commented on the uniqueness of the Swiftlet, particularly its clamshell design and textured anchor points. *Id.* ¶ 7. Because the Swiftlet's clamshell design and textured anchor points are indicators of the Swiftlet and more generally of

the Kammok brand, they have acquired secondary meaning and are entitled to trade dress protection.

Additionally, the clamshell design and textured anchor points are not "used by others in the portable hammock industry." Motion at 17. Easthills's examples of the Yellow Leaf portable hammock stand, the Parkway adjustable hammock stand, the Best Choice Products's portable hammock stand, and the FWD portable hammock stand do not use the clamshell design or textured anchor points. The images in the Motion (and Movant's appendix thereto) show that those hammock stands use a C-shaped or U-shaped holder—distinct from Swiftlet's clamshell design, which consists of a U-shaped holder with arms at the top of the U reaching inward. *See id.* at 17–18; Movant's Appx. Ex. F. Easthills goes so far as to assert that the Yellow Leaf portable hammock stand, the Best Choice Products's portable hammock stand, and the FWD portable hammock stand all use U-shaped holders. Motion at 18–19. The U-shaped holder is distinct from the clamshell design associated with Kammok's Swiftlet. Easthills asserts that "the Parkway adjustable hammock stand includes clamshell-shaped holders," but the figure Easthills points to does not appear to show a clamshell-shaped holder. *See id.* at 17–18; Movant's Appx. Ex. F. A reasonable factfinder reviewing the figure could and likely would find that the holder is not clamshell-shaped—which is precisely why it is discouraged to decide the issue of secondary meaning at the summary judgment stage. *See Sally Beauty Co., Inc.*, 304 F.3d at 978.

Despite Easthills stating that these examples "are far from exhaustive," Motion at 19, the Court cannot accept Easthills's assurances that other evidence exists when Easthills did not bother to provide it. Besides, if there were any more similar examples, Easthills surely would have

included those—and it did not. Thus, Easthills has failed to identify any other examples of adjustable hammock stands that use the clamshell design (distinct from a simple C- or U-shape).

Moreover, Easthills has not produced any evidence of a single competitor that has sculptural or textural features on the end of its anchor points. Nor does Easthills even provide a clear picture of what the Swiftlet's anchor points look like. This utter failure to address similar products with sculpted anchor points demonstrates that Easthills has failed to meet its burden of proof for the Motion. *See Thom*, 353 F.3d at 851.

Easthills's inability to find similar competitive products that include a clamshell design and textured anchor points coupled with the customers who have commented on these aspects of the Swiftlet tend to demonstrate that the Swiftlet is so distinctive as to have acquired secondary meaning. But at the very least, there is a dispute of fact that cannot be decided at the summary judgment stage. The Court should deny Easthills summary judgment on the trade dress infringement claim.

## II.    KAMMOK'S SWIFTLET TRADE DRESS IS NONFUNCTIONAL.

The Court should also deny the Motion because Kammok's clamshell design and its textured anchor points are each nonfunctional and thus entitled to trade dress protection. Trade dress must be nonfunctional to be entitled to trade dress protection. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). "Whether the feature is functional should turn on whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in the sale of goods." *Hartford House v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1272 (1988) (citation and internal quotation marks omitted); *see also Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1256 (D. Colo. 2009). "As the Tenth

7

Circuit has commented, the 'availability of equally satisfactory alternatives for a particular feature, and not its inherent usefulness, is often the fulcrum on which Lanham Act functionality analysis turns.'" *Predator Intern.*, 669 F. Supp. 2d at 1256 (quoting *Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1507).

