## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02405-SKC-MEH

KAMMOK HOLDINGS, LLC,

      Plaintiff/Counter-Defendant,

v.

EASTHILLS, INC.; and DOES 1-10,

      Defendant/Counterclaimant.

---

## DEFENDANT EASTHILLS, INC.'S
## OPENING CLAIM CONSTRUCTION BRIEF

---

Pursuant to the Court's Scheduling Order [Dkt. No. 17], Defendant Easthills, Inc. ("Easthills") hereby submits this Opening Claim Construction Brief (the "Brief") in support of its proposed claim construction for the invention claimed in United States Patent No. 11,330,893 (the "'893 Patent").

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     CLAIM CONSTRUCTION LEGAL STANDARD ................................................... 1

III.    OVERVIEW OF ASSERTED PATENT .................................................................... 4

IV.     DISPUTED CLAIMS TERMS .................................................................................. 5

    A.  "cantilever arm" (Claims 1, 8, 9, 10, 11, 12, 13, 15, 16, 17) ................................... 7

    B.  "cradle" (Claim 1) ..................................................................................................... 8

    C.  "side clip" (Claims 1, 12) .......................................................................................... 8

    D.  "anchor" (Claims 1, 10, 11, 12, 13) .......................................................................... 9

    E.  "footprint adjustment bar" (Claims 1, 2, 4, 5, 6, 7, 17, 19) ...................................... 9

    F.  "pinholes" (Claims 8, 9) .......................................................................................... 10

    G.  "engages" (Claims 12, 13) ....................................................................................... 10

    H.  "inside surfaces" (Claims 15, 16) ............................................................................ 11

    I.   "backside" (Claims 1, 16) ........................................................................................ 12

    J.   "side clip including a first anchor" (Claim 1) .......................................................... 13

    K.  "backside of the first cantilever arm" (Claims 1, 16) .............................................. 13

    L.  "detachably attaching" (Claim 2) ............................................................................. 14

    M.  "compressible bushing" (Claims 3, 4) ..................................................................... 14

    N.  "telescopically" (Claim 5) ....................................................................................... 15

    O.  "connecting" (Claim 1) ............................................................................................ 16

V.      CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
616 F.3d 1283 (Fed. Cir. 2010)..........................................................................3

*American Permahedge, Inc. V. Barcana, Inc.*,
105 F.3d 1441 (Fed. Cir. 1997) ........................................................................3

*BASF Corp. v. Johnson Matthey Inc.*,
 875 F.3d 1360, 1365 (Fed. Cir. 2017) ............................................................4

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*
813 F. App'x 522, 526-27 (Fed. Cir. 2020) ....................................................7

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002) ........................................................................5

*Comark Communs. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)........................................................................2

*Constant v. Advanced Micro- Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988)........................................................................2

*Eon Corp. IP Holdings v. Silver Spring Networks*,
815 F.3d 1314, 1319-20 (Fed. Cir. 2016)...................................................5, 6

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509, 517 (Fed. Cir. 2012). ................................................................4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898, 913 (Fed. Cir. 2004). ................................................................3

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)........................................................................2, 3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
 572 U.S. 898 (2014) ....................................................................................4, 6

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008). ..................................................................1, 6

*Oakley, Inc. v. Sunglass Hut Int'l*,
316 F.3d 1331 (Fed. Cir. 2003)....................................................................1,

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005). ............................................................................ 1, 2

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243 (Fed. Cir. 1998). .................................................................................. 2

*Southwall Technologies, Inc v. Cardinal IG Company*,
54 F.3d 1570 (Fed. Cir. 1995 ...................................................................................... 3

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 2
36 F.3d 684, 692 (Fed. Cir. 2001) ............................................................................. 7

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) ................................................................................. 2, 3

*Well Master Corp. v. Luckyshot, Ltd. Liab. Co.*,
Civil Action No. 19-cv-01617-CMA-STV, 2020 U.S. Dist. LEXIS 221267, *4 (D.
   Colo. Nov. 25, 2020) ............................................................................................... 1

## I.     INTRODUCTION

The '893 Patent is a utility patent for an "Adjustable Footprint Suspension Seat Frame System" that consists of one independent claim and eighteen dependent claims.  Plaintiff, Kammok Holdings, LLC ("Kammok") believes that no construction beyond the terms' plain and ordinary meaning is necessary, but Easthills does not agree that all the terms are well understood in the context of the claim language and specification.  Easthills submits that there are fifteen terms for which construction beyond the plain and ordinary meaning is helpful.

