**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:23-cv-02405-CNS-MEH


KAMMOK HOLDINGS, LLC,

      Plaintiff,

v.

EASTHILLS, INC., and DOES 1–10.

      Defendants

---

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

---

      Pursuant to section IV paragraph 9 of the Court's scheduling order, plaintiff Kammok Holdings, LLC ("Kammok") hereby submits its opening claim construction brief.

### <u>INTRODUCTION</u>

      The Court should adopt the plain and ordinary meaning of the claims articulated in the patent, which is supported by and consistent with the intrinsic evidence. Each of the disputed claim terms consists of simple, plain English words whose meaning is readily apparent and needs no further construction. To date, defendant Easthills, Inc. ("Easthills") has not disclosed to Kammok its proposed constructions of the disputed claim terms. Thus, Kammok does not know the extent to which Easthills seeks an alternative meaning on the disputed terms. However, the Court should not impose any extraordinary meaning on well-understood words, nor should it inject additional terms into the claims. Instead, the Court should simply apply the plain and ordinary meaning of all claim terms.

## PLAINITFF'S PROPOSED CONSTRUCTIONS

| CLAIM NOS. | TERM/PHRASE | KAMMOK'S PROPOSED CONSTRUCTION |
|---|---|---|
| 1, 8, 9, 10, 11, 12, 13, 15, 16, 17 | Cantilever arm | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "a bar that projects upwards to support the suspension seat." |
| 1, 14 | Cradle | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "a guide." |
| 1, 12 | Side clip | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "a mechanism used to move the anchor distally or proximally." |
| 1, 10, 11, 12, 13 | Anchor | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "a connector in the side clip for connecting to a suspension seat." |
| 1, 5, 17 | Footprint adjustment bar | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "an adjustable connector bar which allows a distance between cantilever arms to be increased or decreased." |
| 8, 9 | Pinholes | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "holes through which the side clip is connected to hold the suspension seat in place." |
| 12, 13 | Engages | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "connects to for the purpose of holding the suspension seat in place." |
| 15, 16 | Inside surfaces | Plain and Ordinary Meaning<br><br>***Alternatively, if the Court determines a construction is needed,*** "a side of a cantilever arm that faces a corresponding side of a second cantilever arm." |

| 1, 16 | Backside | Plain and Ordinary Meaning<br><br>**_Alternatively, if the Court determines a construction is needed,_** "a side of a cantilever arm which is disposed on an opposite side of the cantilever arm from the inside surfaces." |
|---|---|---|
| 1 | Side clip including a first anchor | Same meaning as given to "side clip" and "anchor," respectively. |
| 1, 16 | Backside of the first cantilever arm | Same meaning as "backside" and "cantilever arm," respectively. |
| 2 | Detachably attaching | Plain and Ordinary Meaning<br><br>**_Alternatively, if the Court determines a construction is needed,_** "fastened in a manner that allows unfastening and re-fastening." |
| 3, 4 | Compressible bushing | Plain and Ordinary Meaning<br><br>**_Alternatively, if the Court determines a construction is needed,_** "a device used to reduce vibrational energy transfer between two parts." |
| 5 | Telescopically | Plain and Ordinary Meaning<br><br>**_Alternatively, if the Court determines a construction is needed,_** "substantially concentric such that one part can move into and within another part." |
| 1 | Connecting | Plain and Ordinary Meaning<br><br>**_Alternatively, if the Court determines a construction is needed,_** "attaching, joining, or fastening." |

## FACTUAL BACKGROUND

Kammok manufactures, sells, and distributes a portable hammock stand called the Swiftlet. The Swiftlet is a lightweight hammock stand made of several interlocking aluminum bars, described in the patent as arms or feet. These interlocking bars both move telescopically and include numerous pinholes, the effect of which is that the hammock stand can be converted from lounge mode (for lying down) to chair mode (for sitting up). The lightweight, portable, and adjustable nature of the Swiftlet has historically been unique among hammock stands. Thus,

Kammok has invested heavily to protect its intellectual property rights relating to the Swiftlet. The utilitarian aspects of the Swiftlet are covered by U.S. Patent 11,330,893 ("the '893 Patent").

Starting in or about July 2023, Easthills began advertising the "Anymaka," a portable, adjustable hammock stand via www.kickstarter.com. Like the Swiftlet, the Anymaka can be converted from a lying down position to a sitting position. Based on these and other apparent similarities shown in the Anymaka marketing materials, Kammok sued Easthills for patent infringement of the '893 Patent, among other claims.

## ARGUMENT

## I.     PLAINTIFF'S GENERAL SUMMARY OF THE LAW.

Well-settled Federal Circuit authority precludes any effort by Easthills to impose extraordinary meaning or to inject new terms into Kammok's claims. "Claim construction is a question of law" for the court to decide. *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014). The goal of construing patent claims is not to rewrite the claims, but to explain to the trier of fact, where necessary, how the terms chosen by the patentee would have been understood by one of ordinary skill in the art. *See K-2 Corp v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead; we give effect to the terms chosen by the patentee."). This process is "not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Instead, claim construction is for the purpose of "resolv[ing] 'disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.'" *Promptu Systems Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) (citation omitted).

