IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-02405-CNS-MEH

KAMMOK HOLDINGS, LLC,

    Plaintiff,

v.

EASTHILLS, INC., and DOES 1–10.

    Defendants

### PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S CLAIM CONSTRUCTION BRIEF

Pursuant to section IV paragraph 9 of the Court's scheduling order, Plaintiff Kammok Holdings, LLC ("Kammok") hereby opposes the claim construction brief filed by Defendant Easthills, Inc. ("Easthills").

### INTRODUCTION

The Court should not adopt the extraordinary definitions that Easthills seeks to impose on claim terms found in U.S. Patent 11,330,893 ("the '893 Patent" or "Patent"). Easthills asked the Court to apply a definition other than the plain and ordinary meaning for 15 claim terms (now reduced to 10 terms based on the parties' stipulation). These proposed, non-ordinary definitions each fail for a similar reason: Easthills fails to examine the claim terms within their proper context in the claims, instead merely asserting that the terms are not clear and using that assertion in an attempt to inject evidence outside the '893 Patent's claims. When Easthills does

this, it adds unnecessarily limiting language not found within the claims.  This is not the proper approach to claim construction, and Easthills's proposed constructions should thus be denied.

## ARGUMENT

**I.      RESPONSE TO EASTHILLS'S SUMMARY OF THE LAW.**

Throughout its claim construction brief, Easthills relies on the descriptive portions of the '893 Patent to define claim terms.  While the written descriptions of a patent can be informative to the reviewing court in defining the claim terms, it is the patent claims that "are 'of primary importance, in the effort to ascertain precisely what it is that is presented,'" in a patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  Therefore, the "written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of claims."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995).  For this reason, Courts are to give claim terms their "ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history," unless "1) [] a patentee sets out a definition and acts as his own lexicographer, or 2) [] the patentee disavows the full scope of a claim term either in the specification or during prosecution."  *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).

Easthills has not shown that the written descriptions in the '893 Patent set out extraordinary definitions for the claim terms, and Kammok does not disavow the full scope of any claim.  Therefore, the Court should apply the ordinary and customary meaning as understood by a person of ordinary skill in the art to each claim term that Easthills challenges.

**II.     RESPONSE TO EASTHILLS'S PROPOSED CONSTRUCTIONS.**

    **A.     Undisputed Terms.**

On July 26, 2024, the parties agreed via email that the following claim terms would be defined as the alternative constructions proposed by Kammok in its opening claim construction brief (ECF No. 65):  "engages," "pinholes," "anchor," "side clip," and "side clip including a first anchor."  Because the parties have stipulated to these five terms, this brief does not further address those claim terms.

    **B.     Claim Term:  "cantilever arm"**

The Court should give the term "cantilever arm" its plain and ordinary meaning. Easthills instead asks the court to define "cantilever arm" as "[t]he arm is *cantilevered* by being connected only at footprint adjustment bar."  *See* Easthills's Claim Construction Brief (ECF No. 64) ("Defendant's Brief") at 7.  To support this construction, Easthills cites only four lines of the '893 Patent at 3:58–61.  These four lines are not pulled from the Patent's claim section.  Instead, these lines describe an illustration that is specifically described as a "non-limiting example."[1]  In the non-limiting example, the cantilever arms were directly connected to the footprint adjustment bar.

The '893 Patent's claims do not require the "cantilever arms" to be connected only at a footprint adjustment bar.  The claims teach that "a first footprint adjustment bar connect[s] the first cantilever arm and the second cantilever arm,"[2] but there is no limiting language that requires a direct connection between the footprint adjustment bar, nor any limiting language

---

[1] *See* '893 Patent at 3:55–61.
[2] *Id.* at Claim No. 1, 12:43–44.

3

stating how many connections the cantilever arm can have with other sections of the device. Because the claim does not limit the term "cantilever arm," it would be error for the Court to apply Easthills's limited definition to that term.

