UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02405-SKC-MEH

KAMMOK HOLDINGS, LLC,

    Plaintiff/Counter-Defendant,

v.

EASTHILLS, INC.; and DOES 1-10,

    Defendant/Counterclaimant.

---

**DEFENDANT EASTHILLS, INC.'S RESPONSE TO
OPENING CLAIM CONSTRUCTION BRIEF**

---

Pursuant to the Court's Scheduling Order [Dkt. No. 17], Defendant Easthills, Inc. ("Easthills") hereby responds to Plaintiff Kammok Holdings, LLC's ("Kammok") Opening Claim Construction Brief [Dkt. No. 65] and further argues in support of its own proposed claim construction for the invention claimed in United States Patent No. 11,330,893 (the "'893 Patent").

Easthills' responsive brief is made and based on the materials on file in this action, the Declaration of Emily M. Heim (the "Heim Decl.", and any arguments of counsel entertained by the Court.

## I. INTRODUCTION

Kammok's Opening Claim Construction Brief argues that the Court should adopt a plain and ordinary meaning for the disputed claim terms because they are simple, plain English words whose meanings are readily apparent. [*See* Dkt. No. 65 at 1.] Easthills, however, asserts that several the disputed terms are not amenable to such a construction when read in the context of the '893 Patent's claim language and specification.

While there remain some disputes between the parties concerning the construction of several claim terms recited in the '893 Patent, the mutual exchange of proposed claim interpretations has resulted in a significant reduction of the originally submitted, disputed terms to the Court. [Dkt. Nos. 64, 65.] Specifically, the parties have managed to reduce the original thirteen disputed terms [Dkt. No. 63] to eight remaining terms in dispute. (Heim Decl. ¶ 6.) The claim terms that are no longer in dispute include the following: "engages", "pinholes", "anchor", "side clip", and "side clip including a first anchor". (*Id.*) For these claim terms, Easthills has agreed to adopt Kammok's alternative proposed claim interpretations, which largely track a plain and ordinary meaning interpretation with some minor deviations and/or clarifications. (*Id.* at ¶ 4).

## II. MUTUALLY AGREED TO CLAIM TERM CONSTRUCTIONS

The parties have agreed to the constructions for the following previously disputed terms. Thus, the Court need no longer construe these claim terms.

| Agreed Term | Claim No. | Construction |
|---|---|---|
| Engages | 12, 13 | "Connects to for the purposes of holding the suspension seat in place" |
| Pinholes | 8, 9 | "Holes through which the side clip is connected to hold the suspension seat in place." |
| Anchor | 1, 10, 11, 12, 13 | "A connector in the side clip for connecting to a suspension seat." |
| Side Clip | 1, 12 | "A mechanism used to move the anchor distally or proximally." |
| Side clip including a first anchor | 1 | "A mechanism used to move the anchor distally or proximally that includes a first connector for connecting to a suspension seat." |

(Heim Decl. ¶ 5.)

## III. DISPUTED CLAIMS TERMS

For the remaining disputed claim terms, Kammok has maintained a claim construction of "plain and ordinary meaning." [Dkt. No. 65 at 1-3, 7-24.] As Easthills' briefing sets forth below, Kammok's remaining proposed constructions are untenable because, for each disputed term, "the term 'chosen by the patentee so deprives the claim of clarity' as to require resort to the other intrinsic evidence for a definite meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002) (citation omitted). Here, giving all the disputed terms "plain

and ordinary meaning" claim construction interpretation would either: (a) not resolve the disputes between the parties; or (b) not provide the jury with a clear understanding of the disputed claim scope. *See Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361-62 (Fed. Cir. 2008). Thus, the Court should not simply adopt Kammok's suggestion that a plain and ordinary meaning should be applied to the construction of these disputed claim terms. Rather, the Court should construe these disputed claim terms consistent with constructions that are consistent, and supported by, both the intrinsic and extrinsic evidence presented.

