UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02405-SKC-MEH

KAMMOK HOLDINGS, LLC,

    Plaintiff/Counter-Defendant,

v.

EASTHILLS, INC.; and DOES 1-10,

    Defendant/Counterclaimant.

**DEFENDANT EASTHILLS, INC.'S REPLY IN SUPPORT OF EASTHILLS' OPENING CLAIM CONSTRUCTION BRIEF**

Pursuant to the Court's Scheduling Order [Dkt. No. 17], Defendant Easthills, Inc. ("Easthills") submits its Reply in Support of Easthills' Opening Claim Construction Brief in support of its own proposed claim construction for the invention claimed in United States Patent No. 11,330,893 (the "'893 Patent").

## I. INTRODUCTION

Plaintiff, Kammok Holdings, LLC ("Kammok") maintains its belief that no construction beyond the terms' plain and ordinary meaning is necessary, but Easthills does not agree that all the terms are well understood in the context of the claim language and specification. A patent must notify the public of the specific invention over which the patentee claims exclusive rights. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1340 (Fed. Cir. 2003). "Thus, the focus of claim construction is ascertaining how a reasonable competitor would interpret the actual claim language, not what the inventor subjectively intended the language

1

to claim." *Well Master Corp. v. Luckyshot, Ltd. Liab. Co.*, Civil Action No. 19-cv-01617-CMA-STV, 2020 U.S. Dist. LEXIS 221267, *4 (D. Colo. Nov. 25, 2020).

Kammok contends the disputed claim terms should be given their plain and ordinary meaning in the context of the claim language and argues that Easthills' use of intrinsic evidence, such as the '893 Patent's specification, is unnecessary. However, "the specification is always highly relevant in the claim construction analysis" as it "is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1315 (Fed. Cir. 2005). (citation and quotations omitted). Here, giving all the disputed terms "plain and ordinary meaning" claim constructions either (a) would not resolve the disputes between the parties or (b) would not provide the jury with a clear understanding of the disputed claim scope. Thus, the Court should not simply adopt Kammok's proposed plain and ordinary meaning as claim constructions for these terms, and instead construe the disputed terms consistent with a meaning supported by both the intrinsic evidence presented.

## II.   DISPUTED CLAIMS TERMS

### A.   "cantilever arm" (Claims 1, 8, 9, 10, 11, 12, 13, 15, 16, 17)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a bar that projects upwards to support the suspension seat." | "The arm is *cantilevered* by being connected only at footprint adjustment bar." |

2

Kammok argues that '893 Patent claims do not require the cantilever arms to be connected only at a footprint adjustment bar and that there is no limiting language requiring a direct connection between the footprint adjustment bar and the cantilever arms nor any language limiting the number of connections the cantilever arms can have with other sections of the device. Yet, the specification states that the footprint bar is attached to the first and second cantilever arms and this applies to various embodiments. *See* the '893 Patent at col. 4:60-67. Further, while Kammok states that there is no limiting language in the specification of '893 Patent, there is also no language indicating that the cantilever arms are connected to any other component other than footprint adjustment bar. Throughout the specification, it is stated repeatedly that the cantilever arms are connected to footprint adjustment bar and that such connection must happen for the device to work properly. *Id.* at cols. 5:1-6, 8:28-33, 9:1-7. Therefore, the language in the '893 Patent properly defines that the cantilever arms are only connected to the footprint adjustment bar. If cantilever arms are connected to other components, but not the footprint adjustment bar then the device would not work because adjusting the footprint adjustment bar would not change the distance between the cantilever arms. Therefore, the proposed claim construction by Easthills based on the specification is proper and should be adopted by the Court.

### B. "cradle" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a guide." | "U-shaped guide disposed at the distal ends of cantilever arm." |

Kammok indicates that its biggest issue with Easthills' proposed construction is the added "u-shaped" limitation. Kammok insists that this limitation is fabricated by Easthills, but Figures 2 and 3 of the '893 Patent clearly show that the cradle is U-shaped.

