UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02405-SKC-MEH

KAMMOK HOLDINGS, LLC,

    Plaintiff/Counter-Defendant,

v.

EASTHILLS, INC.; and DOES 1-10,

    Defendant/Counterclaimant.

## DEFENDANT EASTHILLS, INC.'S
## MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

    Defendant Easthills, Inc. ("Easthills"), by and through Bayramoglu Law Offices LLC, moves pursuant to Federal Rule of Civil Procedure 11 ("Rule 11") for sanctions against Plaintiff Kammok Holdings, LLC ("Kammok"), Kammok's counsel Travis Banta, Reid J. Allred, Douglas N. Marsh, Erik A. Olson, Dominic W. Shaw and, Kammok's counsels' law firms Loyal Intellectual Property Law, Cambridge Law, and Marshall Olson & Hull, P.C. (Kammok's counsel and law firm are collectively referred to herein as "Kammok's Counsel" and collectively referred to herein with Kammok as the "Kammok Parties") (the "Motion"). Easthills asserts that sanctions are warranted against the Kammok Parties for claiming infringement of U.S. Patent No. 11,330,893 (the "'893 Patent") without performing a reasonable pre-filing investigation.

    Easthills' Motion is made and based upon the arguments submitted herein, the Declaration of Shawn Mangano (the "Mangano Decl."), the pleadings and papers on file, any oral argument presented in this matter, and any other documents, materials or evidence considered by the Court.

## I. INTRODUCTION

Easthills recently filed a supplemental brief authorized by the Court in support of its Motion for Partial Summary Judgment [Dkt. No. 56] attacking the viability of Kammok's trade dress infringement claim and highlighting the company's failure to conduct a reasonable pre-filing investigation as required under Federal Rule of Civil Procedure 11 ("Rule 11"). [Dkt. No. 73.] Kammok's response to this filing took issue with Easthills' assertions that it inadequately conducted a pre-filing investigation for its claims and blindly proclaimed that "Easthills seeks no relief for Kammok's alleged failure to conduct a sufficient pre-filing investigation, and thus there is no relief for the Court to provide." [*Id.* at 5.] Through this Motion, Easthills not only seeks such relief, but it also provides the Court with the means to grant it.

Unfortunately, this is Easthills' *second* request for sanctions against Kammok in this action. [Dkt. No. 19.] Easthills first motion for Rule 11 sanctions in this action was based on Kammok having filed its original Complaint, which included a claim for copyright infringement, without having secured a federal copyright registration, or otherwise complying with the necessary pre-filing requirements necessary to properly assert its copyright infringement claim against Easthills. [*Id.*; Dkt. No. 1 at 6-7.] This patently defective claim was asserted for the sole purpose of attempting to delay reinstatement of Easthills' crowdfunding campaign with Kickstarter, PBC ("Kickstarter") for its directly competing portable hammock, the Anymaka, by improperly asserting continuing takedown rights under the Digital Millennium Copyright Act (the "DMCA"). [Dkt. No. 1 at 6-7.] Kammok only agreed to withdraw its improper copyright infringement claim after Easthills filed a Motion for Sanctions under Rule 11, which resulted in a stipulation between the parties that Kammok had violated its pre-filing obligations for this claim. [Dkt. No. 19.]

This *second* motion brought under Rule 11 is based on Kammok's failure to perform a reasonable pre-filing investigation for its patent infringement claim. Kammok apparently had more of a desire to hastily file a complaint in federal court that could be relied upon to delay reinstatement of Easthills' crowdfunding campaign under the guise of compliance with the DMCA, which included its pending patent infringement claim, than it understood, appreciated, or otherwise wanted to comply with the reasonable pre-filing investigation requirements under Rule 11.

