IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-02405-SKC-MEH

KAMMOK HOLDINGS, LLC,

    Plaintiff,

v.

EASTHILLS, INC., and DOES 1–10.

    Defendants

## OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

Plaintiff Kammok Holdings, LLC ("Kammok") hereby opposes the September 20, 2024 motion for sanctions (ECF No. 86) (the "Motion") filed by Defendant Easthills, Inc. ("Easthills").

## INTRODUCTION

Before Kammok filed suit, Kammok's counsel, who drafted and prosecuted the patent at issue, analyzed advertising materials for Easthills's Anymaka product and determined that the Anymaka infringed upon Kammok's patent. Both Kammok and its litigation counsel justifiably relied on this investigation and counsel's findings when they initiated the action. Kammok's claims to preserve its patent rights are thus presented for proper purposes and with ample support in both fact and law.

The Motion seeks to impose Rule 11 sanctions on Kammok and its counsel, ostensibly because of a lack of support for Kammok's patent infringement claim. Yet the Motion all but ignores the patent claim, and instead dwells entirely on alleged

deficiencies in Kammok's copyright infringement and trade dress infringement claims. Because Easthills fails to analyze the patent infringement claim in any detail, it is frankly unclear what Easthills claims to have been a Rule 11 violation. In any event, under relevant Rule 11 standards, Kammok did not file its patent infringement claim for an improper purpose. Its patent infringement is warranted under existing law, and the factual assertions supporting its patent infringement claim have a basis in fact that was adequately investigated prior to filing.

In these circumstances, and in light of Easthills's numerous misrepresentations and its delay in filing the Motion, the Court should deny the Motion and award Kammok its attorney fees incurred in responding to the Motion.

## ARGUMENT

### I. THE MOTION FAILS TO INDICATE ANY RULE 11 VIOLATION.

The Court should deny the Motion because Easthills has failed to demonstrate any sanctionable conduct. Rule 11 requires that "[a] motion for sanctions . . . must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Under Rule 11(b), a party's signing, filing, or otherwise advocating a position constitutes certification that:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have

evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b).[1]

Sanctions under Rule 11 are discretionary. *See Roth v. Green*, 466 F.3d 1179, 1187 (10th Cir. 2006) ("We review for abuse of discretion the district court's decision to impose Rule 11 sanctions."). Still, a district court's Rule 11 sanctions must have some evidentiary basis. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."). A Rule 11 violation occurs only "where it is patently clear that a claim has absolutely no chance of success under the existing precedents." *Well Master Corp. v. Flowco Prod. Sols., LLC*, No. 21-cv-02145-CMA-KAS, 2024 WL 1658131, at *4 (D. Colo. Apr. 17, 2024) (quoting *Harrison v. Luse*, 760 F. Supp. 1394, 1399 (D. Colo. 1991)); *see also Greeley Pub. Co. v. Hergert*, 233 F.R.D. 607, 611 (D. Colo. 2006) ("Rule 11 sanctions are an extraordinary remedy . . . intended to discourage frivolous litigation, not to punish litigants.").

The Court should deny the Motion because Kammok did not file its complaint for an improper purpose, and because Kammok's patent infringement claim is warranted by existing law, with pre-filing investigations showing ample evidentiary support for its factual contentions.

---

[1] The fourth certification is omitted here because Easthills does not raise it as a basis for the Motion.

3

### A.  **Kammok Did Not File Its Patent Infringement Claim for Any Improper Purpose.**

Kammok filed suit to protect its intellectual property rights—and for no other purpose. A filing is presented for an improper purpose if it is filed "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). "A motion for Rule 11 sanctions premised on alleged 'improper purpose' requires more than simply an adversarial relationship or hotly contested litigation." *U.S., ex rel. Maxwell v. Kerr Mc-Gee Oil & Gas Corp.*, No. 04-cv-01224-MSK-CBS, 2010 WL 582393, *8 (D. Colo. Feb. 17, 2010). Instead, the improper purpose standard "focuses on the improper purpose of the signer, objectively tested, rather than the consequences of the signer's act, subjectively viewed by the signer's opponent." *Id.*

Kammok has always clearly identified its reason for filing suit. When asked via interrogatory why Kammok filed its complaint, Kammok replied that "[i]t filed the complaint . . . to protect the intellectual property of plaintiff in light of defendant's wrongful conduct." *See* Kammok's Supplemental Discovery Responses at 2 (attached as Ex. C to the Motion) (ECF No. 86-4). That property right was established by the '893 patent, which was drafted and prosecuted by Kammok's patent attorney, Travis Banta. *See* Declaration of Travis Banta ("Banta Decl.") (attached as Ex. 1) ¶ 4. When Mr. Banta became aware of Easthills's Anymaka product in or about July 2023, he investigated the Anymaka by reviewing available materials, including advertising materials on the Kickstarter platform and Easthills's website. *Id.* ¶¶ 8–12. Based on that review, Mr. Banta created a claim chart showing that the Anymaka

