IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-02405-CNS-MEH

KAMMOK HOLDINGS, LLC,

    Plaintiff,

v.

EASTHILLS, INC., ANYMAKA LIMITED, and DOES 1–10.

    Defendants

## ~~FIRST~~ SECOND AMENDED COMPLAINT

Plaintiff Kammok Holdings, LLC hereby complains of defendant Easthills, Inc., and Does 1 through 10, and alleges as follows:

### PARTIES

1.    Plaintiff Kammok Holdings, LLC. ("Kammok") is a Texas limited liability company with a principal place of business in Austin, Texas.

2.    Kammok owns all rights, title, and interest in U.S. Patent No. 11,330,893 ("the '893 patent").

3.    On information and belief, defendant Easthills, Inc. ("Easthills") is a Colorado corporation, organized and existing under the laws of the State of Colorado, with its principal place of business in the State of California.

~~3.~~4.   On information and belief, defendant Anymaka Limited ("Anymaka Ltd.") is a Hong Kong corporation, organized and existing under the laws of the Hong Kong Special Administrative Region, with its principal place of business in Hong Kong.

~~4.~~5.   Defendants Does 1 through 10, inclusive, are sued herein under fictitious names.  Their true names and capacities, whether individual, corporate, associate or otherwise, are unknown to Kammok.  When their true names and capacities are ascertained, Kammok will amend this complaint by inserting their true names and capacities herein.

~~5.~~6.   On information and belief, at all times herein mentioned, all defendants were the agents, employees, representatives, and/or servants of each of the other defendants, and in performing the acts hereafter alleged, were acting within the scope and course of their authority as such agents, employees, servants, and/or representatives, and with the permission and consent of each of the other defendants.

**JURISDICTION AND VENUE**

~~6.~~7.   Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 to 1332 and 1337 to 1338.

~~7.~~8.   Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400 because, at minimum, plaintiff is incorporated in the State of Colorado.

## GENERAL ALLEGATIONS

8.9.   Kammok manufactures, sells, and distributes a portable and adjustable stand for hammocks and other suspension seats under the Swiftlet mark (the "Swiftlet").

9.10.   Kammok has invested heavily to protect its intellectual property rights relating to the Swiftlet.

10.11. The Swiftlet includes textured anchor points on which a hammock may be attached.

11.12. The texture on the anchor points includes sculptural features that can be identified separately from the utilitarian purpose of the design.

12.13. The Swiftlet also includes a hammock holder at the end of cantilever arms.  The Swiftlet hammock holders include a clamshell design that is sculptural in nature and separate from the utilitarian purpose of the design.

13.14. The utilitarian aspects of the Swiftlet are covered by the '893 patent. A copy of the '893 patent is attached as Exhibit 1.

14.15. The '893 patent includes the following utilitarian elements:

    a.      Three or more feet;

    b.      A first cantilever arm comprising a first cradle disposed on a distal end of the first cantilever arm and a side clip including a first anchor for a suspension seat oriented on the backside of the first cantilever arm,

3

wherein the first cantilever arm extends through the side clip and the side clip slides proximally and distally along the first cantilever arm;

c. A second cantilever arm comprising a second cradle disposed on a distal end of the second cantilever arm and a second anchor for the suspension seat oriented on the backside of the second cantilever arm; and

d. A first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm.

15.16. The Swiftlet is cloaked with a distinctive trade dress, which includes without limitation the distinctive, nonfunctional sculptural and clamshell design features detailed above.

16.17. The Swiftlet is also cloaked with the distinctive trade dress of a carry bag that is black with gray webbing highlights.

17.18. The website, www.kickstarter.com ("Kickstarter") is an online service that allows third parties to raise money, typically for a business venture such as the creation of a new product. The funds are typically raised from would-be purchasers of the product rather than from investors. These purchasers are often called "backers" of Kickstarter campaigns.

18.19. In or about July 2023, Kammok learned of a Kickstarter campaign that was run by Easthills for the purpose of raising money for the manufacture, sale, and distribution of a product called the Anymaka Hammock Stand (the "Anymaka").

4

19. 20. The Anymaka uses textured buttons as anchors for the hammock that are identical to the size, shape, and design as the anchor buttons used on the Swiftlet.

