

# Bayramoglu Law Offices

*Attorneys-at-Law*

*Las Vegas Office*
*1540 W. Warm Springs Rd., Suite 100*
*Henderson, NV 89014*
*Email: deniz@Bayramoglu-Legal.com*
*Telephone: (702) 462-5973*
*Telecopier: (702) 553-3404*

Loyal I.P. Law
C/O Travis Banta
2350 E. Arbor Lane,
P.O. Box 17395,
Holladay, Utah, 84117

**RE: Kammok's Baseless and Frivolous Claims of IP Infringement**

Dear Mr. Banta,

    As you know, our firm represents Easthills Inc. ("Anymaka") -- owners of the Kickstarter campaign for Anymaka. We write specifically to follow up on our conversation from Friday, August 18, 2023, to engage in a potential business resolution of any dispute that may exist. We also specifically write to underscore that Kammok's frivolous and untenable claims of intellectual property infringement are not based in fact or in law and are brought primarily for the purpose of vexation, harassment, and to gain undue advantage. Anymaka is reasonable and willing to discuss a business resolution but will not tolerate bad faith assertions of rights made to third parties such as Kickstarter. Any such claims made to third parties must be withdrawn before Anymaka is willing to explore a possible resolution. In other words, Anymaka will sit down to the negotiating table, but will not do so with a loaded gun to its head.

    The timing of Kammok's DMCA takedown request is problematic as the takedown notice was sent to Kickstarter in the final weeks of the Kickstarter campaign. As Kammok has admitted, the main purpose of the DMCA takedown request was to get Anymaka's attention and start a conversation. You now have Anymaka's attention but must withdraw the DMCA complaint so that we can have a meaningful conversation.

    As we understand Kammok's claims, they stem from purported rights to: (1) copyright, (2) trade dress, and (3) patent. All three are equally unfounded in law and in fact. We understand that the copyright and trade dress claims stem from C shaped yokes or clamshells and anchor pieces, but do not understand how those could possibly be protected under copyright or trade dress.

1

KAMMOK000042



## Claims of Copyright

Kammok has provided no tangible evidence that the material in question is in fact copyrighted as claimed and has not provided any verification of ownership of any rights. Kammok claims ownership of a copyright but does not identify any copyright application(s) or registration(s). In fact, in our conversation you confirmed that Kammok did not have any copyright or trademark/tradedress registrations nor applications pending. As you may know, Anymaka has consented to jurisdiction in the Eastern District of New York for the resolution of any copyright claims. In the Second Circuit, in which Kickstarter is located and jurisdictional consent was agreed to in a DMCA counternotice, a valid copyright registration is required for any copyright lawsuit to be filed by a U.S. citizen or entity. Kammok is a Texas entity and accordingly is a U.S. entity requiring a copyright registration as a threshold matter to even file suit – which it simply does not have.

Even assuming, *arguendo*, that Kammok had applied for a copyright, the application would ultimately be rejected and not granted registration. Any element that is in reference to the utility patent 11,330,893 claimed by Kammok cannot be the subject of copyright as copyrights do not extend to useful articles. *Star Athletica, LLC, v. Varsity Brands, Inc*, 137 S. Ct. 1002, 1008. Nor does it protect the overall form, shape, or configuration of a useful article. *See id*. at 1010, 1014. While the pictorial, graphic, or sculptural features of the design of a useful article may be eligible for copyright protection, the features must be able to be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

The Copyright Office will determine if the separable feature "would qualify as a protectable pictorial, graphic, or sculptural work – either on its own or fixed in some other tangible medium of expression – if it were imagined separately from the useful article into which it is incorporated." *Id.* at 1007. In this matter, the separable material would merely be an oval or "C" shaped piece of metal or the clamshell shape from the holder.

The oval or "C" shaped piece of metal and the clamshell shape from the holder cannot be removed from their utilitarian functions, as both are specifically designed to secure, clasp, hold onto, or connect two different items. However, even if the aspects could be separated from their utilitarian function, they would still not be subject to copyright protection.