Easthills relies heavily on non-binding decisions by other district courts and outside of the Tenth Circuit to force the functionality analysis into consideration of two factors. *See* Motion at 7–16 (quoting *Jenny Yoo Collection, Inc. v. Essence of Australia, Inc.*, 448 F.Supp.3d 1162, 1171–72 (D. Kansas 2020) to set out four factors to determine whether trade dress is nonfunctional: "(1) the existence of a utility patent that discloses the utilitarian advantages of the design sought to be registered; (2) advertising by the applicant that touts the utilitarian advantages of the design; (3) facts pertaining to the availability of alternative designs; and (4) facts pertaining to whether the design results from a comparatively simple or inexpensive method of manufacture."). *Jenny Yoo*, in turn, cites *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1374 (Fed. Cir. 2012), which is, again, non-binding in this Circuit. Nevertheless, the two factors with which Easthills takes issue can map onto the governing case law analysis of trade dress functionality and are analyzed below. Each of these factors—existence of a utility patent and availability of alternative design—support Kammok's position that the Swiftlet trade dress is nonfunctional. Accordingly, the Court should deny the Motion for this reason as well.

## A. There Are Available Alternative Designs to the Swiftlet Trade Dress.

There are available alternative designs to the Swiftlet trade dress, and so the trade dress is nonfunctional. "Whether the feature is functional should turn on whether the protection of the [feature] would hinder competition or impinge upon the rights of others to compete effectively in

the sale of goods." *Hartford House*, 846 F.2d at 1272 (citation and internal quotation marks omitted). "As the Tenth Circuit has commented, the 'availability of equally satisfactory alternatives for a particular feature, and not its inherent usefulness, is often the fulcrum on which Lanham Act functionality analysis turns.'" *Predator Intern.*, 669 F. Supp. 2d at 1256 (quoting *Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1507). "If competitors need to be able to use a particular configuration in order to make an equally competitive product, it is functional, but if they do not, it may be nonfunctional." *Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1507.

Here, competitors do not need to use the "particular configuration" of the clamshell design or the textured anchor points to compete effectively with the Swiftlet. *See* Motion at 14 (citing *Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1507). Easthills's own argument demonstrates the availability of alternative designs to competitors. First, Easthills incorrectly asserts that the clamshell design "is basically a C-shaped or U-shaped hook." Motion at 15. But the clamshell design is distinct, with arms at the top of the U that pinch inward. Kammok invested time and resources to develop this distinctive design. SOAF ¶ 1. Moreover, Easthills's inaccurate description itself indicates that there are available alternatives—namely, a C-shaped or U-shaped hook rather than a clamshell-design. Easthills incorrectly equates C-shaped or U-shaped hooks to Kammok's distinct clamshell design. Second, the examples Easthills sets forth from its "rudimentary Internet search" are evidence of this point. Motion at 15–16. Easthills's examples of the Yellow Leaf Adjustable Hammock Stand, Parkway Adjustable Hammock Stand, BCP Portable Heavy-Duty Steel Hammock Stand, and FDW Hammock Stand "all have U-shaped" holders. *Id.* at 15; *see also* Movant's Appx. Ex. F. Looking at the pictures displayed in Exhibit F to Movant's Appendix, it is apparent that the shapes of those holders differ from Kammok's clamshell design.

They are, indeed, C-shaped or U-shaped, not shaped in Kammok's clamshell design. It is the clamshell design of Kammok's holder that is trade dress, not a generic C-shaped or U-shaped holder as Easthills attempts to argue.

Easthills provides no analysis on whether the textured anchor points have available alternative designs. *See* Motion at 14–16. Easthills merely refers to "certain associated, required anchors" and states that a hammock is "spread through and attached to the anchor points on the sides of the stand's arms." Motion at 15–16. These statements in no way describe a lack of alternatives for competitors or that a particular configuration is necessary for anchor points, which precludes summary judgment. *See Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1507.

At minimum, fact questions regarding whether Kammok's trade dress is functional preclude entry of summary judgment.