## II.    CLAIM CONSTRUCTION LEGAL STANDARD

A patent must notify the public of the specific invention over which the patentee claims exclusive rights. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). "Thus, the focus of claim construction is ascertaining how a reasonable competitor would interpret the actual claim language, not what the inventor subjectively intended the language to claim." *Well Master Corp. v. Luckyshot, Ltd. Liab. Co.*, Civil Action No. 19-cv-01617-CMA-STV, 2020 U.S. Dist. LEXIS 221267, *4 (D. Colo. Nov. 25, 2020). "When the parties raise an actual dispute regarding the proper scope of [the] claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). Courts determine the meaning of the claims by considering the intrinsic evidence,

including the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314-15.

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415. F.3d at 1312-13 (citations and quotations omitted). Claim construction "begins and ends" with the words of the claims. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). However, "the specification is always highly relevant in the claim construction analysis" as it "is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (citation and quotations omitted).

Claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Communs. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (*quoting Constant v. Advanced Micro- Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)). "[I]t is improper to read limitations from a preferred embodiment

described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). In addition, "[a] claim construction that excludes the preferred embodiment 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010) (*citing Vitronics*, 90 F.3d at 1583-84).

Claims are construed as a matter of law with the purpose of "determining the meaning and scope of the patent claims asserted." *Markman v. Westview, Instrs., Inc.*, 52 f.3d 967, 976 (Fed. Cir. 1995) (en banc). In instances where the same limitation appears in different claims, those same limitations should be interpreted consistently. *Southwall Technologies, Inc v. Cardinal IG Company*, 54 F.3d 1570, 1579 (Fed. Cir. 1995); *American Permahedge, Inc. V. Barcana, Inc.*, 105 F.3d 1441, 1446 (Fed. Cir. 1997). It is well settled that, in interpreting an asserted claim, courts must first look to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification, and if in evidence, the prosecution history. *Vitronics Corp.*, 90 F.3d at 1582 (*citing Markman*, 52 F.3d at 979). Intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language. *Id*. In most cases, intrinsic evidence alone will resolve any ambiguity in a disputed claim term and, in such circumstances, it is improper to rely on extrinsic evidence. *Id*. at 1583.

A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed. *Id.* The failure of any claim in suit to comply with § 112, ¶ 2 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

## III.   OVERVIEW OF ASSERTED PATENT

The asserted patent, the '893 Patent, is generally directed to a portable hammock stand, and the claims recite various parts and components and how they are connected to one another. The '893 Patent includes nineteen claims, with claim 1 being the sole independent claim. Claim 1 reads as follows:

An adjustable-footprint suspension seat frame comprising:

three or more feet;

a first *cantilever arm* comprising a first *cradle* disposed on a distal end of the first *cantilever arm* and a *side clip* including a first anchor for a suspension seat oriented on a *backside* of the first *cantilever arm*, wherein the first *cantilever arm* extends through

4

the **side clip** and the **side clip** slides proximally and distally along

the first **cantilever arm**;

a second **cantilever arm** comprising a second *cradle* disposed on a

distal end of the second **cantilever arm** and a second anchor for the

suspension seat oriented on a **backside** of the second **cantilever

arm**; and

a first **footprint adjustment bar connecting** the first **cantilever

arm** to the second **cantilever arm**.

*See* the '893 Patent at col. 12:29-44. (Emphasis added). In addition, dependent

claims 8 and 9 recite "pinholes", dependent claims 12 and 13 recite "engages";

dependent claims 15 and 16 recite "inside surfaces"; dependent claim 2 recites

"detachably attaching"; dependent claims 3 and 4 recite "compressible bushing";

and dependent claim 5 recites "telescopically."