"When construing claims, a court must begin by 'look[ing] to the words of the claims themselves . . . to define the scope of the patented invention." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) (citation omitted) (alteration and ellipses in original). "The task of comprehending those words is not always a difficult one," because often "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* Such meaning is best "considered in the context of the intrinsic evidence" of the patent itself. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319 (Fed. Cir. 2005); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.").

Nevertheless, "courts may rely on dictionary definitions when construing claim terms, 'so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.'" *Advanced Fiber Technologies (AFT) Trust v. J & L Fiber Services, Inc.*, 674 F.3d 1365, 1373 (Fed. Cir. 2012) (citation omitted). Although dictionaries fall within the category of extrinsic evidence, "judges are free to consult dictionaries and technical treatises 'at any time in order to better understand the underlying technology'" in construing claim terms. *Phillips*, 415 F.3d at 1322.

There are only two exceptions to the rule that claims should be given their ordinary meaning. *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). These are "1) when a patentee sets out a definition and acts as his own lexicographer, or

2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* The Federal Circuit has stated:

> [C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expression of manifest exclusion or restriction, representing a clear disavowal of claim scope.

*Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002). Absent these exceptional circumstances, the Federal Circuit consistently refuses to narrowly construe claim terms, reasoning that the "claims, not specification embodiments, define the scope of patent protection. The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation into the claims." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) (citation omitted). Indeed, "one of the cardinal sins of patent law [is] reading a limitation from the written description into the claims." *Phillips*, 415 F.3d at 1312 (internal citations omitted). "[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . , we should never know where to stop." *Id.* (quoting *McCarty v. Lehigh Valley R.R. Co.*, 160 U.S. 110, 116 (1895)).

## II.    DISPUTED CONSTRUCTIONS.

At the time of drafting this, Easthills has not yet disclosed any of its proposed definitions for the disputed claim terms. However, after a review of Kammok's proposed definitions, Easthills confirmed that the thirteen terms addressed below are disputed. Kammok's opening position is that each of the disputed terms should carry their plain and ordinary meaning, and that no further explanation or elaboration is necessary or even permitted.

**A.      Claim Term:  "cantilever arm"**

Of the 19 claims contained within the '893 patent, the term "cantilever arm" appears in

claims 1, 8–13, and 15–17 as follows:

1.  An adjustable-footprint suspension seat frame comprising:  three or more feet;
a first <u>cantilever arm</u> comprising a first cradle disposed on a distal end of the first
<u>cantilever arm</u> and a side clip including a first anchor for a suspension seat
oriented on a backside of the first <u>cantilever arm</u>, wherein the first <u>cantilever arm</u>
extends through the side clip and the side clip slides proximally and distally along
the first <u>cantilever arm</u>; a second <u>cantilever arm</u> comprising a second cradle
disposed on a distal end of the second <u>cantilever arm</u> and a second anchor for the
suspension seat oriented on a backside of the second <u>cantilever arm</u>; and a first
footprint adjustment bar connecting the first <u>cantilever arm</u> to the second
<u>cantilever arm</u>.

8.  The adjustable-footprint suspension seat frame of claim 1, wherein the first
<u>cantilever arm</u> and the second <u>cantilever arm</u> each include a plurality of pin holes.

9.  The adjustable-footprint suspension seat frame of claim 8, wherein the
plurality of pin holes are disposed along a length of the first <u>cantilever arm</u> and a
length of the second <u>cantilever arm</u>.

10.  The adjustable-footprint suspension seat frame of claim 8, wherein the first
anchor interlocks with the first <u>cantilever arm</u> at one of the plurality of pin holes
on the first <u>cantilever arm</u>.

11.  The adjustable-footprint suspension seat frame of the claim 8, wherein the
second anchor interlocks with the second <u>cantilever arm</u> at one of the plurality of
pin holes on the second <u>cantilever arm</u>.

12.  The adjustable-footprint suspension seat frame of claim 8, wherein the first
anchor engages the first <u>cantilever arm</u> and slides distally and proximally along
the first <u>cantilever arm</u> as the side clip slides proximally and distally along the
first <u>cantilever arm</u>.

13.  The adjustable-footprint suspension seat frame of claim 8, wherein the first
anchor engages the first <u>cantilever arm</u> and slides distally and proximally along
the first <u>cantilever arm</u> as the side clip slides proximally and distally along the
first <u>cantilever arm</u>.

15.  The adjustable-footprint suspension seat frame of claim 1, wherein the first
<u>cantilever arm</u> and the second <u>cantilever arm</u> are disposed opposite each other and
facing each other on inside surfaces of each <u>cantilever arm</u>.