## C. Claim Term: "cradle"

The Court should give the term "cradle" its plain and ordinary meaning. Easthills asks the court to define "cradle" as a "U-shaped guide disposed at the distal ends of cantilever arms." Defendant's Brief at 8. Kammok does not generally object to describing the cradle as a "guide," nor does it object to stating that the cradles are disposed at the distal ends of the cantilever arms. These descriptions are found within the Patent,[3] so they are accurate. But including them in the definition will create redundancy for the factfinder at trial, which risks confusion and error. This redundancy can be ameliorated by simply applying the term's plain and ordinary meaning.

The major substantive issue with Easthills's proposed definition is Easthills's claims that the cradles must be "U-shaped." Easthills has failed to identify any language in the Patent's claims, the broader specification, the patent prosecution history, or even in any extrinsic evidence that a cradle would be understood by a person of ordinary skill in the art as requiring the cradles to be U-shaped. That portion of the definition is fabricated by Easthills to unduly limit the claim term and should be rejected.

---

[3] Claim 1 teaches that the "first cantilever arm" is comprised of "a first cradle disposed on a distal end of the first cantilever arm . . . ," and that the "second cantilever arm" is comprised of "a second cradle disposed on a distal end of the second cantilever arm . . . ." *Id.* at Claim No. 1, 12:32–33, 12:39–40. Thus, it is redundant to define cradle in terms of their respective positions, when those positions are fixed by the Patent.

4

D.     **Claim Term: "footprint adjustment bar"**

The Court should give the term "footprint adjustment bar" its plain and ordinary meaning.  Easthills asks the court to define "footprint adjustment bar" as a "[b]ar that comprises a length defining bar member of rigid tubing, and having a first and second connecting regions that are respectively connected to the first and second cantilever bar at the respective anchor points."  Defendant's Brief at 9.  Easthills's argument for why "footprint adjustment bar" should not be given its plain and ordinary meaning fails to cite any language in the claims of the '893 Patent to demonstrate that the term is not clear in context.  Instead, like Easthills did with the term "cantilever arm," it cites only a few lines that describe non-limiting examples of what the footprint adjustment bar may look like.

In Easthills's first example, it cites the '893 Patent at 9:1–9.  That section describes two different embodiments of the footprint adjustment bar.  Neither embodiment is described as "rigid tubing," and the first embodiment "interfaces" with the cantilever arms via hardware of an existing seat frame.  Thus, Easthills's argument that the term must be defined as a "defining bar member of rigid tubing" and "connect[ing] to the first and second cantilever bar at the respective anchor points," are both incompatible with the plain language of the Patent.

Easthills's second example[4] does describe "various embodiments" of the "footprint adjustment bar that are comprised of rigid material and are described as "attached to first and second cantilever arms."  However, these embodiments, which are described in the description section of the Patent, are non-limiting and may not serve as a basis for limiting the claims section

---

[4] *Id.* at 4:60–64

5

of the patent. *See Markman*, 52 F.3d at 980. Therefore, the Court should decline to adopt Easthills's limiting definition of "footprint adjustment bar."

### E. Claim Term: "inside surfaces"

The Court should apply the plain and ordinary meaning of "inside surfaces" as used in the '893 Patent. The Patent uses the term "inside surfaces" only twice. First, claim 15 states that "the first cantilever arm and the second cantilever arm are disposed opposite each other and facing each other on inside surfaces of each cantilever arm."[5] This description merely defines which side of the cantilever arms constitutes the inside surfaces. The inside surfaces are the surfaces that face each other when the cantilever arms are opposite one another. This directional definition is made clearer by figure 4 of the Patent, which shows an embodiment of the cantilever arms disposed opposite one another. The inside surface is the side of each respective cantilever arm that faces the other cantilever arm.



FIG. 4

---

[5] *Id.* at Claim No. 15, 14:15–17. The second use of "inside surfaces" is nearly identical to the first use, except that it goes on to define "backside" in relation to the inside surfaces. *Id.* at Claim No. 16, 14: 18–23.