Unfortunately, the Court cannot turn to the intrinsic record, which includes the '893 Patent's specification and the associated prosecution history, to provide it with interpretive guidance for several disputed claim terms because the intrinsic record is devoid of any discernable meaning for them, thereby rendering these claim terms indefinite as a matter of law. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the patent's specification…[and] prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."); *see also Bushnell Hawthorne, LLC v. Cisco Sys., Inc.* 813 F. App'x 522, 526-27 (Fed. Cir. 2020) (holding claim indefinite where intrinsic record left its meaning "entirely unclear"); *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (holding claim term indefinite because it had multiple meanings, and the patent did not define it).

Easthills asserts that Kammok has, at least, proposed claim interpretations for the following terms that are not supported by the '893 Patent's intrinsic evidence and, as such, must be rejected by the Court or, if adopted, would result in a construction that renders the patent indefinite as a matter of law: (1) "inside surfaces" (Claims 15, 16); and (2) "backside" (Claims 1, 16).

For the remaining disputed claim terms, Kammok's proposed construction is either refuted by or not supported by the '893 Patent's intrinsic evidence. Simply put, adopting Kammok's proposed construction of these terms – whether a plain and ordinary meaning is suggested or otherwise – would provide the trier of fact with a required interpretation that is not supported by the '893 Patent's intrinsic evidence, thereby rendering the trier of fact's inquiry fatally flawed. *See Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1370 (Fed. Cir. 2022). Easthills asks the Court to avoid such an inequitable result by adopting its proposed disputed claim interpretations set forth below. With this goal in mind, Easthills provides the company's response to Kammok's proposed construction of the claim terms that remain in dispute between the parties.

### A. "cantilever arm" (Claims 1, 8, 9, 10, 11, 12, 13, 15, 16, 17)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a bar that projects upwards to support the suspension seat." | "The arm is *cantilevered* by being connected only at footprint adjustment bar." |

Construction of the term "cantilever arm" would be helpful to a jury because "cantilever" is not a commonly used word. Thus, "a proper claim construction [will] provide[] a legal standard for the jury to apply," *Kaufman*, 34 F.4th at 1370. However, Kammok's proposes a plain and ordinary meaning but then offers a construction that fails to embody the plain and ordinary meaning. [Dkt. No. 65 at 8-9.] In their respective opening briefs, both parties recite the definition of "cantilever" as "a projecting beam or member supported at only one end." [Dkt. Nos. 64 at 7, 65 at 9.] Here the important part of the definition is "supported at only one end"; therefore, any plain and ordinary meaning of this term should clearly encompass this element. Kammok's construction completely glosses over this crucial part and then asks the Court to add an additional limitation that the arm must project upwards. [Dkt. No. 65 at 9.] However, a court cannot rewrite a claim during claim construction or inject unrecited structural elements or features into the claim. *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007); *see also Lifted Ltd., LLC v. Novelty Inc.*, No. 16-CV-03135- PAB-GPG, 2020 WL 2747814, at *6 (D. Colo. May 27, 2020) (noting the patent neither claimed nor disclaimed a smooth surface, and therefore importing such a limitation would be improper). Allowing Kammok to add structure and features not otherwise claimed in the '893 Patent would circumvent the law, the recited specification, and the file history that gave rise to the claims as issued following examination by the United States Patent and Trademark Office.

The purpose of claim construction is to define claims to assist the trier of fact, not to recraft the claims to new meanings. *See Source Vagabond Sys. Ltd. v.*

*Hydrapak, Inc.*, 753 F.3d 1291, 1301 (Fed. Cir. 2004). Easthills' proposed construction accomplishes this goal. The specification and the drawings in the '893 Patent clearly describe the cantilever arm as connecting to a footprint adjustment bar at only one end. (*See* the '893 Patent at col. 3:58-61, figs. 1-4.) The '893 Patent does not disclose alternate positions or any other points of support besides on the anchor point at the footprint adjustment bar. Therefore, the Court should adopt Easthills' proposed construction that the arm is connected *only* at one end, at the footprint adjustment bar.