### C. "footprint adjustment bar" (Claims 1, 2, 4, 5, 6, 7, 17, 19)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "an adjustable connector bar which allows a distance between cantilever arms to be increased or decreased." | "Bar that comprises a length defining bar member of rigid tubing, and having a first and second connecting regions that are respectively connected to the first and second cantilever bar at the respective anchor points." |

Kammok states that Easthills' proposed construction of "footprint adjustment bar" is incompatible with the plain language of the '893 Patent. However, Kammok does not explain in any sort of detail why "defining bar member of rigid tubing" and "connect[ing] to the first and second cantilever bar at the respective anchor points," are both incompatible with the plain language of the '893 Patent. The evidence cited by Easthills in support of its construction

are found within in the '893 Patent's specification and clearly describes the footprint adjustment bar.

As a matter of fact, the drawings in the '893 Patent further support Easthills' construction. For instance, Figures 1 showing 115a (footprint adjustment bar as defined in the '893 Patent at col. 4:5-6) and the first region being connected to 105a (first cantilever arm defined in the '893 Patent at col. 3:35-38) and the second region being connected to 105b (second cantilever arm defined in the '893 Patent at col. 3:35-38) support the construction of "connect[ing] to the first and second cantilever bar at the respective anchor points." Figure 2 also shows the footprint adjustment bar being connected to a first and a second cantilever arms as shown in annotated Figure 2 below. Figure 3 further shows how the footprint adjustment bar is connected to first and second cantilever arms through compression bushing 305 (as defined in the '893 Patent col. 6:50-65). Figure 4 shows the footprint adjustment bar 405 (as also defined in the '893 patent at col. 7:13-17) being connected to first cantilever arm 410a and second cantilever arm 415b through transition hinges 420a-b. Figure 5 shows the footprint adjustment bar 500 having a lock 510 coupling footprint adjustment bar to other components of adjustable footprint suspension seat frame. *See* Figure 5 and col. 9:31-39. The common scheme of these figures is that the footprint adjustment bar in all these embodiments is connected to cantilever arm through some type of mechanism which is the anchor point to make the connection.

Further, the '893 Patent clearly defines that footprint adjustment bar 115a has substantially rigid material. *See* the '893 Patent at col. 4:60-67.

For these reasons and those offered in Easthills' Opening Claim Construction Brief and its Response, Easthills' claim construction of footprint adjustment bar should be adopted by the Court.



### D.    "inside surfaces" (Claims 15, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a side of a cantilever arm that faces a corresponding side of a second cantilever arm." | The term is indefinite. |

Kammok states that Easthills' indefinite argument of the term "inside surfaces" is willful ignorance and a person of ordinary skill in the art would be

able identify the "inside surfaces" of a cantilever arm, where the inside surfaces are described as the sides of an arms that face each other when disposed opposite one another. [Dkt. No. 68, pg. 6.] Notably, Kammok fails to show anywhere in the specification of the '893 Patent defining "inside surfaces". Instead Kammok tries to remedy this failure by providing an attorney's argument. This is not sufficient to save a term from being found indefinite. The fact remains as stated by Easthills in its Opening Claim Construction Brief and Response that the '893 Patent does not define "inside surfaces" and due to this failure of definition the term "inside surfaces" should be declared indefinite.

### E.     "backside" (Claims 1, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a side of a cantilever arm which is disposed on an opposite." | The term is indefinite. |

Kammok states that because the term "inside surfaces" is clearly defined, the "backside" of the cantilever arm is just as clearly defined. However, what is notably missing from this argument is any reference to the '893 Patent for any definition or explanation of what constitutes a "backside" of a cantilever arm. That is because there is no definition or explanation for the term "backside" in the '893 Patent. This is why the term "backside" is indefinite. Kammok tries to remedy this failure by simply stating that "inside surfaces" is clearly defined, and

thus "backside" is also defined. However, as stated above, the term "inside surfaces" is not defined in the '893 Patent and therefore it is indefinite as further presented in Easthills' Opening Claim Construction Brief and Response.

### F.  "backside of the first cantilever arm" (Claims 1, 16)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning | The term is indefinite. |

This phrase contains the disputed term "backside," for which the explanation of why it is indefinite has already been presented above. Further, as claim 1 is the sole independent claim the '893 Patent, claim 1 and all related dependent claims thereafter should be invalidated for indefiniteness.