Easthills has maintained from the outset of this litigation that Kammok initiated this action, without having conducted a reasonable factual investigation of the viability of its various infringement claims, for the sole purpose of attempting to improperly extend a takedown request initiated under the DMCA against Easthills' Kickstarter crowdfunding campaign for its Anymaka portable hammock stand. (Mangano Decl. ¶ 4.) Even before Kammok initiated this action, Easthills advised Kammok and its counsel, that Kammock lacked a legal and factual basis to maintain its copyright infringement claim and that its trade dress and patent infringement claims lacked viability because Easthills' Anymaka did not infringe Kammok's Swiftlet portable hammock stand (the "Swiftlet"). Nevertheless, Kammok initiated this lawsuit with a complaint alleging (1) copyright infringement, (2) patent infringement, and (3) trade dress infringement[1]. [Dkt. No. 1].

On April 2, 2024, as part of Easthills' defense in this action, it filed a Motion for Partial Summary Judgment as to Kammok's trade dress claim [Dkt. No. 56], which laid out the readily ascertainable threshold fact that the Anymaka does not

---

[1] Only Kammok's patent and trade dress infringement claims currently remain pending. Kammok withdrew its copyright infringement claim in response to Easthills' Motion for Rule 11 Sanctions [Dkt. No. 19] for failing to have secured a federal registration or otherwise having complied with the pre-filing requirements to support such a claim.

3

possess any of the claimed elements of Kammok's trade dress. Kammok, in response, doubled down on its assertion that the Anymaka infringes on every element of its trade dress in its Opposition [Dkt. No. 59]. However, on April 26, 2024, Kammok served its Third Set of Written Discovery Requests requesting a physical specimen of the Anymaka, to which Easthills' timely responded. Then, a month after the Motion for Summary Judgment had been fully briefed, Kammok submitted supplemental written discovery responses ("Supplemental Responses") that admit "the [Anymaka] physical specimen produced by Easthills does not include any textured anchor points." (Mangano Decl. ¶ 9, Ex. C at 6.) Through its Supplemental Responses Kammok has not only admitted that the Anymaka does not practice all the elements as asserted in Kammok's trade dress infringement claim, but the company has also admitted that it filed and has maintained its patent infringement claim for almost eight months without physically inspecting the accused product. (*Id.*)

The fact that Kammok has withdrawn some of its infringement contentions only after obtaining the physical specimen from Easthills in May 2024, makes it clear that the Kammok Parties did not perform a reasonable pre-filing investigation as required by Rule 11, before asserting its patent infringement claim in this action. While this conduct is certainly improper, the Kammok Parties' actions are even more contemptable because Kammok's Counsel was repeatedly advised prior to filing the patent infringement claim that Kammok's claim was unviable and to perform an infringement analysis comparing the claims of the '893 Patent to the Anymaka. (Mangano Decl. ¶ 7, Ex. B at 2) For instance, on July 20, 2023, the undersigned counsel responded to a letter (the "July 13, 2023 Letter) from Travis Banta addressing Kammok's patent infringement accusation.

> In your letter you have threatened Easthills with a Federal [patent infringement] lawsuit. I urge you to go back and <u>check Easthills' product again against '893 patent claim 1.</u> Asserting infringement is a serious matter and requires Plaintiff and Plaintiff's attorneys to do a detailed infringement analysis. To assert an infringement you have to show that all claim limitations or equivalents are incorporated by the accused product. Initiating a lawsuit at Federal District Court without proper analysis makes the case an exceptional case.

(*Id.* ¶ 7, Ex. B at 2, emphasis added.)

Simply put, Kammok's failure to obtain, or even request a sample of the Anymaka, before initiating this lawsuit, clearly demonstrates the company filed suit against Easthills for the sole, anti-competitive, purpose of seeking to delay, hinder, and impede the release of a superior product by a direct competitor. To further this anti-competitive motive, Kammok slapped together its trade dress and patent infringement claims, just as it did with its admittedly unviable copyright infringement claim [Dkt. No. 40], solely to add unjustified credibility to its improper DMCA takedown notice submitted to Kickstarter. [Dkt. No. 41 ¶ 37 at 16.] These actions were done, as admitted by Kammok's own counsel, to bring the company to the negotiating table. [*Id.*]  As a result of the Kammok Parties' improper filing of a patent infringement claim without performing the required pre-suit investigation, Easthills has spent thousands in attorney's fees defending against a frivolous patent infringement claim.  Accordingly, Easthills seeks an Order sanctioning the Kammok Parties' conduct through an award of attorney's fees and costs incurred, together with a requirement that Kammok withdraw its patent infringement claim asserted in this action.