4

implemented each and every element of claim 1 of the '893 patent, leading him to conclude that the Anymaka infringed on Kammok's patent, implementing each and every element of claim 1 of the '893 patent. *Id.* ¶¶ 13–14; Banta Letter to Easthills at 1 (attached as Ex. 3). Kammok specifically relied on the opinion of counsel that its patent was being infringed by Easthills's Anymaka. Declaration of Greg McEvilly ¶ 3 (attached as Ex. 2).[2] Thus, Kammok filed suit to protect its patent from further infringement, as it was plainly entitled to do. *Id.* ¶ 4. "Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts." *Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 37–38 (1913).

Easthills has failed to present any evidence to objectively test Kammok's purpose in filing the patent infringement claim, much less evidence that would objectively demonstrate any improper purpose. Despite Kammok's clear statement of its purpose—to protect its intellectual property against Easthills's wrongful conduct—Easthills argues three times in the Motion that the patent infringement claim was filed for the improper purpose of adding "unjustified credibility" to its DMCA takedown request. *See* Motion at 5, 9, 13. In one instance, this allegation is not supported by any citation. *Id.* at 13. In the other instances, Easthills cites "Dkt.

---

[2] Kammok's litigation counsel was also entitled to rely on this opinion. *See O'Rourke v. Dominion Voting Sys. Inc.*, 552 F.Supp. 3d 1168 (D. Colo. 2021) (reasonable inquiry may include "depend[ing] on forwarding counsel or another member of the bar") (quoting Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment).

5

No. 41 ¶ 37 at 16." *Id.* at 5, 9. But that reference only leads back to an allegation in the counterclaim that Easthills impermissibly amended, and which the Court struck. *See* ECF No. 55 ("[A]ll of Defendant's affirmative defenses and amended counterclaims are STRICKEN."). Thus, the only "evidence" Easthills has presented to show that Kammok filed its patent infringement claim for an improper purpose is an allegation in a stricken counterclaim, which of course does not rebut the plain statement given by Kammok for its reason for filing: "to protect the intellectual property of plaintiff in light of defendant's wrongful conduct."

Easthills also asserts that "Kammok's own counsel" admitted that it was only engaging in this litigation "to bring [Easthills] to the negotiating table." Motion at 5. This misrepresents the parties' correspondence. Before Kammok filed suit, Mr. Banta, Kammok's intellectual property counsel, emailed Easthills's counsel and stated that "Part of getting your client's attention was hoping they would come to the negotiating table." ECF No. 19-5. But in the very next sentence, Mr. Banta writes: "At the same time, my clients feel that to protect their interests until a deal can be made, that they need to maintain the copyright takedown. If there is some other show of our good faith I can offer short of rescind the takedown, I would be happy to consult with my clients about it." *Id.* As this email makes clear, the purpose of Kammok's actions was, and has always been, to protect its intellectual property and prevent what it reasonably believed was an infringing product from entering the market.

6

Easthills's selective quotation of Mr. Banta's correspondence ignores the substance and full context of that correspondence, and fails to consider the investigation performed prior to filing. That investigation substantiates Kammok's belief that it initiated this action for the proper purpose of protecting its legal rights.

      **B.**    **Kammok's Patent Infringement Claim Is Warranted under Existing Law, with Pre-Filing Investigation Showing Ample Evidentiary Support for its Factual Contentions.**

Rule 11(b)(2) requires that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Rule 11(b)(3), meanwhile, requires that "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Nevertheless, "a motion for Rule 11 sanctions is not the proper mechanism for resolving factual disputes." *Tso v. Murray*, No. 17-cv-02523-PAB-STV, 2018 WL 684767, at *2 (D. Colo. Feb. 1, 2018) (citing *Profita v. Puckett*, No. 15-CV-01237-DME-CBS, 2017 WL 1491003, at *27 (D. Colo. Apr. 25, 2017), report and recommendation adopted, 2017 WL 4225451, (D. Colo. June 6, 2017) ("Rule 11 is meant to penalize a lawyer for irresponsible and abusive tactics; it is not an appropriate vehicle for resolving legal or factual disputes.") (internal quotation omitted); 5A Wright, Miller, et al., Fed. Prac. & Proc. § 1335 (3d ed.) ("Rule 11 should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to

7

dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits.")).