20. 21. The Anymaka uses a clamshell-shaped hammock holder that is identical to the hammock holders used by the Swiftlet, featuring the same spread and angle of the clamshell, the same inward extensions, and the same position of the clamshell as included on the Swiftlet.

21. 22. On information and belief, Easthills intentionally copied these designs from Kammok.

22. 23. The Anymaka hammock also includes each of the utilitarian features referenced above.

23. 24. On information and belief, Easthills intentionally copied the utilitarian features of the Swiftlet.

24. 25. The Anymaka hammock also includes a carry bag that is black with gray webbing highlights.

25. 26. On information and belief, Easthills intentionally copied the carry bag design of the Swiftlet.

26. 27. On or about July 13, 2023, shortly after Kammok discovered Easthills' Kickstarter campaign, counsel for Kammok sent a cease-and-desist letter to the CEO and registered agent of Easthills.

27.28. The cease-and-desist letter explained Kammok's patent infringement claim and included a copy of the '893 patent and a claim chart.

28.29. The cease-and-desist letter also demanded that Easthills end its Kickstarter campaign.

29.30. Easthills did not cease raising funds for the production and distribution of the Anymaka, nor did it cease offering pre-sales of the Anymaka.

30.31. On or about July 31, 2023, Kammok sent a DMCA takedown request to Kickstarter, requesting that Easthills' Kickstarter campaign be taken down.

31.32. On or about August 28, 2023, Easthills caused an internet article titled "Production & Shipping Update" to be published on the website for Anymaka (the "Update").

32.33. In the Update, Easthills stated that it has "procured a sufficient quantity of materials and components to manufacture enough products for all our backers."

33.34. The Update states that Easthills intends to produce "about 2,000-2,500 units per month."

34.35. The Update includes pictures of hundreds of boxes with the Anymaka logo on it before describing that more than 2,300 sets of the Anymaka have been shipped to areas in the Western and Eastern United States, United Kingdom, and Canada.

36. ~~Finally, the Update indicates that Easthills intends to continue selling the Anymaka notwithstanding the claims that Kammok has raised~~.

37. Upon information and belief, after the Kickstarter campaign closed on or about October 16, 2023, Easthills ceased the sale of the Anymaka hammock stand, and Anymaka Ltd. began selling the subject hammock stand.

~~35.~~38. Anymaka Ltd. was aware of Kammok's infringement claims because Easthills and Anymaka Ltd. share common ownership.

**FIRST CAUSE OF ACTION**
**(Patent Infringement – 35 U.S.C. § 271)**

~~36.~~39. Kammok incorporates and restates herein each of the allegations of the complaint detailed above.

~~37.~~40. On Kickstarter Easthills advertises, sells, and offers for sale infringing hammock stands, and on www.anymaka.com, ~~Easthills~~ Anymaka Ltd. advertises, ~~manufactures,~~ sells, and offers for sale infringing hammock stands.

~~38.~~41. ~~Easthills'~~ Defendants' actions as described above constitutes infringement of the '893 patent.

~~39.~~42. ~~Easthills'~~ Defendants' continued actions of advertising, manufacturing, selling, and offering for sale the Anymaka has caused irreparable injury, as well as actual damages, to Kammok and Kammok's patent rights.

~~40.~~43. Irreparable injury to Kammok will continue if ~~Easthills'~~ defendants' infringement is not preliminarily and permanently enjoined by this Court.

7

~~41.~~ 44. Under 35 U.S.C. § 283, Kammok is entitled to an injunction prohibiting ~~Easthills~~ defendants from further advertising, manufacturing, selling, and offering for sale the Anymaka without permission or license from Kammok.

~~42.~~ 45. Under 35 U.S.C. § 284, Kammok is entitled to recover all damages caused by ~~Easthills'~~ defendants' infringement, together with prejudgment interest and costs.

~~43.~~ 46. On information and belief, ~~Easthills'~~ defendants' infringement is willful, or at the very least, in reckless disregard of Kammok's patent rights. ~~Easthills~~ Defendants had knowledge of Kammok's patent rights, but proceeded to copy Kammok's hammock stand design despite an objectively high risk that it would infringe a valid patent. Under 35 U.S. C. § 284, Easthills is entitled to treble damages because Easthills has continued to advertise, manufacture, sell, and offer for sale after having actual knowledge of the '893 patent without any defense.