Even if the separability test has been satisfied, the U.S. Copyright Office still must determine if the design is sufficiently original to warrant registration. *See Star Athletica*, 137 S. Ct. at 1012 & n.1. The term "original" means that the design must be "independently created by the author" and must possess "at least some minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S.

KAMMOK000043



340, 345 (1991). A standard oval or "C" shape and basic clamshell shape lack the necessary degree of creativity to be protectable.

Furthermore, the Copyright Act does not protect common geometric shapes, either in two-dimensional or three-dimensional form. There are numerous common geometric shapes, including, without limitation, straight or <u>*curved lines*</u>, circles, <u>*ovals*</u>, spheres, triangles, cones, squares, cubes, rectangles, diamonds, trapezoids, parallelograms, pentagons, hexagons, heptagons, octagons, and decagons. U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 906.01 (3d ed. 2021) (emphasis added).

The oval or "C" shaped metal piece would not be protected as a common geometric shape, and the clamshell shape is just a curved line in a semi-circle shape. When separated from the utilitarian function of the design, if even possible, the only possible remaining elements are common geometric shapes, which are fundamentally not given protection as copyrights.

Therefore, Kammok has no valid copyright registration *or even an application on which to rely*, Kammok would be unable to obtain any such copyright registration, and Kammok has no valid copyright protection in the elements Kammok is attempting to vaguely claim are copyrightable. Kammok accordingly does not even have a proper basis to file a federal lawsuit for copyright infringement. Procedural issues notwithstanding, the substantive assertion that a simple shape that is functional in nature and cannot be separated from the utilitarian product is somehow protected by copyright is completely nonsensical. Any attempts to enforce such rights in court will be met with a request for sanctions under Rule 11 for what they are: frivolous argument and claims not warranted or supported by the law or facts, or any kind of evidentiary support whatsoever. Anymaka would also seek attorney's fees under 17 U.S.C. § 505 and any other relevant fee shifting statutes.

### Claims of Trade Dress

Kammok does not, and cannot, have a valid trade dress. As we mentioned above, Kammok alleges trade dress rights in "C" shape holders or clamshell hammock holders or "anchor" portions of the product. The design claimed by Kammok cannot be a trade dress because the design has no acquired distinctiveness, and the product design is functional.

The claimed trade dress consists of a nondistinctive product design that is not registerable on the Principal Register without sufficient proof of acquired distinctiveness. Trademark Act Sections 1, 2, and

3



45, 15 U.S.C. §§1051- 1052, 1127; Kammok cannot establish sufficient proof of distinctiveness of the alleged trade dress.

A product design can never be inherently distinctive as a matter of law; consumers are aware that such designs are intended to render the goods more useful or appealing rather than identify their source. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. at 212-13, 54 USPQ2d at 1068-69; *In re Slokevage*, 441 F.3d at 962, 78 USPQ2d at 1399. Thus, consumer predisposition to equate a product design with its source does not exist. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. at 213, 54 USPQ2d at 1069.

Kammok has not even applied for trade dress protection and any attempts to apply for trade dress protection would be rejected by the United States Patent and Trademark Office and refused registration.

Functionality

The "clamshell hammock holder" and "anchor" portion of the product are functional designs for the identified goods. Trademark Act Section 2I(5), 15 U.S.C. §1052(e)(5); *see* TMEP §1202.02(a)-(a)(ii). A feature is functional if it is "'essential to the use or purpose of the [product]'" or "'it affects the cost or quality of the [product].'" *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32, 58 USPQ2d 1001, 1006 (2001) (*quoting Qualitex Co. v. Jacobson Prods.* Co., 514 U.S. 159, 165, 34 USPQ2d 1161,1163-64 (1995)); *Inwood Labs., Inc., v. Ives Labs., Inc*., 456 U.S. 844, 850 n.10, 214 USPQ 1, 4 n.10 (1982); TMEP §1202.02(a)(iii)(A).