**B.    <u>A Utility Patent Does Not Necessarily Mean that Trade Dress is Functional.</u>**

The existence of the '893 Patent does not mean that the Swiftlet trade dress is functional. While a utility patent may be evidence that features within the patent are functional, *see TrafFix Devices, Inc.*, 532 U.S. at 29, it "is not . . . necessarily evidence that the trade dress is functional," *OraLabs, Inc. v. Kind Group LLC*, No. 13-cv-00170-PAB-KLM, 2015 WL 4538444, at *12 (D. Colo. July 28, 2015)*. Moreover, "[c]onfigurations can simultaneously be patentably useful, novel, and nonobvious and also nonfunctional, in trade dress parlance." *Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1506.

Easthills incorrectly asserts that a utility patent "is the first element considered in support of finding unprotectable, functional in [*sic*] trade dress rights." Motion at 9 (citing *Jenny Yoo*, 448 F. Supp. 3d at 1171–72). As explained above, Easthills has cited certain factors from

noncontrolling cases. To say that the presence of a utility patent is an element, let alone the first element, in determining functionality is misleading.

Kammok does not dispute that the '893 Patent exists, but the '893 Patent does not establish that the clamshell design and textured anchor points are functional. *See TrafFix Devices, Inc.*, 532 U.S. at 29; *OraLabs, Inc.*, 2015 WL 4538444, at *12. Turning to the contents of the '893 Patent, Easthills focuses solely on the "functional aspects" of the clamshell design and textured anchor points. Motion at 11. But this focus and reliance on the term "functional" is misleading. If the configuration is "useful," it may still be nonfunctional for purposes of trade dress protection. *See Vornado Air Circulation Sys., Inc.*, 58 F.3d at 1506.

The design claimed in the '893 Patent may be useful, but it differs from the clamshell design that is the Swiftlet trade dress. Indeed, the '893 Patent describes a "cradle," not a clamshell. *See, e.g.*, Motion Ex. E at col. 6:1–14. Easthills merely replaces "cradle" with "clamshell hammock holder" in its argument, which is not enough to establish that the '893 Patent is for the same element of the Swiftlet trade dress. Indeed, the figures Easthills includes in the Motion for the clamshell design and the patented cradle are visibly different in the same way that Kammok has explained its trade dress. *See* Motion at 11. The patented cradle does not have the distinct clamshell design, where the end of the holder turns inwards. It is that distinction that is part of Kammok's Swiftlet trade dress. In this instance, the presence of a utility patent does not support a conclusion that the clamshell design is functional, and the Court should deny the Motion regarding the clamshell design.

Easthills makes the same mischaracterization of the "side clips" in the '893 Patent, referring to them as the anchors. *See* Motion at 13. And Easthills incorrectly states that Kammok's

own allegations "admit that the 'textured anchors' serve a function." Motion at 13. The quoted allegation does not state that the textured anchors serve a function—it states: "The Swiftlet includes textured anchor points on which a hammock may be attached." First Am. Compl. ¶ 10. This allegation is not a definitive statement of functionality, and Easthills calling it so does not make is so. The anchor points themselves may be functional, but the textural design on them is not, and Easthills has failed to produce any evidence that the texture is functional. A plain reading of Kammok's pleading would not lead to the conclusion that the texture is functional.

For purposes of Kammok's trade dress infringement claim, it is alleged that it is the texture on the anchor points that is protected by trade dress, not the anchor points themselves as indicated in the '893 Patent. Because Easthills has not addressed the texture, the Motion should be denied with regarding to this aspect of Kammok's trade dress.

## <u>CONCLUSION</u>

Based on the foregoing, the Court should deny the Motion.

DATED this 23rd day of April, 2024.

BY:      /s/ Douglas N. Marsh

Reid Allred
Douglas Marsh
CAMBRIDGE LAW, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
303.488.3338
reid@cambridgelaw.com
doug@cambridgelaw.com

Erik A. Olson
eolson@mohtrial.com
Dominic W. Shaw
dshaw@mohtrial.com
MARSHALL OLSON & HULL, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
801.456.7655

*Attorneys for Plaintiff*