## IV.    DISPUTED CLAIMS TERMS

For all disputed claim terms, Kammok has proffered a claim construction

of "plain and ordinary meaning." [Dkt. No. 63.] As Easthills' briefing sets forth

below, Kammok's proposed constructions are untenable because, for each

relevant term, "the term 'chosen by the patentee so deprives the claim of clarity'

as to require resort to the other intrinsic evidence for a definite meaning." *CCS

Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002) (citation

omitted).  As the Federal Circuit stated in *Eon Corp. IP Holdings v. Silver Spring

Networks*, "[a jury] instruction [on claim construction] giving a term its 'plain and

ordinary meaning' may be inadequate when the term has more than one ordinary meaning or when reliance on the term's ordinary meaning does not resolve the parties' dispute":

> By determining that the terms should be given their plain and ordinary meaning, the court left the question of claim scope unanswered leaving it for the jury to decide. This was legal error… [S]imply rejecting one [party's] proposed construction does not mean that a general instruction to give terms their plain and ordinary meaning resolves the relevant dispute. The court remained obligated to provide the jury with a clear understanding of the disputed claim scope…

815 F.3d 1314, 1319-20 (Fed. Cir. 2016) (emphasis added); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008). Here, giving all the disputed terms "plain and ordinary meaning" claim constructions either (a) would not resolve the disputes between the parties or (b) would not provide the jury with a clear understanding of the disputed claim scope. Thus, the Court should not simply adopt Kammok's proposed plain and ordinary meaning as claim constructions for these terms, and instead construe the disputed terms consistent with a meaning supported by both the intrinsic and extrinsic evidence presented.

Unfortunately, for many of the disputed claim terms, the Court cannot turn to the intrinsic record to provide clarity because the intrinsic record sets forth no discernable meaning for the claim terms, thereby rendering them indefinite as a matter of law. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the patent's specification…[and] prosecution history, fail to inform, with reasonable

certainty, those skilled in the art about the scope of the invention."); *see also Bushnell Hawthorne, LLC v. Cisco Sys., Inc.* 813 F. App'x 522, 526-27 (Fed. Cir. 2020) (holding claim indefinite where intrinsic record left its meaning "entirely unclear"); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (holding claim term indefinite because it had multiple meanings, and the patent did not define it).

With these controlling legal principles in mind, Easthills now turns to a substantive analysis of the claim terms in dispute.

### A.    "cantilever arm" (Claims 1, 8, 9, 10, 11, 12, 13, 15, 16, 17)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a bar that projects upwards to support the suspension seat." | "The arm is *cantilevered* by being connected only at footprint adjustment bar." |

Easthills' proposed construction for the term "cantilever arm" is consistent with the language in the '893 Patent and dictionary definitions regarding the same. Dictionary definitions from the time of the invention defines "cantilever" as "a projecting beam or member supported at only one end." *See* Merriam-Webster Dictionary (https://www.merriam-webster.com/dictionary/cantilever). In describing the recited "cantilever arm", the '893 Patent states that the "...cantilever arm 105b connects to a footprint adjustment bar … in a connection region 130 disposed at one end". *See* the '893 Patent col 3:58-61. The '893 Patent illustrates the recited "cantilever arm" in Figs. 1-4 as a bar anchored only at the footprint adjustment bar.

7

The '893 Patent does not disclose alternate positions or any other points of support besides one the anchor point at the footprint adjustment bar. Therefore, the Court should adopt Easthills' proposed construction that in the term "cantilever arm" the meaning of cantilever is that the arm is connected *only* at one end, at the footprint adjustment bar.

### B.    "cradle" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a guide." | "U-shaped guide disposed at the distal ends of cantilever arm." |

Easthills' construction for the term "cradle" is consistent with the definition provided in the '893 Patent's specification. Specifically, the specification states "first and second cradles comprise guides disposed at the distal ends of first and second cantilever arms." *See* the '893 Patent at col. 6:2-3 and Fig. 2. Kammok's proposed alternative construction ignores the positioning limitation from the specification, and as such, should be rejected.