16.  The adjustable-footprint suspension frame of claim 15, wherein the backside of the first <u>cantilever arm</u> and the backside of the second <u>cantilever arm</u> include surfaces that are on ta side of the first <u>cantilever arm</u> and second <u>cantilever arm</u> that are opposite the inside surfaces of each <u>cantilever arm</u>.

17.  The adjustable-footprint suspension seat frame of claim 1, wherein at least a portion of the first <u>cantilever arm</u> and at least a portion of the second <u>cantilever arm</u> are disposed at an angle relative to the first footprint adjustment bar.[1]

The claim term "cantilever arm" should carry its plain and ordinary meaning as expressed in the claims and as would be understood by a person of ordinary skill in the art in question. Properly considered in "context of the surrounding words of the claim," *Walt Disney Co.*, 346 F.3d at 1088, there is nothing ambiguous about this claim language.  The patent recites that the "suspension seat frame" is comprised of "a first cantilever arm" and "a second cantilever arm," both of which are connected by "a footprint adjustment bar."[2]  These cantilever arms stick out at an angle from the base footprint adjustment bar at one end.[3]  On the other end, the "cantilever arm[s]" are "compris[ed] of a first [or second] cradle disposed on a distal end of the" cantilever arm.[4]  As addressed below in Point II(B), the cradle guides and supports the suspension seat. This is consistent with how the term "cantilever arm" is typically used: as meaning a support beam connected at only one end.  Hence, given the plain and ordinary meaning of "cantilever arm" taken together with context of the surrounding terms of the claim, it should maintain its current construction as proposed by Kammok.

---

[1] '893 Patent, Claim Nos. 1, 8–13, and 15–17, 12:29–14:27 (emphasis supplied) (attached as Ex. 1).
[2] *Id.* at Claim No. 1, 12:29–44.
[3] *Id.* at Claim No. 17, 14:24–27.
[4] *Id.* at Claim No. 1, 12:32–33.

Though the Court need not look beyond the claims themselves to construe the term "cantilever arm," the drawings and file history also support the plain and ordinary meaning of the term. The detailed description of the drawings specifically explains that the "first and second cradles comprise guides disposed at the distal ends of the first and second cantilever arms to support and spread the tensile members of a suspension seat (for example, the ropes of a hammock . . . )."[5] This language also supports a plain and ordinary reading of the term "cantilever arm" as a bar that projects upwards to support the suspension seat.

Third, if reference to a dictionary were necessary for defining "cantilever arm," such a reference further supports Kammok's definition of the claim term. As just one example, the Merriam-Webster Dictionary defines "cantilever" as "a projecting beam or member supported at only one end: such as . . . either of the two beams or trusses that project from piers toward each other and that when joined directly or by a suspended connecting member form a span of a cantilever bridge." *Cantilever*, Merriam-Webster.com Dictionary (2024). Similarly, the American Heritage Dictionary defines the term as "[a] projecting structure, such as a beam, that is supported at one end and carries a load at the other end or along its length." *Cantilever*, American Heritage Dictionary (5th ed. 2022). These definitions comport with the use of the claim term "cantilever arm," which is described as a bar attached at one end to the footprint adjustment bar and including a cradle at the other end that supports the suspension of a hammock. Thus, the '893 Patent's use of the term cantilever is consistent with the function of cantilever arms as described by dictionaries. Again, the Court should not apply any extraordinary meaning to the claim term "cantilever arm."

---

[5] *Id.* at 6:1–5.

**B.**     **Claim Term:  "cradle"**

The term "cradle" appears in claim 1 and 14 as follows:

1.  An adjustable-footprint suspension seat frame comprising:  three or more feet;
a first cantilever arm comprising a first <u>cradle</u> disposed on a distal end of the
first cantilever arm and a side clip including a first anchor for a suspension seat
oriented on a backside of the first cantilever arm, wherein the first cantilever arm
extends through the side clip and the side clip slides proximally and distally along
the first cantilever arm; a second cantilever arm comprising a second <u>cradle</u>
disposed on a distal end of the second cantilever arm and a second anchor for the
suspension seat oriented on a backside of the second cantilever arm; and a first
footprint adjustment bar connecting the first cantilever arm to the second
cantilever arm.

14.  The adjustable-footprint suspension seat frame of claim 1, wherein the first
cradle and second cradle each include line guides.[6]

The claim term "cradle" should maintain its plain and ordinary meaning.  The claims

make clear that each "cradle" is "disposed on a distal end of the [respective] cantilever arm[s],"

and "include[s] line guides."[7]  These cradles and line guides are included on a "suspension seat

frame."[8]  Thus, a person with "the understanding of those of ordinary skill in the art" would be

able to understand that the cradle sits on the end of the cantilever arms and serves as a guide.  *K-2

Corp.*, 191 F.3d at 1365 ("[C]laim construction is firmly anchored in reality by the understanding

of those of ordinary skill in the art.").  This is the plain and ordinary meaning of the claim term

as it is used within the context of the claims.