Thus, the Patent is clear what surface of the cantilever arm constitutes the "inside surface."

Easthills argues that the Patent "does not indicate where the 'inside surfaces' of the cantilever arms are located." Defendant's Brief at 11. But this argument is willful ignorance. A person of ordinary skill in the art would be able identify the inside surfaces of a cantilever arm, where the inside surfaces are described as the sides of an arms that face each other when disposed opposite one another.

### F. Claim Term: "backside"

The Court should apply the plain and ordinary meaning of "backside" as used in the '893 Patent. The Patent defines "backside" in relation to the "inside surfaces" addressed above. The backsides of the cantilever arms are the sides of each cantilever arm "that are opposite the inside surfaces of each cantilever arm."[6] Because the "inside surfaces" are clearly defined, the "backside" of the cantilever arms are just as clearly defined. These terms are not indefinite. Easthills's argument that the term "backside" could not be understood by one of skill in the art is again willful ignorance.

### G. Claim Term: "backside of the first cantilever arm"

Like the term addressed directly above in Point II(J), "backside of the first cantilever arm," is a phrase consisting of two terms that the Court must construe. In this case the terms are "backside," Point II(I) and "cantilever arm," Point II(A). The Court should give the phrase "backside of the first cantilever arm" whatever meaning it assigns to "backside" and "cantilever arm."

---

[6] *Id.* at Claim No. 16, 14:19–23.

7

Despite these terms having already been addressed, Easthills raises a new argument when these terms are combined into a phrase. Easthills argues that these terms are indefinite because "[i]t is unclear how a single suspension system seat can be oriented on a 'backside of the first cantilever arm' and at the same time also be oriented on a backside of the second cantilever arm." Defendant's Brief at 13. But this argument ignores the plain language of the Patent. Claim 1 of the '893 Patent states that "<u>a first anchor</u> for a suspension seat [is] oriented on a backside of the first cantilever arm,"[7] and that "<u>a second anchor</u> of the suspension seat [is] oriented on a backside of the second cantilever arm."[8] The Patent never states that the "suspension system seat" is oriented on the backside of both cantilever arms, as Easthills suggests. Instead, the Patent states that the anchors for the seat are oriented on the backsides of the cantilever arms. This is to be expected for any hammock stand, which will typically have anchors in two places. Thus, the phrase "backside of the first cantilever arm" is not indefinite.

### H. Claim Term: "detachably attaching"

The Court should give the term "detachably attaching" its plain and ordinary meaning. Easthills asks the court to essentially give this single term two definitions that must be inserted into different sections of the '893 Patent. Defendant's Brief at 14 (including two definitions for the term "detachably attaching"). One definition is specific to when the term "detachably attaching" is used to describe the connection between the first cantilever arm and the first footprint adjustment bar.[9] The second definition Easthills proposes seems to be specific to when the term describes the connection between the second cantilever arm and the first footprint

---

[7] *Id.* at Claim No. 1, 12:34–35.
[8] *Id.* at Claim. No. 1, 12:41–42.
[9] *See id.* at Claim No. 2, 12:47–49.

8

adjustment bar.[10]  Easthills does not provide any analysis or explanation for why the Court should adopt two separate definitions for a single claim term.  In the context of the Patent itself, it is clear when the term "detachably attaching" refers to the first cantilever arm as opposed to the second cantilever arm.  Thus, if the Court gives the term its plain and ordinary meaning, then the fact finder will ultimately be able to use a single definition for a single claim term rather than giving the same term different meanings.  The Court should therefore decline to create ambiguity by assigning two definitions to a single claim term.