### B. "cradle" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning  Alternatively, if the Court determines a construction is needed, "a guide." | "U-shaped guide disposed at the distal ends of cantilever arm." |

Here, construction of the term "cradle" would be helpful to a jury because "cradle" has more than one plain and ordinary meaning. Kammok's proposed alternative construction of "a guide" ignores the positioning limitation in the specification. [Dkt. No. 65 at 10-11.] The specification defines "a guide" as a cradle disposed at the distal end of a cantilever arm. (*See* the '893 Patent at col. 6:2-3.) Therefore, Easthills' construction for the term "cradle" is more consistent with the definition provided in the '893 Patent.

### C. "footprint adjustment bar" (Claims 1, 2, 4, 5, 6, 7, 17, 19)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "an adjustable connector bar which allows a distance between cantilever arms to be increased or decreased." | "Bar that comprises a length defining bar member of rigid tubing, and having a first and second connecting regions that are respectively connected to the first and second cantilever bar at the respective anchor points." |

Kammok argues that the terms' plain and ordinary meaning is sufficient. [Dkt. No. 65 at 14.] Construction of "footprint adjustment bar" would be helpful to a jury because it is not a commonly used or understood term of art. Moreover, the specification provides guidance for such a definition. Specifically, the intrinsic evidence provides that the footprint adjustment bar comprises a length defining member. (*See* the '893 Patent at col. 9:8-9.) In addition, the various embodiments in the specification make it clear that the footprint adjustment bar is what maintains the separation of the cantilever arms and that the length of separation can be varied based on the length of the footprint adjustment bar. (*Id.* at cols. 9:1-4, 8-9, 4:60-65.) Simply put, there is no construction that is supported by the specification, or otherwise, that does not embody a rigid, replacement bar to adjust the distance between the cantilever arms.

Kammok's proposed alternative construction also should not be adopted because it improperly adds features not claimed by the '893 Patent. Kammok construes the term to be "an adjustable connector bar...." [Dkt. No. 65 at 2.]

Adopting such a construction would add the feature that the bar itself is adjustable, which is not supported anywhere in the '893 Patent. (*See* the '893 Patent at cols. 9:1-4, 8-9, 4:60-65.) The intrinsic evidence makes it clear that "the footprint" or rather, "the distance" between the cantilever arms can be adjusted, not the bar itself. (*Id.* and fig. 5) Accordingly, Easthills' construction of the term "footprint adjustment bar" is consistent with the disclosures contained in the specification of the '893 Patent and should therefore be adopted.

### D. "inside surfaces" (Claims 15, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a side of a cantilever arm that faces a corresponding side of a second cantilever arm." | The term is indefinite. |

Kammok does not identify how the term "inside surfaces" is defined or used in the '893 Patent and argues the meaning of the term is clear. [Dkt. No. 65 at 18-19.] In addition, Kammok does not explain how a person of ordinary skill in the art would understand that "inside surfaces" refers to a specific side of a cantilever arm when no reference point is provided. [*Id.*] Although Kammok argues such a reference point exists, it does not provide support for this assertion. [*Id.*] Kammok's vague and ambiguous alternative construction, without supporting evidence contained in the '893 Patent's intrinsic evidence, underscores the indefiniteness of the term.

Nothing about the '893 Patent's claims and specification inform, with reasonable certainty, those skilled in the art about the scope of the term "inside surfaces." The claims provide no guidance as to the scope of the term, nor does the specification provide any express definition. Therefore, the term is indefinite as a matter of law and the claims in which it appears are therefore invalid.

### E. "backside" (Claims 1, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a side of a cantilever arm which is disposed on an opposite." | The term is indefinite. |

Kammok argues that the term "backside" is well defined within the '893 Patent claims through the directional reference point, "inside surfaces." [Dkt. No. 65 at 19-20.] Unlike the disputed term, "inside surfaces" discussed above, here Kammok appears to indicate what it believes to be the term's fixed reference point. [*Id.*] Unfortunately, engaging in such a construction analysis is predicated on an indefinite house of cards that has already failed based on Kammok's proposed construction of "inside surfaces". Simply put, if "inside surfaces" is this term's reference point, then the claim language does not support Kammok's construction of "backside".