### G.  "detachably attaching" (Claim 2)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "fastened in a manner that allows unfastening and re-fastening." | "Attaching the first cantilever arm to the first footprint adjustable bar in a way that can be detached."<br><br>"Attaching the second cantilever arm to the second footprint adjustable bar in a way that can be detached." |

Kammok's alternative construction creates confusion by proposing several definitions for the same term. Whereas Easthills' proposed construction is very clear. The specification provides an example, as further illustrated by Figure 1, where the first footprint adjustment bar 115a detachably attaches to first and second cantilever arms 105a-b at points near the connection regions of first and second cantilever arms 105a-b. *See* the '893 Patent at col. 4:67-5:3. The language

8

in the specification explains how the cantilever arms can be disconnected from the footprint adjustment bars in order to breakdown and store the apparatus. Kammok provided no evidence or reasoning supporting its proposition of multiple definitions for the same term.

### H.     "compressible bushing" (Claims 3, 4)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "a device used to reduce vibrational energy transfer between two parts." | "Material placed on the footprint adjustment bar or first cantilever arm for reducing friction between two surfaces sliding against each other." |

Kammok provides no explanation why Easthills' construction is not proper other than stating that Easthills' construction is limiting. Since Kammok provided no explanation why Easthills' construction should not be followed, the Court should adopt Easthills' construction.

### I.     "telescopically" (Claim 5)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br>Alternatively, if the Court determines a construction is needed, "substantially concentric such that one part can move into and within another part." | "A footprint adjustment bar comprising a first section and a second section, wherein the first section is substantially concentric to the second section and configured to slide inside the second section." |

Kammok argues that Easthills construction of "telescopically" conflates the adverb of a sentence with the subject of the sentence and thus, Easthills'

9

definition creates unnecessary confusion, and the Court should simply give the term "telescopically" it's plain and ordinary meaning. However, Easthills explained in its Opening Claim Construction Brief and its Response why the term should be construed based on the '893 Patent disclosure. Kammok provides no further explanation why Easthills' proposed construction should not be adopted.

### J. "connecting" (Claim 1)

| Kammok's Proposed Construction | Easthills' Proposed Construction |
|---|---|
| Plain and Ordinary Meaning<br><br>Alternatively, if the Court determines a construction is needed, "attaching, joining, or fastening." | "The first and second cantilever arms are each coupled to the first footprint adjustment bar and are maintained in an operable angle and separation by connection to the first footprint adjustment bar." |

Kammok asks this Court to give the term "connecting" its plain and ordinary meaning without providing any substantive reason why it should do so. Meanwhile, Easthills cites ample sections of the '893 Patent describing the term "connecting" and how it is used in the context of the intrinsic evidence of the '893 Patent. Kammok has provided no evidence or argument to refute the disclosure of the '893 Patent besides stating to ignore what was disclosed and defined in the '893 Patent.

### III. CONCLUSION

For the foregoing reasons, Easthills respectfully requests the Court to find claim 1 invalid as indefinite as identified above, and/or adopt its proposed construction for the above analyzed claim terms recited in the '893 Patent.

DATED August 5, 2024             Respectfully submitted,

**BAYRAMOGLU LAW OFFICES LLC**

*/s/ Shawn A. Mangano*
SHAWN A. MANGANO (NV Bar No. 6730)
shawnmangano@bayramoglu-legal.com
NIHAT DENIZ BAYRAMOGLU (NV Bar No. 14030)
deniz@bayramoglu-legal.com
EMILY M. HEIM (FL Bar No. 1015867)
emily@bayramoglu-legal.com
**BAYRAMOGLU LAW OFFICES LLC**
1540 West Warm Springs Road Ste 100
Henderson Nevada 89014
Telephone:  702.462.5973 | Fax:   702.553.3404

*Counsel for Defendant/Counterclaimant
EASTHILLS, INC*

## CERTIFICATE OF SERVICE

I hereby certified that a true correct copy of the foregoing **DEFENDANT EASTHILLS, INC'S REPLY IN SUPPORT OF EASTHILLS' OPENING CLAIM CONSTRUCTION BRIEF** was served upon Kammok by ECF on August 5, 2024.

*/s/Shawn A. Mangano*
Shawn A. Mangano
**BAYRAMOGLU LAW OFFICES LLC**

## Certification Re: Use of Artificial Intelligence (AI) for Drafting

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that (a) no portion of the filing was drafted by AI, or that (b) any language drafted by AI (even if later edited by a human being) was personally reviewed by the filer or another human being for accuracy using print reporters or traditional legal databases and attests that the legal citations are to actual existing cases or cited authority.

## Certification of Compliance

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that the brief contains 2420 words.

*/s/Shawn A. Mangano*
Shawn A. Mangano
**Bayramoglu Law Offices LLC**