## II.     APPLICABLE LEGAL STANDARDS

Easthills seeks sanctions against the Kammok Parties under Rule 11(b)(1)-(3). Pursuant to Rule 11(b), an attorney certifies by submitting and filing a pleading that to the best of the attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

Fed. R. Civ. P. 11(b)(1)-(3). Under Rule 11(c) if "after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c).

The Court may award the prevailing party its reasonable attorney's fees and expenses resulting from the violation including the preparation of the motion for sanctions. *See* Fed. R. Civ. P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."); *accord* Fed. R. Civ. P. 11(c)(4) (sanctions can include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation"); s*ee also Islamic Shura Council of S. Cal.*, 757 F.3d 870, 873 (9th Cir. 2014) ("Fee sanctions compensate a party for the

costs of enforcing the rule when the party taking the challenged position has refused to withdraw or correct it.").

Rule 11 requires attorneys to "make reasonable inquiry into both the facts and the law relevant to their pleadings and motions prior to signature." *Colo. Chiropractic Council v. Porter Mem. Hosp.*, 650 F. Supp. 231, 237 (D. Colo. 1986); *see also* Fed. R. Civ. P. 11 (b)(2)-(3). If no such inquiry is made, or if, objectively, there is no reasonable basis for making those claims, sanctions are appropriate. *Colo. Chiropractic Council*, 650 F. Supp. at 237. In the patent infringement context, the Federal Circuit interprets Rule 11 "to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002); *see also QPharma v. Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004); *Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997); S. *Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996).

Once a litigant moves for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim. *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007). To be successful, the party seeking sanctions for an inadequate prefiling investigation is required to show that the opponent failed to do something that it reasonably could have done before filing. *Hoffman-LaRoche Inc. v. Invamed, Inc.*, 213 F.3d 1359, 1364 (Fed. Cir. 2000).

Rule 11 sanctions do not require a finding of subjective bad faith on the part of the offending counsel. *Greeley Pub. Co. v. Hergert,* 233 F.R.D. 607, 610–612 (D. Colo. 2006) (see *Scott v. Boeing Co.,* 204 F.R.D. 698, 700 (D.Kan.2002) (noting that an attorney's subjective good faith belief in the merits of an argument will not suffice to satisfy the standard of objective reasonableness)). Kammok's Counsel has a "personal, nondelegable responsibility" to comply with the requirements of Rule 11

before signing a complaint." *See O'Rourke v. Dominion Voting Sys.*, 552 F.Supp.3d 1168, 1186 (D. Colo. 2021) (citing *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 127 (1989)).

In this case, the Kammok Parties clearly ignored Rule 11 and its fundamental requirements by filing its patent infringement claim against Easthills without having conducted a pre-filing investigation – not unlike having filed its copyright infringement claim without having obtained a federal registration before doing so. Simply put, the Kammok Parties did not interpret the claims of the '893 Patent and compare the accused device, the Anymaka, with those claims prior to filing suit. Rather, they filed the underlying action to add unjustified credibility to their unquestionably defective copyright infringement claim to further delay the reinstatement of Easthills' crowdfunding campaign with Kickstarter. Accordingly, and as argued below, the Court should sanction the Kammok Parties for violating Rule 11.

### III. ARGUMENT

#### A. Rule 11 Requires Parties to Preform a Reasonable Pre-Filing Investigation Before Asserting a Patent Infringement Claim.