In the context of patent infringement claims, Rule 11 does not create black letter rules or list detailed steps for exactly how pre-filing investigations are to be conducted. Rather, the Rule merely requires "the attorney [to] certif[y] that he [or she] has performed 'an inquiry reasonable under the circumstances.'" *Anonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) (quoting Fed. R. Civ. P. 11(b)). "An attorney's prefiling actions are evaluated using a standard of objective reasonableness." *Id.* at 1074.

The Federal Circuit has read Rule 11 to "require[] an attorney who files a patent infringement action to compare the accused device with the construed patent claims." *Id.* at 1073. In doing so, "counsel must make a reasonable effort to determine whether the accused device satisfies each of the claim limitations." *Id.* at 1074. Counsel violates Rule 11(b)(3) only if its infringement allegations are "unsupported by any information obtained prior to filing," or if "an objectively reasonable attorney would not believe, based on some actual evidence uncovered during the prefiling investigation, that each claim limitation reads on the accused device either literally or under the doctrine of equivalents." *Id.* (emphasis in original).

Easthills wrongly argues that a pre-filing investigation requires the filing attorney to investigate a physical specimen before filing a patent infringement claim. Motion at 9–11. Again, there is no such rule. In fact, the Federal Circuit has

8

specifically rejected the argument that "reliance on advertising as a basis for filing an infringement suit is not sufficient under Rule 11," explaining that reliance on advertising alone is insufficient only if it does "not provide an adequate factual basis to support the patentee's infringement counterclaim." *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004). The "key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis," not whether the plaintiff obtained a sample of the accused product. *Id.*; *see also S. Bravo Systems, Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996) (considering whether there is evidence that "either of [plaintiff's] attorneys ever compared the accused devices with the patent claims").

Kammok's patent infringement claim asserts a violation of 35 U.S.C. § 271, which instructs that "whoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." Here, Kammok has alleged, and it is undisputed, that Kammok owns the '893 patent, which describes an adjustable hammock stand. Easthills's Anymaka, meanwhile, is an adjustable hammock stand. *See* Ex. 3 (Claim Chart) To the extent the facts show that the Anymaka infringes the '893 patent, then Kammok's patent infringement claim has a basis in law.

And indeed, Kammok's pre-filing investigation gave rise to an objectively reasonable belief that there was sufficient evidentiary support to show that the Anymaka infringes on the '893 patent. Kammok's counsel conducted an independent pre-filing analysis by interpreting the patent claims and reading those claims onto

9

the Anymaka. Starting in early July 2023, Mr. Banta was providing legal counsel to Kammok in an advisory capacity, as part of which he analyzed the '893 patent and relevant extrinsic evidence. *See* Banta Decl. ¶ 5. As part of his analysis, Mr. Banta interpreted the claim limitations to determine what he believed to be the scope of the patent. *Id.* During this period of investigation, the Anymaka was not commercially available, and thus Mr. Banta could not inspect a physical specimen.[3] *Id.* ¶ 9. Nevertheless, Mr. Banta reviewed many photos, videos, and GIFs of the Anymaka posted on the Kickstarter platform and Easthills's website showing the mechanical function of the Anymaka. *Id.* ¶¶ 10–11. Through those photos, videos, and GIFs, Mr.

---

[3] Again, contrary to Easthills's repeated assertions, inspection of a physical specimen is not necessary for a pre-filing investigation where marketing materials provide a factual basis for the patent infringement claim. *See Q-Pharma, Inc.*, 360 F.3d at 1302.

Easthills also cites *Hoffman-LaRoche Inc. v. Invamed, Inc.*, 213 F.3d 1359, 1364 (Fed. Cir. 2000), for the premise that a "party seeking sanctions for an inadequate prefiling investigation is required to show that the opponent failed to do something that it reasonably could have done before filing." Motion at 7. This also misrepresents the caselaw. In that case, the plaintiff sought to learn the process through which the defendant developed a patented chemical but was not given access to sufficient documents to determine whether infringement had occurred. *Invamed*, 213 F.3d at 1364. The circuit court agreed that "[i]n the absence of such information, plaintiffs' resort to the judicial process" was required. *Id.* To underscore this point, the circuit court noted that defendant "pointed to nothing else that it believes [plaintiffs] could or should have done." *Id.* In doing so, the court was not ruling that a claim for sanctions only requires one party to point out what another party could have done. The question for the court is still whether the prefiling investigation by Kammok's attorneys was objectively reasonable given the circumstances.