~~44.~~ 47. This is an exceptional case. Thus, Kammok is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**SECOND CAUSE OF ACTION**
**(Trade Dress Infringement – Lanham Act § 43(a))**

~~45.~~ 48. Kammok incorporates and restates herein each of the allegations of the complaint detailed above.

~~46.~~ 49. Under § 43(a) of the Lanham Act, Kammok is entitled to legal protection of its Swiftlet trade dress, which trade dress includes, without limitation, textured anchor points and a clamshell hammock holder.

8

47.50. The Swiftlet trade dress has acquired secondary meaning.

48.51. Consumers have come to recognize the Swiftlet trade dress as identifying Kammok as the source of the high-quality Swiftlet trade dress.

49.52. Easthills has so closely imitated or copied the Swiftlet trade dress that the consuming public has been confused, and will continue to be confused, regarding the source or origin of Easthills' products, and will erroneously believe that Easthills' products come from Kammok.  In the eye of an ordinary observer, giving such attention as a purchaser usually gives, the Swiftlet and the Anymaka are substantially the same, and the resemblance is sufficient to deceive an observer, inducing him to purchase the Anymaka supposing it to be the Swiftlet.

50.53. On information and belief, Easthills' copying of the Swiftlet trade dress was intentional.

51.54. The Anymaka is strikingly similar to, a substantial duplicate of, virtually identical to, substantially identical to, remarkably similar to, essentially a duplicate of, or a close imitation of the Swiftlet.

52.55. Easthills' acts of trade dress infringement have caused injury to Kammok.

53.56. Under § 43 of the Lanham Act, Kammok is entitled to an award for the injuries and damages it has sustained as a result of Easthills' conduct.

54.57. Under § 43 of the Lanham Act, Kammok is entitled to an award of treble damages because Easthills' acts were intentional, willful, and deliberate.

9

~~55.~~58. Kammok is entitled to an award of pre-judgment interest for the damages sustained as result of Easthills' wrongful conduct.

~~56.~~59. Easthills' wrongful, malicious, fraudulent, deliberate, willful, intentional, and incredible conduct makes this an exceptional case entitling Kammok to an award of attorneys' fees and costs.

~~57.~~60. Kammok has no adequate remedy at law and is suffering irreparable harm as a result of Easthills' acts.  Kammok is therefore entitled to preliminary and permanent injunctive relief to enjoin Easthills' wrongful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Kammok requests that:

A. The Court preliminarily and permanently enjoin, in the United States, ~~Easthills~~defendants, ~~its~~ their officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, from making, advertising, selling, or

offering for sale or otherwise distributing any product that the '893 patent or Kammok's trade dress, including without limitation, the Anymaka;

B. The Court enter judgment against ~~Easthills~~ defendants for direct infringement of the '893 patent under 35 U.S.C. § 271;

C. The Court enter judgment against Easthills for trade dress infringement;

D. The Court order that ~~Easthills~~ defendants account to Kammok for all sales, revenues, and profits derived from the sale or other distribution of the Anymaka and any similar infringing product, and that ~~Easthills~~ defendants pay to Kammok all compensatory damages to which Kammok is entitled by law, including without limitation, lost profits, reasonable royalties, price erosion damages, entire market value damages, and convoyed sales damages;

E. The Court award to Kammok up to three times the damages found;

F. The Court award to Kammok the costs and reasonable attorneys' fees incurred in this action;

G. The Court award to Kammok pre-judgment interest on all sums allowed by law; and

H. The Court award to Kammok such relief as the Court may deem appropriate.

DATED this __th day of April, 2025.

        BY:    /s/ Dominic W. Shaw
               DOMINIC W. SHAW

Douglas N. Marsh
CAMBRIDGE LAW, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
303.488.3338
reid@cambridgelawcolorado.com
doug@cambridgelawcolorado.com

Erik A. Olson
eolson@mohtrial.com
Dominic W. Shaw
dshaw@mohtrial.com
MARSHALL OLSON & HULL, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
801.456.7655

*Attorneys for Plaintiff*

12