Determining functionality normally involves consideration of one or more of the following factors, commonly known as the Morton-Norwich factors: (1) The existence of a utility patent disclosing the utilitarian advantages of the design sought to be registered, (2) advertising materials of the applicant that tout the design's utilitarian advantages, (3) the availability to competitors of alternative designs, and (4) facts indicating that the design results in a comparatively simple or inexpensive method of manufacture. *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1374-75, 102 USPQ2d 1372, 1377 (Fed. Cir. 2012) (*citing In re Morton-Norwich Prods., Inc*., 671 F.2d 1332, 1340-41, 213 USPQ 9, 15-16 (C.C.P.A. 1982)); TMEP §1202.02(a)(v).

It is not required that all four factors be proven in every case, nor do all four factors have to weigh in favor of functionality to support a functionality refusal. *Poly-America, LP v. Ill. Tool Works, Inc.*, 124 USPQ2d 1508, 1514 (TTAB 2017) (*citing In re Change Wind Corp*., 123USPQ2d 1453, 1456 (TTAB 2017); *In re Heatcon, Inc.,* 116 USPQ2d 1366, 1370 (TTAB 2015)); TMEP §1202.02(a)(v).

We are not in possession of Kammok's advertising materials, but addressing the relevant Morton-Norwich factors, Kammok's alleged trade dress is plainly and objectively functional:

4



*Existence of a Utility Patent*

There is a utility patent disclosing the utilitarian advantages of the design sought to be registered. US Patent Number 11,330,893, ("The Patent") is the very patent Kammok uses to allege to Kickstarter and others that Anymaka is somehow infringing Kammok's patent rights. The utility patent discloses that the shape and design of the device is dictated by functionality. The "clamshell hammock holder" that is claimed, the Utility Patent addresses as a "cradle". The Patent discloses the functionality under Column 6 lines 1-7 explaining that the cradles comprise guides disposed at the ends of the arms to "support and spread the tensile members of a suspension"... "enhancing the comfort and ease of entry to the hammock." Furthermore, claim 1 of the Patent, column 12 lines 32 and 39, claims the first cradle and second cradle as part of the invention. The Patent also discloses the function of the anchors, which are referred to in the Patent as side clips in Column 5 line 51-55 and again in column 3 lines 43-48.

These cradles and anchors/side clips discussed in the Patent are the exact product design Kammok is attempting to claim is a trade dress. However, a utility patent claiming the design features at issue is strong evidence that those features are functional. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30, 58 USPQ2d 1001, 1005 (2001); *In re Becton, Dickinson & Co.*, 675 F.3d 1368, 1375, 102 USPQ2d 1372, 1377 (Fed. Cir. 2012); see TMEP§1202.02(a)(iv), (a)(v)(A). However, a patent need not claim the exact configuration for which trademark protection is sought to prove functionality. *See In re Becton, Dickinson & Co.*, 675 F.3d at 1375, 102 USPQ2d at 1377 (*citing TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. at 32-33, 34-35, 58 USPQ2d at 1005). "[S]tatements in a patent's specification illuminating the purpose served by a design may constitute equally strong evidence of functionality." *In re Loggerhead Tools, LLC*, 119 USPQ2d 1429, 1432 (TTAB 2016) (*quoting In re Becton, Dickinson & Co.*, 675 F.3d at 1375, 102 USPQ2d at 1377)

*Availability of Competitors of Alternative Designs:*

The product design is incapable of functioning as an indicator of source because it is a basic design in the industry used by others. There are multiple products by other manufacturers with the same design, the design of the cradle and anchors/clips is common in the marketplace, and alternative designs are not as prevalent. We are ultimately discussing whether Kammok can claim clamshells, "C" hooks, and anchors as their own non-functional indicator of source – which is an objectively unreasonable position to take. Even re-reading that sentence, the absurdity of the claim is astounding.