### C.    "side clip" (Claims 1, 12)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a mechanism used move the anchor distally or proximally." | "A mechanism used to move the anchor distally or proximally." |

Upon further examination, Easthills agrees with Kammok's proposed alternative construction and as such, should be adopted.

### D. "anchor" (Claims 1, 10, 11, 12, 13)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a connector in the side clip for connecting to a suspension seat." | "A connector in the side clip for connecting to a suspension seat." |

Upon further examination, Easthills agrees with Kammok's proposed alternative construction and as such, should be adopted.

### E. "footprint adjustment bar" (Claims 1, 2, 4, 5, 6, 7, 17, 19)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "an adjustable connector bar which allows a distance between cantilever arms to be increased or decreased." | "Bar that comprises a length defining bar member of rigid tubing, and having a first and second connecting regions that are respectively connected to the first and second cantilever bar at the respective anchor points." |

Here, the intrinsic evidence is especially useful in construing the term "footprint adjustment bar." The '893 Patent's specification specifically provides insight. In some embodiments, the "footprint adjustment bar 500 comprises one footprint adjustment bar of a set of footprint adjustment bars configured to interface with a set of common cantilever arms" or the "footprint adjustment bar 500 comprises a length - defining member 505." *See* the '893 Patent at 9:1-4, 8-9. Another embodiment provides "first footprint adjustment bar 115a comprises one or more sections of substantially rigid material (for example, materials suitable for first and second cantilever arms) which are attached to first and second cantilever arms 105a-b, and maintain the separation seat connected to adjustable

9

side clips 120a-b, the centerline 65 between first and second cantilever arms." *See* the '893 Patent at col. 4:60-65. Fig. 5 also provides an example of a footprint adjustment bar where the length defining member 505 comprises a single length of material that defines the change in the footprint of an adjustable footprint suspension seat frame.

Simply put, there is no construction that is supported by the specification, or otherwise, that does not embody a rigid, replacement bar to adjust the distance between the cantilever arms. Accordingly, Easthills' construction of the term "footprint adjustment bar" is consistent with the language of the '893 Patent and should therefore be adopted.

### F.    "pinholes" (Claims 8, 9)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "holes through which the side clip is connected to hold the suspension seat in place." | "Holes through which the side clip is connected to hold the suspension seat in place." |

Upon further examination, Easthills agrees with Kammok's proposed alternative construction and as such, should be adopted.

### G.    "engages" (Claims 12, 13)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br>Alternatively, if the Court determines a construction is needed, "connects to for the purpose of holding the suspension seat in place." | "Connects to for the purposes of holding the suspension seat in place" |

Upon further examination, Easthills agrees with Kammok's proposed alternative construction and as such, should be adopted.

### H.    "inside surfaces" (Claims 15, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a side of a cantilever arm that faces a corresponding side of a second cantilever arm." | The term is indefinite. |

Claim 15 recites "the first cantilever arm and the second cantilever arm are disposed opposite each other and facing each other on <u>inside surfaces</u> of each cantilever arm." Claim 16 recites "the backside of the first cantilever arm and the backside of the second cantilever arm include surfaces that are on a side of the first cantilever arm and second cantilever arm that are opposite the <u>inside surfaces</u> of each cantilever arm." This term is used twice in the claims of the '893 Patent, but this term is absent from the specification and not defined anywhere in the patent. Further the prosecution history of the '893 patent provides no clues to the meaning of the term; the term was introduced in new claims added in the amendment of February 3, 2021, filed in the Application No. 16/430,027 upon which the '893 patent was issued, and there is no discussion of the meaning of the term "inside surface".  The patentee does not indicate where the "inside surfaces" of the cantilever arms are located. This term is made more confusing by the language in claim 16 because it indicates the backside of the cantilever arms is opposite the inside surfaces of each cantilever arm purporting that the "inside

surfaces" are literally inside the cantilever arm. This contrasts with the term as used in Claim 15, because there it suggests the "inside surfaces" are the sides of the cantilever arms that face each other. Because the specification provides no information to one of skill in the art about the meaning and scope of the "inside surfaces" term it is indefinite and the claims in which it appears are therefore invalid.