Though the plain language of the claims themselves is sufficiently clear, the remainder of

the patent also demonstrates that the cradle is little more than a guide.  The patent recites that

"the ends of a hammock or other suspension seat may be anchored to first and second adjustable

---

[6] *Id.* at Claim Nos. 1, 14, 12:29–44, 14:10–12.
[7] *Id.* at Claim Nos. 1, 14, 12:32–41, 14:10–12.
[8] *Id.* at Claim Nos. 14, 14:10.

side clips, and the seat's tensile members (for example, a set of rope lines) passing over first and

second cradles to define a seat area."[9]  Again, the patent makes clear that the that the cradle is a

guide for whatever tensile member supports the suspension seat.  The Court should not unduly

limit this plain and ordinary meaning of the term.

### C.     Claim Term:  "side clip"

The term "side clip" appears in claim 1, 12 as follows:

> 1.  An adjustable-footprint suspension seat frame comprising:  three or more feet; a first cantilever arm comprising a first cradle disposed on a distal end of the first cantilever arm and a side clip including a first anchor for a suspension seat oriented on a backside of the first cantilever arm, wherein the first cantilever arm extends through the side clip and the side clip slides proximally and distally along the first cantilever arm; a second cantilever arm comprising a second cradle disposed on a distal end of the second cantilever arm and a second anchor for the suspension seat oriented on a backside of the second cantilever arm; and a first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm.

> 12.  The adjustable-footprint suspension seat frame of claim 8, wherein the first anchor engages the first cantilever arm and slides distally and proximally along the first cantilever arm as the side clip slides proximally and distally along the first cantilever arm.[10]

Here, the claim term "side clip" is an unambiguous term that should carry its plain and

ordinary meaning.  The patent claims recite that the cantilever arm "extends through the side clip

and the side clip slides proximally and distally along the first cantilever arm."[11] The patent

claims further recite that the "anchor . . . slides distally and proximally along the first cantilever

arm as the side clip slides proximally and distally along the first cantilever arm."[12]  Thus, the

---

[9] *Id.* at 3:41–47 (internal citations omitted).
[10] *Id.* at Claim No. 1, 12, 12:29–44, 14:1–5.
[11] *Id.* at Claim No. 1, 12:35–38.
[12] *Id.* at Claim No. 12, 14:2–4.

"side clip" is the vehicle by which the anchor (addressed below in Point II(D)) is guided along the cantilever arm. The Court should not impose any extraordinary meanings, nor should it inject additional terms into this well-understood claim term.

This plain language reading of the claim term "side clips" is further supported by the drawings and file history. Specifically, the detailed description recites that the "first and second adjustable side clips comprise first and second anchors for a suspension seat. In the non-limiting example, each of adjustable side clips comprises a hollow collar having an interior cross section of substantially similar size and shape as the exterior cross section of first and second cantilever arms."[13] While the side clip itself is adjustable, it "comprises a lock [or anchor] capable for maintaining engagement of the adjustable side clip at a substantially fixed location relative to the cantilever arm."[14] This is consistent with the use of the term "side clip" in the claims, as a mechanism used to move the anchor distally and proximally along a cantilever arm.

### D.    Claim Term:  "anchor"

The term "anchor" appears in claim 1, 10, 11, 12, and 13 as follows:

> 1. An adjustable-footprint suspension seat frame comprising: three or more feet; a first cantilever arm comprising a first cradle disposed on a distal end of the first cantilever arm and a side clip including a first <u>anchor</u> for a suspension seat oriented on a backside of the first cantilever arm, wherein the first cantilever arm extends through the side clip and the side clip slides proximally and distally along the first cantilever arm; a second cantilever arm comprising a second cradle disposed on a distal end of the second cantilever arm and a second <u>anchor</u> for the suspension seat oriented on a backside of the second cantilever arm; and a first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm.

---

[13] *Id.* at 5:50–57 (internal citations omitted).
[14] *Id.* at 5:58–61.

10. The adjustable-footprint suspension seat frame of claim 8, wherein the first anchor interlocks with the first cantilever arm at one of the plurality of pin holes on the first cantilever arm.

11. The adjustable-footprint suspension seat frame of claim 8, wherein the second anchor interlocks with he second cantilever arm at one of the plurality of pin holes on the second cantilever arm.

12. The adjustable-footprint suspension seat frame of claim 8, wherein the first anchor engages the first cantilever arm and slides distally and proximally along the first cantilever arm as the side clip slides proximally and distally along the first cantilever arm.