### I.      Claim Term:  "compressible bushing"

The Court should give the term "compressible bushing" its plain and ordinary meaning.  Easthills instead asks the court to define that term as "[m]aterial placed on the footprint adjustment bar or first cantilever arm for reducing friction between two surfaces sliding together."  This definition is unduly limiting to the meaning found in the Patent.  Easthills itself notes that the purpose of the compressible bushing is to "eliminate 'slop' . . . galling or other sources of friction and sticking between metal components."  Defendant's Brief at 15 (citing '893 Patent at 9:46–50).  Thus, narrowly defining this term to only material that reduces friction between two surfaces sliding against each other potentially limits other uses of the "compressible bushing."  Easthills has not provided any explanation for why this limitation should exist, and thus the Court should decline to use its proposed definition.

---

[10] The Patent states that the second cantilever arm detachably attaches to the first footprint adjustment bar.  Yet, Easthills's second definition for the claim term defines the second cantilever arm as attaching to the second footprint adjustment bar.  This is incorrect and contrary to the plain language of the Patent.

### J. <u>Claim Term: "telescopically"</u>

The Court should give the term "telescopically" its plain and ordinary meaning. In general, Kammok agrees with Easthills that the adverb "telescopically" is used in the Patent to describe the movement of "a first section [of the footprint adjustment bar] and a second section [thereof], wherein the first section is substantially concentric to the second section and configured to slide inside the second section." *See* Defendant's Brief at 15. This language is largely pulled from Claim No. 5 of the Patent. The issue with Easthills's definition is that it turns an adverbial claim term—"telescopically"—into a noun by defining it as "a footprint adjustment bar." *Id.* By so doing, Easthills conflates the adverb of a sentence with the subject of the sentence. Thus, Easthills's definition creates unnecessary confusion, and the Court should simply give the term "telescopically" its plain and ordinary meaning.

### K. <u>Claim Term: "connecting"</u>

The term "connecting" is a simple verb that should be given its plain and ordinary meaning. The term is used only once in the claims section of the '893 Patent: in Claim No. 1, which states that the adjustable-footprint suspension seat frame is comprised, in part, of "a first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm."[11] Despite the simplicity of this term, Easthills cites several non-limiting examples found in the Patent to ask the Court to define "connecting" as "[t]he first and second cantilever arms are each coupled to the first footprint adjustment bar and are maintained in an operable angle and separation by connection to the first footprint adjustment bar." Defendant's Brief at 16.

---

[11] *Id.* at Claim No. 1, 12:29–44.

Easthills's definition is the amalgamation of several non-limiting examples cited by Easthills. But the non-limiting examples are not what courts rely on when construing claims. Instead, "a court must begin by 'look[ing] to the words of the claims themselves . . . to define the scope of the patented invention.'" *Acumed LLC v. Stryker Corp.*¸ 483 F.3d 800, 805 (Fed. Cir. 2007) (alteration and ellipses in original) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). If the Court looks to the plain language of the patent, it will see that Easthills's contrived definition does not have a basis in the language of Claim 1, where the term is used. All that is required is that the footprint adjustment bar connects the two cantilever arms.[12] Thus, the Court should provide the term "connecting" with its plain and ordinary meaning.

## **CONCLUSION**

Based on the foregoing, Kammok requests that the Court deny Easthills's proposed constructions which are unsupported by and inconsistent with the intrinsic evidence of the patent.

---

[12] *Id.* at Claim No. 1, 12:43–44.

11

DATED this 29th day of July, 2024.

        BY: /s/ Dominic W. Shaw
           DOMINIC W. SHAW

        Reid J. Allred
        Douglas N. Marsh
        CAMBRIDGE LAW, LLC
        4610 South Ulster Street, Suite 150
        Denver, Colorado 80237
        303.488.3338
        reid@cambridgelaw.com
        doug@cambridgelaw.com

        Erik A. Olson
        eolson@mohtrial.com
        Dominic W. Shaw
        dshaw@mohtrial.com
        MARSHALL OLSON & HULL, P.C.
        Newhouse Building
        Ten Exchange Place, Suite 350
        Salt Lake City, Utah 84111
        801.456.7655

        *Attorneys for Plaintiff*