More specifically, Kammok purports that the "backside" of a cantilever arm is opposite the "inside surfaces" of a cantilever arm. [*Id.*] This construction is not

supported by the claim language, the specification, or generally accepted English grammar. Typically, when the directional reference "backside" is used, "frontside" is used to describe the opposite side. Similarly with the directional reference "inside surface," "outside surface" is used to describe the opposite side. Kammok's construction of the term "backside" is its attempt to explain the conflicting language in claims 15 and 16, but the '893 Patent simply does not support this construction. Because the specification provides no information to one of ordinary skill in the art about the meaning and scope of the term "backside" it is indefinite and the claims in which it appears are therefore invalid.

### F. "backside of the first cantilever arm" (Claims 1, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | The term is indefinite. |

This phrase contains the disputed term "backside," for which the explanation of why it is indefinite has already been presented above. Claim 16, however, recites a first anchor for a suspension seat oriented on a <u>backside of the first cantilever arm</u>, and further recites a second anchor for the suspension seat oriented on a backside of the second cantilever arm. (*See* the '893 Patent at col. 14:18-23.) "Backside of the first cantilever arm" is indefinite because it is unclear how a single suspension system seat can be oriented on the backsides of two separate cantilever arms and neither the specification nor the prosecution history provide any insight. Further, this directional term, as used in claim 1, does not have a reference point and therefore is ambiguous. Thus, claims 1 and 16 are

indefinite and does not enable one of ordinary skill in the art to implement the claimed limitations. Further, as claim 1 is the sole independent claim the '893 Patent, claim 1 and all related dependent claims thereafter should be invalidated for indefiniteness.

### G. "detachably attaching" (Claim 2)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning  Alternatively, if the Court determines a construction is needed, "fastened in a manner that allows unfastening and re-fastening." | "Attaching the first cantilever arm to the first footprint adjustable bar in a way that can be detached."  "Attaching the second cantilever arm to the second footprint adjustable bar in a way that can be detached." |

The claim language of claim 2 explains that the cantilever arms are connected to the footprint adjustment bar via a coupling. (*See* the '893 Patent at col. 12:47–49.) It is this coupling that allows the cantilever arms to be attached and then detached from the footprint adjustment bar. (*Id.*) The specification makes it clear that the device is meant to be easily assembled and then broken down to facilitate transportation and storing. (*Id.* at col 6:29-32.) These claim descriptions and the disclosures contained in the '893 Patent's specification makes clear that the footprint adjustment bar is claimed to be easily detached from the cantilever arms. Accordingly, the language in the '893 Patent's intrinsic evidence supports Easthills' proposed construction for "detachably attaching".

### H. "compressible bushing" (Claims 3, 4)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a device used to reduce vibrational energy transfer between two parts." | "Material placed on the footprint adjustment bar or first cantilever arm for reducing friction between two surfaces sliding against each other." |

Kammok's proposed construction is not supported by the language of the '893 Patent or its intrinsic evidence. Kammok attempts to construe "compressible bushing" as a device on its own, but the specification only provides support for the "compressible bushing" to be "*part of* a separate device for coupling a footprint adjustment bar to a first cantilever arm." (*See* the '893 Patent at col. 7:3-4, emphasis added.) Further, Kammok's construction improperly adds features not otherwise claimed by the '893 Patent. [*See* Dkt. No. 65 at 3.]

Nowhere in the '893 Patent is "compressible bushing" indicated to be used to reduce vibrational energy transfer. Rather, the specification provides that the purpose of the compressible blushing is to help eliminate 'slop' (or space between two metal pieces) and eliminate "galling or other sources of friction and sticking between metal components." (*See* the '893 Patent at col. 9:47-50.) In view of the specification, one of ordinary skill in the art at the time of filing would not have understood "compressible bushing" to be a "device used to reduce vibrational energy transfer between two parts." Stated directly, the specification's disclosures do not, and cannot, support Kammok's proposed construction of "compressible bushing". Accordingly, the Court should adopt Easthills' proposed

construction of this claim term, which is fully supported by the language of the '893 Patent.