The policy underlying Rule 11's requirement for parties to engage in a reasonable pre-filing investigation – particularly in patent infringement cases – is rooted in common sense. Defending against baseless infringement claims subjects the accused infringer to undue costs. *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000). Performing a reasonable, pre-filing assessment of the basis of each claim asserted to be infringed is, therefore, extremely important. *Id.*

In bringing a patent infringement claim, the patent holder, must, if challenged, be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving

infringement. *Id.* Failing to do so should result Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances. *Id.*

As argued below, the Kammok Parties have clearly and unquestionably violated the requirements of Rule 11 by filing Kammok's patent infringement claim without having first conducted a reasonable prefiling investigation. Rather, Kammok hastily included its patent infringement claim solely to add unjustified credibility to its improper DMCA takedown notice submitted to Kickstarter. [Dkt. No. 41 at 16 ¶ 37.] In doing so, the Kammok Parties have filed Kammok's patent infringement claim for an improper purpose, without a legal basis, and without evidentiary support. *See* Fed. R. Civ. P. 11(b)(1)-(3). Accordingly, the Kammok Parties should be ordered to withdraw Kammok's patent infringement claim and pay Easthills' attorney's fees and costs associated with this Motion.

### B. The Kammok Parties Did Not Conduct a Reasonable Pre-Filing Investigation Before Asserting Infringement of the '893 Patent.

Courts have found pre-suit investigations unreasonable when there were: (l) no attempt to obtain a sample of the infringing device and compare it to the patent claims; (2) no independent infringement analysis by counsel; and/or (3) no reverse engineering or attempt to acquire technical specifications from the alleged infringer. *Judin*, 110 F.3d at 784-85; *View Eng'g*, 208 F.3d at 985. Considering Kammok has apparently taken none of these required steps, its pre-filing investigation was basically nonexistent and certainly not reasonable.

At no time prior to initiating this lawsuit did the Kammok Parties request from Easthills a sample of the Anymaka, or otherwise secure such a sample, so that "its actual design and functioning could be compared with the claims of the ['893] [P]atent." *Judin*, 110 F.3d at 784. The Kammok Parties also did not request from Easthills any technical specifications of the Anymaka until formal discovery

9

commenced in this action. (Mangano Decl. ¶ 8.) The Federal Circuit has suggested that the patentee should be able to show some attempt to analyze the technology; and if that attempt fails, the patentee should show that it made some effort to acquire samples, inspection, or technical specifications from the accused infringer. *Judin*, 110 F.3d at 784. Here, Kammok made no attempt to acquire a physical specimen of the Anymaka, request any technical specifications for the Anymaka, or even attempt to inspect the Anymaka, until after it had already filed a claim for patent infringement. (Mangano Decl. ¶ 8.)

Once it finally examined the accused device, which Kammok admits that it had not previously done, the company was forced to withdraw a major portion of the factual basis underlying its trade dress infringement claim. (*Id.* ¶ 9.) This admission, however, is equally applicable to the lack of Kammok's pre-filing investigation for its patent infringement claim. Simply put, Kammok did not examine and investigate the accused device until almost eight months after asserting infringement of the '893 Patent by the Anymaka by filing suit against Easthills. [Dkt. No. 1.] However, an inquiry after a suit is filed will not cure a violation of Rule 11 because "Rule 11 is not about after-the-fact investigation." *Judin*, 110 F. 3d at 785; see also S. *Bravo Systems v. Containment Technologies Corp.*, 96 F. 3d 1372 (Fed. Cir.1996); *Ultra-Temp Corp. v. Advanced Vacuum Systems, Inc.*, 189 F.R.D. 17 (D.C. Mass 1999); *Refac International, Ltd. v. Hitachi, Ltd.*, 141 F.R.D. 81 (C. D. Cal. 1991).

Kammok's Counsel also did not conduct a meaningful independent infringement analysis of the Anymaka against the claims of the '893 Patent, but apparently, and unreasonably, simply relied either relied on inadequate marketing images or on their client's infringement representations. (Mangano Decl. ¶¶ 6-7, Exs. A, B.) Kammok's Counsel, however, "had a duty to analyze the patent claims and determine whether [Kammok's] assertions were plausible." *Judin*, 110 F. 3d at 783.