In any event, Easthills never argues that it would have been possible for Kammok to receive a physical specimen of the Anymaka prior to filing. Indeed, it was not. *See* Banta Dec. ¶¶ 9–10. That does not mean Kammok had to wait until the infringer actually causes significant harm before filing suit.

10

Banta was able to read the various claim limitations at issue here onto the Anymaka. *Id.* ¶¶ 12–13. Based on his analysis of both the patent and the Anymaka, Mr. Banta created a claim chart to visually read the claim limitations onto the Anymaka. *Id.* ¶ 13. This claim chart showed that the Anymaka incorporates each and every element of claim 1 of the '893 patent, including the adjustable footprint suspension seat frame, three or more feet, and two cantilever arms connected by a footprint adjustment bar. Ex. 3 (Claim Chart). Thus, as shown in the claim chart and stated in the letter Mr. Banta provided to Easthills, the Anymaka violates the '893 patent. Banta Dec. ¶ 14; Ex. 3.

In response to Mr. Banta's analysis, counsel for Easthills explained to Mr. Banta why counsel did not believe the Anymaka infringed the '893 patent. *Id.* ¶ 15. But Mr. Banta disagreed with Easthills's counsel's analysis. *Id.* ¶ 16. This disagreement between the parties or their counsel does not suggest that Kammok failed to adequately conduct a pre-filing investigation; it shows a mere difference of opinion. That on its own does not support the imposition of Rule 11 sanctions; Easthills must instead prove that the investigation and analysis of Kammok's counsel was not objectively reasonable, lacking any factual basis.

Easthills fails to do so. Instead, Easthills summarily states that the Anymaka's "pedestal" is structurally different than the "footprint adjustment bar." *See* Motion at 11. But Easthills does not attempt to interpret the claim term "footprint adjustment bar," nor to explain how the alleged difference in structure is material. *Id.* As

11

Kammok has argued in this litigation, a footprint adjustment bar should be construed as "an adjustable connector bar which allows a distance between cantilever arms to be increased or decreased." *See* Kammok's Claim Construction Brief at 2, 14–15. As shown in Mr. Banta's claim chart, the distance between the cantilever arms of the Anymaka can be adjusted. *See* Banta's Letter to Easthills (including the Kammok Claim Chart and a copy of the '893 patent). Moreover, even after recently reviewing the physical specimen of the Anymaka, Mr. Banta's position in his claim chart has not changed. Banta Dec. ¶ 17. Thus, there remains a factual basis for Kammok's claim, and the factual issues and other disagreements between the parties cannot be resolved in a Rule 11 motion. Indeed, the support for Kammok's patent infringement claim is not merely sufficient to comply with Rule 11; Kammok believes its patent infringement claim remains viable and will ultimately succeed at trial.

In sum, Kammok's patent infringement claim was filed to protect its legitimate interests and on the good-faith basis, formed after reasonable investigation, that the law and facts would support its claim. The Rule 11 Motion should be denied.

## II. THE COURT SHOULD AWARD TO KAMMOK THE ATTORNEY'S FEES IT EXPENDED IN OPPOSING THE MOTION.

Rule 11 states that "[i]f warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for" a motion for sanctions. Fed. R. Civ. P. 11(c)(2). "The court's authority to award reasonable expenses under Rule 11(c)(2) is distinct and separate from its authority to award attorney's fees under Rule 11(c)(4)," and the Court need only find that the award of

12

expenses to the prevailing party is "warranted and reasonable." *Vanliner Ins. Co. v. DerMargosian*, No. 3:12-CV-5074-D, 2014 WL 1632181, at *1 (N.D. Tex. Apr. 24, 2014). Such circumstances include where the motion for sanctions is "devoid of any good-faith arguments," *id.*, or "utterly without merit," *Quarrie v. Wells*, No. 17-350 MV/GBW, 2019 WL 2365907, at *4 (D.N.M. June 4, 2019); where the movant "fail[s] to comply with the clear requirements for such a motion," *Centeno v. City of Carlsbad*, No. 3:19-cv-02098-RSH-DEB, 2023 WL 3309873, at *2 (S.D. Cal. May 8, 2023); or in light of "the untimeliness of the motion" or "how factually exhaustive it was," requiring "great efforts to oppose [the] motion," *McGrath v. Dunecrest Condo. Ass'n*, No. 3:20-CV-656-TLS-MGG, 2024 WL 1283715, at *2 (N.D. Ind. Mar. 22, 2024).