5



Distinctiveness

TMEP 1202.02 (b)(i) indicates a product design trade dress is never inherently distinctive and is not registrable on the Principal Register unless the applicant establishes the mark has acquired distinctiveness. Furthermore, common or basic shapes are not registrable on the Principal Register under a 2(f) acquired distinctiveness. Here, the accused trade dress is a product design as Kammok is trying to claim part of a patented product. Kammok is not claiming trade dress in the product packaging, but rather a key component of the patented product itself. In "close cases," courts have been instructed to err on the side of classifying trade dress as product design instead of product packaging, thereby requiring proof of secondary meaning. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 215, 54 USPQ2d 1065, 1070 (2000). Furthermore, as stated above, the product design is incapable of functioning as an indicator of source because it is basic design in the industry used by others. The fact the product design is used by others in the industry, clearly shows the use is not substantially exclusive, which is required to prove distinctiveness has been acquired.

In view of the above, the overall designs in any purported trade dress simply cannot exist. Kammok has no valid trade dress registration *or even an application on which to rely*. Kammok would be unable to obtain any such trade dress registration. To the extent Kammok alleges common law trade dress rights, Kammok must still prove that the purported trade dress is distinctive to them – it is not – and that the claimed trade dress is not functional – impossible when the trade dress is, in fact, functional. Kammok's assertion that a simple shape and anchor that is functional in nature and somehow unique or exclusive to Kammok is disingenuous at best. Any attempts to enforce such rights in court will be met with a request for sanctions under Rule 11 for what they are: frivolous argument and claims not warranted or supported by the law or facts, or any kind of evidentiary support whatsoever. Anymaka would also seek attorney's fees under 15 U.S.C. § 1117(a) and any other relevant fee shifting statutes as well as seeking counterclaims for unfair business practices.

Claims of Patent Infringement

Kammok asserts that Anymaka's product infringes upon Kammok's U.S. Patent No. 11,330,893 ('893 Patent). As a preliminary matter, Kammok makes patent infringement assertions to third parties such as Kickstarter in a DMCA takedown notice. Kammok's assertions of patent infringement in a DMCA takedown notice are inappropriate (the "C" in DMCA being Copyright). It is also completely inappropriate that Kammok would insinuate or vaguely threaten a contributory patent infringement action against Kickstarter or others. The method of making the assertions for infringement aside, we would like to address the completely baseless claim of patent infringement claimed by Kammok.



Anymaka's product ("the product") is different from '893 Patent claims and the product does not infringe upon any claim of '893 Patent.

The structure of '893 Patent is to adapt various usage requirements in different physical space and conditions. The purpose is achieved by changing the footprint adjustment bar to adjust the covering area (dimensions between the frame's contacts on the ground). On the other hand, the purpose of Anymaka's product is to achieve rapid folding and unfolding of the frame and save storage space. The *fixed* pedestal of the Anymaka product is used in the center, with two supporting arms and four supporting feet that are respectively connected to the fixed pedestal. In an unfolded state, the two supporting arms are unfolded up to fix the hammock, and four supporting feet unfold down to the ground to support the whole system. In a folded state, the supporting arms and the supporting feet are gathered roughly in parallel to save storage space in the idle state.

In contrast, the structure as defined and claimed in '893 Patent solves the problem of "The broad range of users and use contexts for suspension seats presents significant opportunities for improvement in the design of suspension seat frames, both in terms of accommodating hetero-geneous users and in terms of adjusting the frames' footprints within a physical space." See column 1 lines 30-35 of '893 Patent. The '893 Patent provides a solution to this problem by describing and claiming, "an adjustable-footprint suspension seat frame includes three or more feet, a first cantilever arm with a first anchor for a suspension seat, a second cantilever arm with a second anchor for the suspension seat and a first footprint adjustment bar connecting the first cantilever arm to the second cantilever arm." See column 1 lines 41-46 of '893 Patent.