## I.     "backside" (Claims 1, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a side of a cantilever arm which is disposed on an opposite." | The term is indefinite. |

The claim recites a first anchor for a suspension seat oriented on a <u>backside</u> of the first cantilever arm, and further recites a second anchor for the suspension seat oriented on a <u>backside</u> of the second cantilever arm. While this term is used four times in the claims of the '893 Patent, this term is simply absent from the specification. The patentee does not indicate where the "backside" of the cantilever is located, nor is this term defined anywhere in the patent. Again, as with "inside surface", the prosecution history of the '893 patent provides no clues as to the meaning of the term "backside"; the term was introduced in an amendment to the claims in the amendment of February 3, 2021, filed in the Application No. 16/430,027 upon which the '893 patent was issued, and there is no discussion of the meaning of the term "backside". Because the specification

provides no information to one of skill in the art about the meaning and scope of the "backside" term it is indefinite and the claims in which it appears are therefore invalid.

### J.    "side clip including a first anchor" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "A mechanism used to move the anchor distally or proximally that includes a first connector for connecting to a suspension seat." |

This term is comprised of the terms "side clip" and "anchor" which have previously been construed above and where Easthills agrees with Kammok's alternative construction. Therefore, the term should be construed so that it is consistent with the constructions above.  Easthills' proposed construction is consistent with the agreed-to alternative constructions Kammok has proposed.

### K.    "backside of the first cantilever arm" (Claims 1, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | The term is indefinite. |

As recited above, the claim recites a first anchor for a suspension seat oriented on a <u>backside of the first cantilever arm</u>, and further recites a second anchor for the suspension seat oriented on a backside of the second cantilever arm.  It is unclear how a single suspension system seat can be oriented on a "backside of the first cantilever arm" and at the same time also be oriented on a backside of the second cantilever arm. The specification does not provide any insight on how a single suspension seat can be oriented on the backsides of two

separate arms. Therefore, the claims 1 and 16 are indefinite and does not enable one of ordinary skill in the art to implement the claimed limitations.

### L.    "detachably attaching" (Claim 2)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "Attaching the first cantilever arm to the first footprint adjustable bar in a way that can be detached." |
| | "Attaching the second cantilever arm to the second footprint adjustable bar in a way that can be detached." |

The language in the '893 Patent supports Easthills' proposed construction for "detachably attaching". Specifically, the specification provides an example, as further illustrated by Fig. 1, where the first footprint adjustment bar 115a detachably attaches to first and second cantilever arms 105a-b at points near the connection regions of first and second cantilever arms 105a-b. *See* the '893 Patent at 4:67-5:3. The language in the specification explains how the that the cantilever arms can be disconnected from the footprint adjustable bars in order to breakdown and store the apparatus.

### M.    "compressible bushing" (Claims 3, 4)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "Material placed on the footprint adjustment bar or first cantilever arm for reducing friction between two surfaces sliding against each other." |

The language in the specification of the '893 Patent supports Easthills' proposed construction for "compressible blushing." Specifically, the specification indicates that compressible blushing may sometimes be formed of a "hard plastic"

and that the purpose of the compressible blushing is to help "eliminate 'slop' between suspension seat frame components under load" and eliminate "galling or other sources of friction and sticking between metal components." *See* the '893 Patent at col. 9:47-50. The specification further provides that compressible bushing "may be part of a first cantilever arm" or "may be part of a footprint adjustment bar." *Id*. at col 6:55-7:2. In view of the specification, one of ordinary skill in the art at the time of filing would have understood "compressible bushing" to be a "material placed on the footprint adjustment bar or first cantilever arm for reducing friction between two surfaces sliding against each other." Therefore, the Court should adopt Easthills' proposed construction.