13. The adjustable-footprint suspension seat frame of claim 12, wherein the second anchor engages the second cantilever arm and slides distally and proximally along the second cantilever arm.[15]

The claim term "anchor" should carry its plain and ordinary meaning as expressed in the claims and as would be understood by a person of ordinary skill in the art in question. Properly considered in context of the surrounding words of the claim, there is nothing ambiguous about this claim language. The "anchor[s]" are "for a suspension seat."[16] The anchors "slide[] distally and proximally along the first cantilever arm" via the side clip[17] to "interlock[] with the first [or second] cantilever arm at one of the plurality of pin holes on the first cantilever arm."[18] This language is so unambiguous as to be "readily apparent even to lay" reader. *Phillips*, 514 F.3d at 1314.

The drawings of the patent and their descriptions recite that "the ends of a hammock or other suspension seat" must be "anchored" to the "free-standing platform" via the "adjustable

---

[15] *Id.* at Claim Nos. 1, 10–13, 12:29–38, 13:30–14:9.
[16] *Id.* at Claim No. 1, 12:34–41.
[17] *Id.* at Claim No. 12, 14:2–4.
[18] *Id.* at Claim Nos. 10–11, 13:30–37.

side clips."[19]  The anchor is the connector in the side clip that anchors the suspension seat in

place.

### E.    Claim Term:  "footprint adjustment bar"

The term "footprint adjustment bar" appears in claim 1, 5, 17 as follows:

1.  An adjustable-footprint suspension seat frame comprising:  three or more feet;
a first cantilever arm comprising a first cradle disposed on a distal end of the first
cantilever arm and a side clip including a first anchor for a suspension seat
oriented on a backside of the first cantilever arm, wherein the first cantilever arm
extends through the side clip and the side clip slides proximally and distally along
the first cantilever arm; a second cantilever arm comprising a second cradle
disposed on a distal end of the second cantilever arm and a second anchor for the
suspension seat oriented on a backside of the second cantilever arm; and a first
footprint adjustment bar connecting the first cantilever arm to the second
cantilever arm.

5.  The adjustable-footprint suspension seat frame of claim 1, wherein:  the first
footprint adjustment bar comprises a first section and a second section; wherein
the first section is substantially concentric to the second section and configured to
move telescopically within the second section, and wherein the first section is
configured to operably engage with the second section to define two or more
working lengths of the first footprint adjustment bar.

17.  The adjustable-footprint suspension seat frame of claim 1, wherein at least a
portion the first cantilever arm and at least a portion of the second cantilever arm
are disposed at an angle relative to the first footprint adjustment bar.[20]

The claim term "footprint adjustment bar" should maintain its plain and ordinary

meaning.  The claims make clear that the "footprint adjustment bar connect[s] the first cantilever

arm to the second cantilever arm."[21]  However, the "footprint adjustment bar" both facilitates

connection to the first cantilever arm and to the second cantilever arm and allows a user to adjust

a length between the first and second cantilever arms to change between a layout mode and a

---

[19] *Id.* at 3:41–45.
[20] *Id.* at Claim Nos. 1, 5, 17, 12:29–38, 13:1–10, 14:24–27.
[21] *Id.* at Claim No. 1, 12:43–44.

sitting mode.  For example, the "footprint adjustment bar"  adjusts to "define two or more

working lengths of the [] footprint adjustment bar."[22]  The two (or more)[23]lengths of the footprint

adjustment bar are held place by "locking pin hole[s]."[24]  All of these descriptions, considered in

the context of defining a working length of an "adjustable-footprint suspension seat frame,"[25]

demonstrate that the "footprint adjustment bar" facilitates the functionality of adjusting a

distance between seat supports.  Put more simply, the footprint is a mode defined by the distance

between the seat supports.  This allows the device to support two or more seating modes—at

least one for sitting in a hammock seat and one for laying in a hammock.

Outside the claims section, the patent further recites that a footprint adjustment bar is

defined by its function rather than some external limiting factor.  As an example, the detailed

description explains that the '893 Patent invention can have both "first and second footprint

adjustment bars."[26]  Thus, the number of bars is less important than the footprint adjustment bars

"enable[e] overlap of material between the footprint adjustment bar and the cantilever arm in

connection region,"[27] and that it adjust to "support[] at least two footprints," or seating modes.[28]

### F.    Claim Term:  "pin holes"

The term "pin holes" appears in claim 8, 9 as follows:

8.  The adjustable-footprint suspension seat frame of claim 1, wherein the first
cantilever arm and the second cantilever arm each include a plurality of <u>pin holes</u>.

---

[22] *Id.* at Claim No. 5, 13:8–10.
[23] *Id.*at Claim No. 2, 12:53–55 (describing a "plurality" of bars that each "hav[e] a length.").
[24] *Id.*at Claim No. 6, 13:15–18.
[25] *See, e.g.*, *id.* at Claim Nos. 2, 5–6, 12:45, 13:1, 13:12.
[26] *Id.* at 3:35–38.
[27] *Id.* at 3:67–4:2.
[28] *Id.* at 9:59–67.