### I. "telescopically" (Claim 5)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "substantially concentric such that one part can move into and within another part." | "A footprint adjustment bar comprising a first section and a second section, wherein the first section is substantially concentric to the second section and configured to slide inside the second section." |

The plain and ordinary meaning of this term is helpful, but Easthills disagrees with Kammok that it is sufficient on its own. "Telescopically" is the adverb form of "telescopic" which is defined as "having sections that slide one inside another." *See Webster's New World College Dictionary,* 4th Edition (https://www.collinsdictionary.com/us/dictionary/english/telescopic). As Kammok concedes in its own opening brief, the specification provides that the first and second sections of the footprint adjustment bar are concentric and configured to move "telescopically" or rather, slide inside one another. [Dkt. No. 65 at 23.] Kammok's alternative construction, however, attempts to improperly broaden the definition delineated in the specification by adding that "one part can move … *within* another part." [*Id.*, emphasis added.] If the intrinsic evidence of a patent clearly indicates a claim term's definition, the patentee is deemed to have intended the claim term to be so limited. *Thorner v. Sony Computer Entertainment Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

In contrast, Easthills' proposed construction of this claim term is fully supported by the 893 Patent's specification. As set forth in its opening claim construction brief, "telescopically" should be construed as "a footprint adjustment bar comprising a first section and a second section, wherein the first section is substantially concentric to the second section and configured to slide inside the second section" because of the example for the term "telescopically" contained in the '893 Patent's specification. See the '893 Patent at col. 7:34-40. Accordingly, the Court should adopt Easthills' proposed construction of the claim term "telescopically".

### J. "connecting" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "attaching, joining, or fastening." | "The first and second cantilever arms are each coupled to the first footprint adjustment bar and are maintained in an operable angle and separation by connection to the first footprint adjustment bar." |

The specification provides that couplings are used to connect the cantilever arms with the footprint adjustment bar and that this connection maintains a separation between the cantilever arms. (*See* the'893 Patent at cols. 5:3-7 and 4:60-66.) In view of these described limitations, Kammok proposes several random common synonyms of the word "connecting" but cites no supporting evidence for such a construction. [Dkt. No. 65 at 24.] Accordingly, Easthills' construction of the term "connecting", is consistent with the language of the '893

Patent's specification, should be adopted.

## IV. CONCLUSION

For the foregoing reasons, Easthills respectfully requests the Court to find claim 1 invalid as indefinite as identified above, and/or adopt its proposed construction for the above analyzed claim terms recited in the '893 Patent.

DATED July 29, 2024.   Respectfully submitted,

**BAYRAMOGLU LAW OFFICES LLC**

*/s/ Shawn A. Mangano*
SHAWN A. MANGANO (NV Bar No. 6730)
shawnmangano@bayramoglu-legal.com
NIHAT DENIZ BAYRAMOGLU (NV Bar No. 14030)
deniz@bayramoglu-legal.com
EMILY M. HEIM (FL Bar No. 1015867)
emily@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road Ste 100
Henderson Nevada 89014
Telephone: 702.462.5973 | Fax: 702.553.3404

*Counsel for Defendant/Counterclaimant*
*EASTHILLS, INC*

## CERTIFICATE OF SERVICE

I hereby certified that a true correct copy of the foregoing **DEFENDANT EASTHILLS, INC'S RESPONSE TO OPENING CLAIM CONSTRUCTION BRIEF** was served upon Kammok by ECF on July 29, 2024.

*/s/Shawn A. Mangano*
Shawn A. Mangano
**BAYRAMOGLU LAW OFFICES LLC**

## Certification Re: Use of Artificial Intelligence (AI) for Drafting

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that (a) no portion of the filing was drafted by AI, or that (b) any language drafted by AI (even if later edited by a human being) was personally reviewed by the filer or another human being for accuracy using print reporters or traditional legal databases and attests that the legal citations are to actual existing cases or cited authority.

## Certification of Compliance

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that the brief contains 3776 words.

*/s/Shawn A. Mangano*
Shawn A. Mangano
**Bayramoglu Law Offices LLC**