"The attorney had the obligation to satisfy himself that a proper construction of the claims, in light of the facts brought to him by the client, permits argument that each element of the claims appears in the accused devices." *Id.*; *see also View Eng'g*, 208 F.3d at 986. (In upholding the award of sanctions against Robotic's lawyer, the Federal Circuit emphasized that no product analysis had occurred, and the only basis for filing the counterclaims was the belief of the client based on advertising material and publicly available information).

Had an independent analysis been completed, Kammok's Counsel would have realized several claim limitations recited in the '893 Patent simply are not practiced by the Anymaka. For example, claim 1 of the '893 Patent includes the limitation of a "footprint adjustment bar" that is used to adjust the dimensions between the "feet". In the Claim Chart, Kammok's Counsel has indicated the the "footprint adjustment bar" is the same as the Anymaka's "pedestal". However, Anymaka's pedestal is structurally different than the "footprint adjustment bar" (as shown in the images below) and does not provide adjustment in the same way or provide the same functionality.



Fig. 1 of the '893 Patent                     Anymaka hammock stand on anymaka.com

11

DEFENDANT'S MOTION FOR SANCTIONS                CASE NO. 1: 23-cv-02405-SKC-MEH
PURSUANT TO FED. R. CIV. P. 11

Since an "attorney's allegation of infringement is therefore subject to the requirement of Rule 11(b)(3) that all allegations and factual contentions have evidentiary support", prior to filing the claim of patent infringement, Kammok's Counsel should have analyzed the Anymaka, and "come to his or her own conclusion that the device infringes a valid claim of the asserted patent." *See Antonious v. Spalding & Evenflo Cos.*, Inc., 275 F.3d 1066, 1074 (Fed. Cir. 2002).

The Kammok Parties are likely to argue the claim chart included with the July 13, 2023 Letter (the "Claim Chart") is evidence that Kammok's Counsel performed a reasonable pre-filing investigation. (Mangano Decl. ¶ 6, Ex. A.) Reliance on prepared claim charts as evidence of having performed a reasonable, pre-filing investigation subjects the relied upon claim chart to scrutiny under Rule 11. *Eon-Net LP v. Flagstar Bancorp*, 249 F. App'x 189, 197 (Fed. Cir. 2007), *aff'd sub nom. Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011) (Rejecting Eon-Net's reasonable argument, the District Court noted that Eon-Net's claim chart was "crafted for versatility"… and "essentially worthless.")

Here, the Claim Chart Kammok's Counsel provided in the June 13, 2023 Letter is vague and absolutely useless. The Claim Chart recites claim 1 of the '893 Patent in different colored text accompanied with marketing images of the Anymaka with color-coordinated arrows roughly pointing to different areas of the hammock stand. (Mangano Decl. ¶ 6.) These images provide absolutely no clarity as to what claim element any physical aspect of the Anymaka is asserted to be practicing. (*Id.*) Moreover, these images do not provide any meaningful clarity as to the Anymaka's technical design. (*Id.*)

While claim charts can certainly provide evidence of a reasonable pre-filing investigation, such documents should be reasonable and detailed. *Network Caching Tech. LLC v. Novell, Inc.,* No. C-01-2079-VRW, 2002 WL 32126128, at *5-6 (N.D. Cal.

Aug. 13, 2002). Conclusory claim charts, such as the Claim Chart here, "that only recite the claim language of the patent and do not contain evidentiary support for the conclusion of infringement will not be sufficient to overcome Rule 11. *See Network Caching Tech. LLC*, 2002 WL 32126128, at *5-6.

The claim construction in the Claim Chart simply does not pass the "red face test", and that any reasonable pre-filing investigation would have revealed non-infringement. See *Triune Star, Inc. v. Walt Disney Co.*, No. 07-1256, 2008 WL 5068943, at *8-9 (C.D. Ill. Nov. 25, 2008) (awarding sanctions against Triune, as well as its attorneys, who were also the prosecuting attorneys for the patent-in-suit based on the unreasonableness of Triune's claim construction). The Kammok Parties failed to conduct a reasonable investigation – and specifically by concluding that the "footprint adjustment bar" recited in the '893 Patent is practiced by the Anymaka. In response to the July 13, 2023 Letter, Easthills' counsel specifically pointed out this fatal flaw in Kammok's Claim Chart.