The Court should award to Kammok the reasonable attorney fees it incurred in opposing the Motion because, as shown above, the motion is without merit. Making matters worse, the Motion is replete with misrepresentations, and Easthills could have raised the Motion much earlier in this litigation. All these circumstances show that an award of fees to Kammok is warranted.

        **1.** ***The Motion contains several misrepresentations that confuse the core issue of the Motion.***

Easthills spends several pages distorting and misrepresenting the procedural history of the case, even where the procedural history is unrelated to the viability of Kammok's patent infringement claim. For example, in addition to the instances noted above, Easthills claims that "[t]hrough its Supplemental Responses Kammok has . . . admitted that the Anymaka does not practice all the elements as asserted in

13

Kammok's trade dress infringement claim." Motion at 4. Kammok made no such admission. *See* Response to Supplemental Brief in Support of Motion for Summary Judgment at 2 (ECF No. 73). Nor does this contention have any apparent relevance to the Motion or the patent infringement claim on which it focuses.[4]

As another example, Easthills asserts that "Kammok has withdrawn some of its infringement contentions [] after obtaining a physical specimen from Easthills." Motion at 4. That is simply false. Kammok has not withdrawn any claims or contentions since it received the physical specimen. It has not done so in any filing or via email. This assertion simply has no basis in fact.

Still other assertions distort the procedural history. For example, Easthills characterizes Kammok's response to Easthills's supplemental brief in support of its motion for summary judgment as "blindly proclaim[ing] that 'Easthills seeks no relief for Kammok's alleged failure to conduct a sufficient pre-filing investigation, and thus there is no relief for the Court to provide.'" Motion at 2 (quoting ECF No. 73). But this statement was not "blindly" made at all—it was an entirely accurate description about the relief Easthills had sought (and had not sought) as of the time of the filing. Not until Easthills filed the Motion did it seek any relief regarding the pre-filing investigations. This gratuitous and misleading comment seemingly serves no purpose

---

[4] The same issue is true of Easthills's commentary on Kammok's copyright infringement claim, which Kammok has voluntarily withdrawn. Kammok denies that the claim was "admittedly inviable" as Easthills characterizes it. Motion at 5. More relevant to the Motion, however, the copyright claim has nothing to do with the patent infringement claim.

14

but to craft a false narrative regarding the alleged Rule 11 violations. Additionally, the Court should award fees to Kammok because Easthills has filed this motion unreasonably late. Easthills argues that it was Kammok's supplemental written discovery responses that informed Easthills that Kammok had failed to conduct a reasonable pre-filing investigation, *see* Motion at 4, but those supplemental responses were issued on June 7, 2024. *See* Ex. C to the Motion (ECF No. 86-4). Nearly a full month after receiving these discovery responses, Easthills filed its patent claim construction brief. *See* Easthills's Claim Construction Brief (ECF No. 64) (filed July 5, 2024). This caused the parties to undertake significant work related to interpreting the patent claims, which efforts continued for a full month until August 5, 2024. If Easthills truly believed Kammok's patent infringement claim was frivolous, it would have filed the Motion well in advance of the claim construction briefing. The unreasonable and unexplained delay in bringing the Motion so long after receiving the discovery responses betrays Easthills's true purpose for the Motion: it is using the Motion to leverage its position on its summary judgment filings. This is itself an improper purpose for such a motion, and warrants an award of attorney fees to Kammok for the expense incurred in responding to it.

## CONCLUSION

Based on the foregoing, the Court should deny the Motion.

DATED this 11th day of October, 2024.

        BY:   /s/ Erik A. Olson

Reid Allred
Douglas Marsh
CAMBRIDGE LAW, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
303.488.3338
reid@cambridgelaw.com
doug@cambridgelaw.com

Erik A. Olson
eolson@mohtrial.com
Anikka T. Hoidal
ahoidal@mohtrial.com
MARSHALL OLSON & HULL, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
801.456.7655

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** was served upon counsel for Easthills by ECF on this 11th day of October 2024.

/s/ Anikka T. Hoidal
Anikka T. Hoidal
**Marshall Olson & Hull, P.C.**

## CERTIFICATION RE: USE OF ARTIFICIAL INTELLIGENCE (AI) FOR DRAFTING

The undersigned, counsel of record for Defendant Kammok Holdings, LLC, certifies that (a) no portion of the filing was drafted by AI, and that (b) any language drafted by AI (even if later edited by a human being) was personally reviewed by the filer or another human being for accuracy using print reporters or traditional legal databases and attests that the legal citations are to actual existing cases or cited authority.

/s/ Anikka T. Hoidal
Anikka T. Hoidal
**Marshall Olson & Hull, P.C.**