Among other limitations, claim 1 of '893 Patent has the following limitation: "a first footprint adjustment bar connecting the first canti-lever arm to the second cantilever arm." See '893 Patent column 12 lines 43-44. The accused product does not have a first footprint adjustment bar as documented in Claim 1 of '893 Patent. The first footprint adjustment bar of claim 1 is actually used to adjust the dimensions between the feet, while the Anymaka product doesn't have the parts that achieve the corresponding function. In the claim chart, Kammok marked Anymaka's product's fixed pedestal as being the same as claim 1's limitation of "footprint adjustment bar." The pedestal in the product does not provide adjustment. The footprint of the Anymaka product is fixed rather than adjustable.

Our analysis of the '893 Patent against the accused product shows that there is no infringement either direct or under the doctrine of equivalence. There is no direct infringement because the product is missing the required "footprint adjustment bar" as described above. There is no infringement under doctrine

7



of equivalence because there is no element in the accused product that corresponds to footprint adjustment bar. The result and the way the result is achieved by the pedestal of Anymaka's product are very different than the footprint adjustment bar of the '893 Patent. As a result, the function-way-result test, fails.

We take issue with the way Kammok has proceeded and sought to capture Anymaka's attention. Kammok has sent the patent claims to Kickstarter, but Kickstarter's own rules state that the only way to take down a campaign for patent infringement requires a court order. There is no court order in this instance as no court case has been filed. Even if Kammok initiates a lawsuit in Federal District Court, they will not be successful in obtaining a court order as there is no infringement. Reasonable minds may differ as to what the scope of a patent claim might be, but to suggest that a footprint adjustment bar specifically used for *adjusting* is corollary or analogous to a *fixed* pedestal is an intentional bad faith misrepresentation and misconstruction of the '893 Patent. Anymaka is confident that there is no infringement and is willing to defend any potential lawsuit for patent infringement and indemnify Kickstarter and others against any lawsuit asserting contributory infringement. Anymaka will also seek attorney's fees and costs under 35 USC 285 or any other fee shifting statutes that are applicable.

For all of the foregoing reasons, each and every one of Kammok's claims that Anymaka has infringed on Kammok's intellectual property are completely frivolous and have no basis in fact or law. All of the theories that Kammok has laid out in its letter to Kickstarter are baseless and are rights that Kammok either does not, or cannot, have: (1) Kammok claims copyright infringement but has not filed for a copyright application and therefore does not have a copyright registration – and even if Kammok had applied for protection, it would not be able to, as a matter of law have protection for simple useful product design elements; (2) Kammok claims trade dress infringement but the product design elements they claim are functional and cannot have the requisite distinctiveness to obtain trade dress protection; and (3) Kammok claims patent infringement but the required element of an *adjustable* footprint adjustment bar in the patent claims is simply not present in Anymaka's product which instead has a *fixed* pedestal. Anymaka is truly puzzled as to Kammok's claims but understands them for what they are: a bad faith "let's see what sticks" approach to then trying to wrangle Anymaka into settlement discussions.

Anymaka is willing to sit down at the negotiating table and discuss these issues, and in fact is interested in the high-level proposal that Kammok has made regarding an exclusive OEM relationship. Anymaka is not unreasonable but does require that any claims or assertions made to third parties regarding any kind of infringement be withdrawn before Anymaka is willing to explore a possible resolution. We look forward to your confirmation by Friday, August 25, 2023, that all such claims or assertions, including the one made to Kickstarter, have been withdrawn so that we can continue discussions on the OEM

8



relationship and really delve into the details of what would make that type of arrangement mutually beneficial to both parties. Please do let me know if you have any questions.

This letter and the content in it are a non-exhaustive list of claims and defenses and do not constitute a waiver of Anymaka's rights, all of which are expressly reserved.

Best regards,

Nihat Deniz Bayramoglu
Attorney at Law
*Licensed in California, Nevada, Washington D.C., and*
*The United States Patent and Trademark Office*
Bayramoglu Law Offices LLC

9