### N.    "telescopically" (Claim 5)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
| --- | --- |
| Plain and Ordinary Meaning | "A footprint adjustment bar comprising a first section and a second section, wherein the first section is substantially concentric to the second section and configured to slide inside the second section." |

The plain and ordinary meaning of this term is helpful here. "Telescopically" is the adverb form of "telescopic" which is defined as "having sections that slide one inside another." *See Webster's New World College Dictionary,* 4th Edition (https://www.collinsdictionary.com/us/dictionary/english/telescopic). This definition also comports with the intrinsic evidence. The specification indicates that the first and second sections of the footprint adjustment bar are concentric and configured to slide inside one another and provides that "telescopically" means "back and forth relative to each other."

15

*See* the '893 Patent at col. 7:34-40.  The defining of a term is a clear indication in the intrinsic record that the patentee intended the claims to be so limited. Accordingly, Easthills' proposed construction should be adopted.

### O.    "connecting" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | "The first and second cantilever arms are each coupled to the first footprint adjustment bar and are maintained in an operable angle and separation by connection to the first footprint adjustment bar." |

The intrinsic evidence included in the specification supports Easthills' proposed construction. Claim 1 provides "a first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm."   One embodiment provides, a "second cantilever arm 105b connects to a footprint adjustment bar (for example, first footprint adjustment bar 115a) in a connection region 130 disposed at one end of second cantilever arm 105b. *See* the'893 Patent at col. 3:58-61. Another embodiment provides a "first footprint adjustment bar 405 connects to cantilever arms 410a-b though transition hinges 420a-b." *Id.* at col. 7:18-20. Then, couplings are used to connect the cantilever arm ends with the footprint adjustment bar. *Id.* at col. 5:3-7. When the cantilever arms are attached to the footprint adjustment bar it maintains the separation. *Id.* at col. 4:60-66. The first and second cantilever arms are connected via transition hinges and are maintained at an operable angle. *Id.* at col. 8:40-43.

Based on the foregoing, the intrinsic evidence described in the patent requires a direct connection between the footprint adjustment bars and the cantilever arms. There can be no intervening means for accomplishing this practice for the recited claim limitation. Therefore, the Court should adopt Easthills' proposed construction.

## V.    CONCLUSION

For the foregoing reasons, Easthills respectfully requests the Court adopt the company's proposed construction for the above analyzed claims of the '893 Patent.

DATED July 5, 2024.          Respectfully submitted,

**BAYRAMOGLU LAW OFFICES LLC**

*/s/Shawn A. Mangano*
SHAWN A. MANGANO (NV Bar No. 6730)
shawnmangano@bayramoglu-legal.com
NIHAT DENIZ BAYRAMOGLU (NV Bar No. 14030)
deniz@bayramoglu-legal.com
EMILY M. HEIM (FL Bar No. 1015867)
emily@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road Ste 100
Henderson Nevada 89014
Telephone:  702.462.5973 | Fax:  702.553.3404

*Counsel for Defendant/Counterclaimant*
*EASTHILLS, INC*

## CERTIFICATE OF SERVICE

I hereby certified that a true correct copy of the foregoing **DEFENDANT EASTHILLS, INC'S OPENING CLAIM CONSTRUCTION BRIEF** was served upon Kammok by ECF on July 5, 2024.

DATED: July 5, 2024            */s/Shawn A. Mangano*
                              Shawn A. Mangano
                              **BAYRAMOGLU LAW OFFICES LLC**


## Certification Re: Use of Artificial Intelligence (AI) for Drafting

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that (a) no portion of the filing was drafted by AI, or that (b) any language drafted by AI (even if later edited by a human being) was personally reviewed by the filer or another human being for accuracy using print reporters or traditional legal databases and attests that the legal citations are to actual existing cases or cited authority.

*/s/Shawn A. Mangano*
Shawn A. Mangano
**Bayramoglu Law Offices LLC**


## Certification of Compliance

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that the brief contains 4,082 words.

*/s/Shawn A. Mangano*
Shawn A. Mangano
**Bayramoglu Law Offices LLC**

18