9. The adjustable-footprint suspension seat frame of claim 8, wherein the plurality of <u>pin holes</u> are disposed along a length of the first cantilever arm and a length of the second cantilever arm.[29]

When read in the context of the "side clip" and "anchor," which "engage[]" along different proximal and distal points "along the first cantilever arm,"[30] the plain and ordinary meaning for "pin holes" is simply the connection point for the side clip and anchor to engage and hold the suspension seat in place. This must be the case because the "pin holes" are the only claim term that are described as being "disposed along the length of the first cantilever arm and a length of the second cantilever arm."[31] This function—of providing a connection point for one piece of the device to engage another—is also demonstrated by the singular "pin hole" that is referenced in the claims. In claim 6, the patent recites that the footprint adjustment bar "comprises at least one locking pin hole."[32] When the locking pin hole is engaged, the "working length of the first footprint adjustment bar" is "substantially maintain[ed]."[33] The Court should resist any suggestion that the claim term "pin holes" does not include the obvious function of acting as a connection point for a locking pin or anchor to sit and hold the various pieces of the device in place.

Like all other disputed claim terms, the patent drawings support the plain and ordinary meaning for the claim term "pin holes." The patent specifically recites that the "adjustable side clip comprises a lock" and that the "lock comprises one half of a pin-hole pair, wherein the pin is

---

[29] *Id.* at Claim Nos. 8, 9, 13:23–29.
[30] *Id.* at Claim No. 12, 14:1–5.
[31] *Id.* at Claim No. 9, 13:27–29.
[32] *Id.* at Claim No. 6, 13:14.
[33] *Id.* at Claim No. 6, 13:16–18.

included as part of the adjustable side clip and mates with the holes . . . provided on cantilever

arm."[34]  Thus, the pin holes are the connection point between the side clip and the cantilever arm.

G.    **Claim Term: "engages"**

The term "engages" appears in claims 12 and 13 as follows:

12.  The adjustable-footprint suspension seat frame of claim 8, wherein the first
anchor <u>engages</u> the first cantilever arm and slides distally and proximally along
the first cantilever arm as the side clip slides proximally and distally along the
first cantilever arm.

13.  The adjustable-footprint suspension seat frame of claim 12, wherein the
second anchor <u>engages</u> the second cantilever arm and slides distally and
proximally along the second cantilever arm.[35]

The claim term "engages" is sufficiently clear within the claims of the '893 Patent that it

does not require any extraordinary definitions, nor does it need the injection of additional terms

to be properly understood by one with ordinary skill in the art.  "Engages" and its alternate form

"engage" are used just three times in the claims.[36]  In each instance, the '893 Patent recites that

one piece of the device "engages" another piece.  First there is the first section of the footprint

adjustment bar "engag[ing]" the second section "to define two working lengths of the first

footprint adjustment bar."[37]  In the second and third instances, an anchor is "engag[ing]" a

cantilever arm.[38]  As shown above in Points II(A), (D), and (E), these pieces of the device—

either the footprint adjustment bar with itself or the cantilever arm with the anchor—connect and

lock in place to support the hammock or suspension seat.  Thus, the evidence intrinsic to the

---

[34] *Id.* at 10:49–54 (internal citations omitted).
[35] *Id.* at Claim Nos. 12, 13, 14:1–9.
[36] *Id.* at Claim Nos. 5, 12–13, 13:8–9, 14:1–3, 14:6–8.
[37] *Id.* at Claim No. 5, 13:8–10.
[38] *Id.* at Claim Nos. 12–13, 14:1–3, 14:6–8.

claims is that the verb "engage" must refer to connecting for the purpose of holding the

suspension seat in place.  Any other definition would distort the plain and ordinary meaning

within the context of the claims.

> **H.      Claim Term:  "inside surfaces"**

The term "inside surfaces" appears in claim 15 and 16 as follows:

> 15.  The adjustable-footprint suspension seat frame of claim 1, wherein the first
> cantilever arm and the second cantilever arm are disposed opposite each other and
> facing each other on <u>inside surfaces</u> of each cantilever arm.

> 16.  The adjustable-footprint suspension seat frame of claim 15, wherein the
> backside of the first cantilever arm and the backside of the second cantilever arm
> include surfaces that are on a side of the first cantilever arm and second cantilever
> arm that are opposite the <u>inside surfaces</u> of each cantilever arm.[39]

The claim term "inside surfaces" is specifically defined within the claim of the '893

Patent.  The "inside surfaces" are the surfaces of each cantilever arm that face the opposite

cantilever arm.[40]  To the extent that plaintiff will argue that this term is confusing or ambiguous

because directional terms require a reference point, such a reference point exists here.  And the

plain language defining that reference point should not be altered.

Further dispelling any purported ambiguity, the drawings included in the patent, showing

the cantilever arms as "410a" and "410b," make plain the reference point of the two cantilever

arms sitting opposite to one another:[41]

---

[39] *Id.* at Claim Nos. 15–16, 14:13–23.
[40] *Id.* at Claim No. 15, 14:15–17.
[41] *Id.* at Fig. 4.