> The accused product does not have a first footprint adjustment bar as documented in Claim 1 of '893 Patent. The first footprint adjustment bar of claim 1 is actually used to adjust the dimensions between the feet, while the [accused] product doesn't have the parts that achieve the corresponding function. In the claim chart you shared with Easthills, you marked Easthills' product's pedestal as being the same as to claim 1's limitation of "footprint adjustment bar." The pedestal in the accused product does not provide adjustment. The footprint of the product is fixed rather than adjustable.

(Mangano Decl. ¶ 7, Ex. B at 2.)

Despite this knowledge, the Kammok Parties proceeded to assert that Easthills' Anymaka infringed the '893 Patent by filing the Complaint in this action. [Dkt. No. 1.] Furthermore, the Kammok Parties took such action for the improper purpose of using its patent infringement complaint to add unjustified credibility to its claims to persuade Kickstarter to further delay reinstatement of Easthills'

crowdfunding campaign under 17 U.S.C. § 512(g)(2)(c) of the DMCA. These are hallmark examples of using statutory remedies for a clearly improper and anticompetitive purpose. Accordingly, the Court should conclude that the Kammok Parties have asserted the company's claim that Easthills infringes the '893 Patent for an improper purpose and without having performed a reasonable pre-filing investigation as required under Rule 11.

## IV. CONCLUSION

For the foregoing reasons, the Court grant Easthills' Motion, dismiss Kammok's claim that Easthills infringes the '893 Patent, award Easthills its reasonable attorneys' fees and costs incurred in connection with its defense of Kammok's patent infringement claim, and grant such other relief as is just and proper.

DATED: August 28, 2024              Respectfully submitted,

                                    */s/ Shawn A. Mangano*
                                    SHAWN A. MANGANO, ESQ.
                                    (Nevada Bar No. 6730)
                                    shawnmangano@bayramoglu-legal.com
                                    **BAYRAMOGLU LAW OFFICES LLC**
                                    1540 West Warm Springs Road Suite 100
                                    Henderson Nevada 89014
                                    Telephone:  702.462.5973
                                    Facsimile:   702.553.3404

# **CERTIFICATE OF SERVICE**

I, hereby certify that on August 28, 2024, I served the foregoing Kammok Parties by electronic mail and U.S. mail pursuant to the requirements of Rule 11:

Reid J. Allred
Douglas N. Marsh
Cambridge Law, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
reid@cambridgelawcolorado.com
doug@cambridgelawcolorado.com

Erik A. Olson
Dominic W. Shaw
Marshall Olson & Hull, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
eolson@mohtrial.com
dshaw@mohtrial.com

Travis Banta
Loyal Intellectual Property Law
2350 E. Arbor Lane, P.O. Box 17395
Holiday, Utah 84117
travis@loyaliplaw.com

By: */s/ Shawn A. Mangano*
Shawn A. Mangano
Bayramoglu Law Offices LLC

## CERTIFICATE OF SERVICE

I, hereby certify that on September 20, 2024, I served the foregoing document on Kammok's counsel through the Court's ECF system:

Reid J. Allred
Douglas N. Marsh
Cambridge Law, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
reid@cambridgelawcolorado.com
doug@cambridgelawcolorado.com

Erik A. Olson
Anikka Hoidal
Marshall Olson & Hull, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
eolson@mohtrial.com
ahoidal@mohtrial.com

By: */s/ Shawn A. Mangano*
Shawn A. Mangano
Bayramoglu Law Offices LLC

## Certification Re: Use of Artificial Intelligence (AI) for Drafting

The undersigned, counsel of record for Defendant Easthills, Inc., certifies that (a) no portion of the filing was drafted by AI, or that (b) any language drafted by AI (even if later edited by a human being) was personally reviewed by the filer or another human being for accuracy using print reporters or traditional legal databases and attests that the legal citations are to actual existing cases or cited authority.

By: */s/ Shawn A. Mangano*
Shawn A. Mangano