# FIG. 4



As defined in the claim, the "inside surface" is the surface on each cantilever arm facing the

opposite cantilever arm. Once again, the plain and ordinary meaning of the term suffices.

**I.      Claim Term:  "backside"**

The term "backside" appears in claim 1 and 16 as follows:

1.  An adjustable-footprint suspension seat frame comprising:  three or more feet;
a first cantilever arm comprising a first cradle disposed on a distal end of the first
cantilever arm and a side clip including a first anchor for a suspension seat
oriented on a <u>backside</u> of the first cantilever arm, wherein the first cantilever arm
extends through the side clip and the side clip slides proximally and distally along
the first cantilever arm; a second cantilever arm comprising a second cradle
disposed on a distal end of the second cantilever arm and a second anchor for the
suspension seat oriented on a <u>backside</u> of the second cantilever arm; and a first
footprint adjustment bar connecting the first cantilever arm to the second
cantilever arm.

16.  The adjustable-footprint suspension seat frame of claim 15, wherein the
<u>backside</u> of the first cantilever arm and the <u>backside</u> of the second cantilever arm

include surfaces that are on a side of the first cantilever arm and second cantilever arm that are opposite the inside surfaces of each cantilever arm.[42]

The claim term backside" is well defined within the '893 Patent claims through a fixed reference point and thus should be afforded its plain and ordinary meaning. Here, the fixed reference point is the "inside surfaces," addressed above in Point II(H). The inside of the cantilever arms is the side of each cantilever arm facing the other.[43] "[T]he backside of the first cantilever am and the backside of the second cantilever arm includes surfaces that are on a side of the first cantilever arm and second cantilever arm that are opposite the inside surfaces of each cantilever arm."[44] Thus, the term "backside" is also fixed in the same way that the directional term "inside surfaces" is fixed.

**J.    Claim Term:  "side clip including a first anchor"**

The phrase "side clip including a first anchor" is a combination of two claim terms that have been addressed previously. *See* Points II(C) ("side clip"), II(D) ("anchor"). Using two discrete claim terms in a phrase should not somehow alter their meaning. As argued above, the claim terms that make up this phrase should be given their plain and ordinary meaning.

**K.    Claim Term:  "backside of the first cantilever arm"**

The phrase "backside of the first cantilever arm" is a combination of two claim terms that have been addressed previously. *See* Points II(A) ("cantilever arm"), II(I) ("backside"). Using two discrete claim terms in a phrase should not somehow alter their meaning. As argued above, the claim terms that make up this phrase should be given their plain and ordinary meaning.

---

[42] *Id.* at Claim Nos. 1, 16, 12:29–38, 14:18–23.
[43] *Id.* at Claim No. 15, 14:15–17.
[44] *Id.* at Claim No. 16, 14:19–23.

**L.    Claim Term:  "detachably attaching"**

The term "detachably attaching" appears in claim 2 as follows:

2.  The adjustable-footprint suspension seat frame of claim 1, further comprising: a first coupling on the first cantilever arm <u>detachably attaching</u> the first cantilever arm to the first footprint adjustment bar; a second coupling on the second cantilever arm <u>detachably attaching</u> the second cantilever arm to the first footprint adjustment bar; and wherein the first footprint adjustment bar has a first length and comprises one of a plurality of footprint adjustment bars, each bar of the plurality of footprint adjustment bars having a length and configured to <u>detachably attach</u> to the first cantilever arm at a first end and detachably attach to the second cantilever arm at a second end.[45]

The claim term "detachably attaching" should maintain its plain and ordinary meaning. The claims make clear that a "coupling on the first cantilever arm" allows the first cantilever arm to "detachably attach[]" to "the first footprint adjustment bar."[46]  The same mechanism exists on the second cantilever arm.[47]  In context, it is clear that the first cantilever arm attaches to the footprint adjustment bar in a manner that allows detaching.

This phrase is used elsewhere in the patent, consistent with its usage in the claims.  The patent recites that "each of legs may be detachably attached to the rest of suspension seat frame to facilitate breakdown or storage of the apparatus."[48]  The ability to detach and re-attach the cantilever arms from the base of the device is just one way to make the device more portable. Thus, such a plain and ordinary meaning should be afforded to the phrase "detachably attaching."

_____
[45] *Id.* at Claim No. 2, 12:45–59.
[46] *Id.* at Claim No. 2, 12:47–49.
[47] *Id.* at Claim No. 2, 12:50–52.
[48] *Id.* at 6:29–32 (internal citations omitted).

**M.     Claim Term:  "compressible bushing"**

The term "compressible bushing" appears in claims 3 and 4 as follows:

3.  The adjustable-footprint suspension seat frame of claim 2, wherein the first coupling comprises a compressible bushing.

4.  The adjustable-footprint suspension seat frame of claim 2, wherein the first footprint adjustment bar comprises a compressible bushing, the compressible bushing having a cross section of substantially similar size and shape to a cross section of the first coupling.[49]

The claim term "compressible bushing" is sufficiently clear within the claims of the '893 Patent that it does not require any extraordinary definitions, nor does it need the injection of additional terms to be properly understood by one with ordinary skill in the art.  A "compressible bushing" is a component known to those of skill in the art, though unique in this particular implementation.  Thus, when one with ordinary skill would understand that a "coupling" between two pieces of the patented device "comprises" a "compressible bushing"[50] he or she would understand that the compressible bushing has its plain and ordinary meaning.

Outside of the claims section, the patent further recites that a:

compressible bushing covers one or more surfaces of footprint adjustment bar in a region where footprint adjustment bar mates with another component of a suspension frame (for example, cantilever arms or a transition hinge).  In certain embodiments, compressible bushing is formed of a hard plastic which helps eliminate "slop" between suspension seat frame components under load, and eliminates galling or other sources of friction and sticking between metal components.[51]

---

[49] *Id.* at Claim No. 3–4, 12:60–67.
[50] *Id.* at Claim Nos. 2–3, 12:47–49, 12:60–62.
[51] *Id.* at 9:42–50 (internal citations omitted).

This description of the utility of a compressible bushing demonstrates that the compressible bushings referenced here have the same function as any other compressible bushing.  The Court should thus not insert any extraordinary meaning into this relatively common term.

**N.    Claim Term: "telescopically"**

The term "telescopically" appears in claim 5 as follows:

5.  The adjustable-footprint suspension seat frame of claim 1, wherein:  the first footprint adjustment bar comprises a first section and a second section; wherein the first section is substantially concentric to the second section and configured to move telescopically within the second section, and wherein the first section is configured to operably engage with the second section to define two or more working lengths of the first footprint adjustment bar.[52]

When read in the context of a "a first section" that is "substantially concentric" to "a second section" of the "footprint adjustment bar," then it is clear that the first section "mov[ing] telescopically within the second section," refers to one section sliding into another to change the "working lengths of the first footprint adjustment bar."[53]  Thus, the Court should apply the plain and ordinary meaning to the term "telescopically."

Though the plain and ordinary meaning is sufficient on its own, the '893 Patent also recites that "the first section is substantially concentric to the second section and configured to move telescopically within the second section and configured to move telescopically (e.g., back and forth relative to each other) within the second section."[54]  With this additional context, the term telescopically—a clear reference to retractable telescopes—is made all the more clear.  By moving one section of the footprint adjustment bar into or out of another, it changes length.

---

[52] *Id.* at Claim No. 5, 13:1–10.
[53] *Id.* at Claim No. 5, 13:4–10.
[54] *Id.* at 7:36–40.

### O.    Claim Term:  "connecting"

The term "connecting" appears in claim 1 as follows:

1.  An adjustable-footprint suspension seat frame comprising:  three or more feet; a first cantilever arm comprising a first cradle disposed on a distal end of the first cantilever arm and a side clip including a first anchor for a suspension seat oriented on a backside of the first cantilever arm, wherein the first cantilever arm extends through the side clip and the side clip slides proximally and distally along the first cantilever arm; a second cantilever arm comprising a second cradle disposed on a distal end of the second cantilever arm and a second anchor for the suspension seat oriented on a backside of the second cantilever arm; and a first footprint adjustment bar <u>connecting</u> the first cantilever arm to the second cantilever arm.[55]

The term "connecting," is a basic verb that should be afforded its plain and ordinary meaning.  The "footprint adjustment bar connect[s] the first cantilever arm to the second cantilever arm."[56]  In other words, the first cantilever arm would sit wholly separate and apart from the second cantilever arm, if there was not a bar connecting them.  This ordinary verb should be given its ordinary meaning, without any additional terms injected into it.

Figure 4, inserted above in Point II(H), illustrates how the two cantilever arms—410a and 410b—are connected by a bar at the bottom.  While the two cantilever arms do not touch, they are connected via the footprint adjustment bar.

**CONCLUSION**

Based on the foregoing, Kammok requests that the Corut adopt its proposed constructions which are supported by and consisted with the intrinsic evidence of the patent.

DATED this 5th day of July, 2024.

---

[55] *Id.* at Claim No. 1, 12:29–44.
[56] *Id.* at Claim No. 1, 12:43–44.

BY:     /s/ Dominic W. Shaw
        DOMINIC W. SHAW

Reid J. Allred
Douglas N. Marsh
CAMBRIDGE LAW, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
303.488.3338
reid@cambridgelaw.com
doug@cambridgelaw.com

Erik A. Olson
eolson@mohtrial.com
Dominic W. Shaw
dshaw@mohtrial.com
MARSHALL OLSON & HULL, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
801.456.7655

*Attorneys for Plaintiff*