## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:23-cv-02405-SKC-TPO

KAMMOK HOLDINGS, LLC,

      Plaintiff,

v.

EASTHILLS, INC., and DOES 1–10.

      Defendants

---

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND COMPLAINT

---

Pursuant to Local Rule 7.1(d), plaintiff and counterclaim defendant Kammok Holdings, LLC ("Kammok") submits this reply memorandum in support of its second motion for leave to amend its complaint (the "Motion") (ECF No. 110).

## <u>INTRODUCTION</u>

Defendant Easthills, Inc. ("Easthills") concedes that most of the motion to amend factors favor Kammok. Instead of challenging those factors, Easthills limits its opposition to a single argument: that Kammok somehow unduly delayed its decision to add Anymaka Limited ("Anymaka Ltd.") as a defendant. Easthills's argument fails. Kammok has presented an adequate reason for the timing of the Motion, which is unrebutted by the scant evidence cited in Easthills's opposition. Kammok took diligent efforts to discover all relevant infringing activity but was

unable to discover Anymaka Ltd.'s infringing activity because Easthills took active steps to obfuscate Anyamaka Ltd.'s role in the infringement scheme. Thus, Kammok did not unduly delay its request to bring a patent infringement claim against Anymaka Ltd., and the Court should grant the Motion.

## ARGUMENT

## I.    KAMMOK DID NOT UNDULY DELAY THE PROPOSED AMENDMENT TO ADD ANYMAKA LTD. AS A DEFENDANT.

The Court should grant Kammok leave to amend its complaint because Kammok did not unduly delay its request to add Anymaka Ltd. as a defendant. Under Rule 15's lenient standards, "leave to amend 'shall be freely given when justice so requires.'" *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127 (10th Cir. 1987)). The reason for this is to "provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citation omitted).

While "'undue delay' [is] one of the justifications for denying a motion to amend," when courts examine this factor, they place "[e]mphasis on the adjective: Lateness does not of itself justify the denial of the amendment." *Id.* at 1205. In other words, the question is whether the delay was "undue," an inquiry that "focuses primarily on the reasons for the delay." *Id.* at 1206. A party has generally engaged in undue delay only when it "has <u>no</u> adequate reason for the delay." *Midcities Metro.*

*Dist. No. 1 v. U.S. Bank Nat. Ass'n*, 44 F.Supp.3d 1062, 1067 (D. Colo. 2014) (quoting *Minter*, 451 F.3d at 1206) (emphasis added).  One example of the <u>lack</u> of an adequate reason for delay occurs when a party "knew or should have known <u>long before</u>" filing their motion that a certain party "was a possible defendant."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993) (emphasis added).

In the Motion, Kammok set forth an adequate reason for its delay in bringing a claim against Anymaka Ltd.: Kammok was unaware of Anymaka Ltd. or its role in the patent infringement scheme until the deposition of the CEO of Easthills.  Neither of the two documents that Easthills cites in its opposition to the Motion undermines this point.  Additionally, Kammok was diligent in its attempts to discover all infringing activity.  On these bases, and based on the arguments raised in the Motion, the Court should grant Kammok leave to add Anymaka Ltd. as a defendant.

### A. Kammok Has Presented an Adequate Reason for the Delay in Seeking to Add Anymaka Ltd. as a Defendant.

In its opposition, Easthills failed to cite any evidence demonstrating that Kammok knew or should have known that Anymaka Ltd. was engaged in patent infringement prior to the deposition of Easthills's CEO.  In its opposition, Easthills points to only two pieces of evidence that it argues should have put Kammok on notice of Anymaka Ltd.'s infringing activity:  (1) a Hong Kong address that was eventually listed on the www.anymaka.com website (the "website") and (2) two invoices that list "Anymaka Limited" as a party to the transaction.  Neither of these pieces of evidence placed Kammok on notice of Anymaka Ltd.'s infringing activity.

First, the website did not put Kammok on notice of Anymaka Ltd.'s activity because it was not updated until after Kammok had already filed suit. Kammok filed suit against Easthills on September 14, 2023. Easthills does not argue that, as of that date, the website listed any Hong Kong address. Instead, through the declaration of Emily Heim, Easthills argues that, at the latest, the website listed a Hong Kong address on December 8, 2023—nearly three months after Kammok filed its complaint, *see* ECF No. 1, one month after Easthills filed its answer and counterclaim, *see* ECF No. 9, and a week after Kammok answered Easthills's counterclaim, *see* ECF No. 14. With the litigation well underway, it is unreasonable to expect Kammok to monitor Easthills's website, nor to assume that the mere reference to a new contact address on the website—without any reference to a new company—means that a third party has stepped into the shoes of Easthills for the purpose of infringing on Kammok's patent rights. This is particularly true where, as here, the website continued to maintain a Colorado address, which implies continued association with Easthills. A plaintiff should not have to expect that a defendant— or the defendant's CEO—will create new companies with which to injure the plaintiff while litigation is ongoing.

However, even if Kammok had found the Hong Kong address on the website and had investigated it, Easthills has put forth no evidence that the address listed on the website belonged to Anymaka Ltd. The Hong Kong address on the website differs from the one contained on the invoices presented as defendant's Exhibit B. *Compare*

ECF No. 113-2 ("Flat 1512, 15/F, Lucky Center, No. 165-171 Wan Chai Road, Wan Chai, Hong Kong" (capitalization removed)), *with* ECF No. 113-3 ("Flat 721, 7/F, Liven House, No.61-63 King Yip Street, Kwun Tong, Kowloon, Hong Kong" (capitalization removed)).  Thus, it is not apparent, and Easthills does not argue, that the address on the website was in fact an address that was owned by or in any way associated with Anymaka Ltd.  The existence of a foreign address alone is not such that a plaintiff should be expected to assume that the defendant has offshored all of its bad acts to a foreign entity.  Moreover, Easthills does not, or perhaps cannot, explain how the address on the website should have led Kammok to the conclusion that Anymaka Ltd. had taken over the sale of the infringing Anymaka hammock stand. This underscores how convoluted the relationship between Easthills and Anymaka Ltd. really is.  Kammok should not be penalized for the choice that Easthills and Anymaka Ltd. made to obscure Anymaka Ltd.'s involvement in the patent infringement scheme.

Second, the Anymaka Ltd. invoices fail to demonstrate that Anymaka Ltd. had taken over Easthills's role in selling the Anymaka stand.  The main issue with the invoices is that Easthills produced documents that were apparently billed to Anymaka Ltd.  *See* ECF No. 113-1 at ¶ 4 (explaining that Easthills served the invoice on Kammok).  As shown in the Motion, Easthills's counsel had already used "Anymaka" as another name for Easthills Inc.  ECF No. 110 at 4.  Thus, when Easthills produced invoices billed to "Anymaka" in response to a request for

5

production about Eashills's damages claims, Kammok reasonably believed that the "Anymaka Limited" listed on the invoice was not a separate entity from Easthills. *See* Plaintiff's Exhibit 8 (Easthills's Discovery Responses) (citing defendant's Exhibit B—bates labeled 461–62—in response to request for production no. 14). It is not uncommon for an invoice to be addressed to the DBA of a company rather than the company's formal, legal name.

Moreover, if Easthills and Anymaka Ltd. are in fact materially distinct entities, and not merely shells for Eric Lin, then it is unclear why Easthills has access to Anymaka Ltd. invoices or how a payment made by Anymaka Ltd. can constitute damages incurred by Easthills. Indeed, Easthills's argument that the two invoices should have put Kammok on notice of Anymaka Ltd.'s involvement raises more questions about the relationship between the entities than it answers.

However, even if Kammok had immediately realized that the reference to "Anymaka Limited" in the invoices was a reference to a separate entity from Easthills, the invoices do not provide sufficient information for Kammok to have known that Anymaka Ltd. was infringing on Kammok's patent. The invoices are for a prepayment and final payment for unspecified "videos and photos." ECF No. 113-3 (capitalization omitted). Thus, without further context—and Easthills's discovery responses fail to provide any additional context—it would have been just as reasonable for Kammok to have assumed that Anymaka Limited is the advertising branch of the Anymaka companies as it would be for Kammok to have assumed that

Anymaka Limited had taken over all sales of the Anymaka stand. The payment for photos and videos alone did not put Kammok on notice that Anymaka Limited was selling the Anymaka stand and thereby infringing Kammok's patent. Here too, the discovery raised more questions than answers—questions for which Kammok was unable to obtain answers until Easthills's deposition.

Yet, Easthills argues that Kammok should have been more diligent in its discovery of Anymaka Ltd.'s role. Setting aside all the previously identified ways in which Easthills actively obscured Anymaka Ltd.'s role in the sale of the Anymaka stand, Kammok did attempt to confirm who was selling the Anymaka stand. In Kammok's first set of written discovery requests, Kammok asked Easthills to "[i]dentify every sale of the Anymaka that you have made since the Campaign began," where the term "you" was defined as "Easthills together with its respective representatives, agents, counsel, employees, and Affiliates." Plaintiff's Exhibit 9 at 2, 6 (Kammok Discovery Request) (emphasis supplied). In its response issued on February 12, 2024, and never supplemented, Easthills failed to acknowledge that its affiliate, Anymaka Ltd.—a company that is selling the product that Easthills claims to have developed and that shares ownership with Easthills—had sold the infringing hammock stands via a website previously used by Easthills. Plaintiff's Exhibit 10 at 6–7 (Easthills's Discovery Responses). Easthills received a discovery request that should have revealed Anymaka Ltd.'s involvement, but Easthills failed to identify that involvement. Easthills cannot now complain that Kammok failed to learn of

Anymaka Ltd.'s role earlier, when Easthills was aware of the potential claim against Anymaka Ltd. but took steps that actively obscured that claim from Kammok.

The Court should grant Kammok leave to amend as requested in Kammok's motion because Easthills's attempts to hide Anymaka Ltd.'s role in the infringement scheme is a more than adequate reason for Kammok's delay in raising a claim against Anymaka Ltd.

### B. Kammok Was Diligent in Its Efforts to Discover All Infringing Behavior.

Kammok did not delay its claim against Anymaka Ltd. because it took reasonable steps to discover all relevant infringing activity. Easthills cites *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000 (10th Cir. 2018), and *Cook v. Howard*, 484 Fed. Appx. 805 (4th Cir. 2012) (unpublished), to argue that Kammok was not sufficiently diligent in discovering Anymaka Ltd.'s role in the infringing activity. Both cases are readily distinguishable from the case at hand.

In *Husky Ventures*, the defendants sought leave to file amended counterclaims and were granted leave to "submit proposed amended filings by February 24, 2016." 911 F.3d at 1018. The defendants apparently failed to submit the proposed amendments in time, instead waiting until October 27, 2016, about eight months after the court-imposed deadline and after the close of discovery, to file a motion seeking more "time in which to amend the counterclaims." *Id.* at 1019. The defendants sought leave to amend based on what defendants described as "'new' information" that would allow defendants to bring claims against parties who had not

previously been named in the lawsuit.  *Id.* at 1020.  However, six months before the
motion for leave to time to amend was filed, one of the defendants had threatened to
sue the parties that defendants now proposed to join.  *Id.*  Defendants sent additional
emails that "evinced [defendants'] knowledge of potential claims against" the people
that they sought to add through the motion for more time.  *Id.*  Thus, defendants had,
in writing, acknowledged that they were aware of the claims that they were seeking
to add and had been for at least six months before filing their motion.  In this context,
the 10th Circuit wrote that "even if [defendants] had not known the full extent of
these litigation possibilities earlier, [they] squandered any opportunity to raise those
claims by not diligently investigating the facts necessary to bring them."  *Id.* at 1021.

In *Husky Ventures*, the defendants squandered the opportunity to raise claims
by not diligently investigating parties whom they knew they had claims against.
That is not the case here.  Kammok had no genuine notice of Anymaka Ltd. or their
infringing activity until January 2025, when Kammok was finally able to depose
Easthills's principals.  As soon as Kammok learned that Anymaka Ltd. was selling
the infringing product, Kammok immediately began working to bring claims against
the company, first by negotiation with Easthills and then, when those negotiations
failed, by filing the Motion.  *See* ECF No. 110 at 8.  Moreover, as of the present time,
fact discovery has not yet completed.  Depositions of Kammok principals are
scheduled to occur in May 2025.  Kammok has been diligent in its efforts to bring a

claim against Anymaka Ltd. and should not be punished for Easthills's obfuscatory behavior.

*Cook* is also distinguishable from the present matter. In *Cook*, the appellants included the family of a man who was alleged to have been killed as the result of police misconduct. In that case, the appellants had originally listed John Does 1 and 2 as defendants. 484 Fed. Appx. at 809. Appellants filed a motion "seven weeks after the [] deadline set in the scheduling order for amending the pleadings and joining parties" to file a motion to substitute the names of two officers for defendants John Does 1 and 2. *Id.* at 814. The motion was denied because "the record show[ed] an overall lack of diligence on the Appellants' part" to identify the names of John Doe officers. *Id.* at 816. This lack of diligence was found in part because the appellants "knew the identities of at least five individuals who had information relevant to the" event in which the underlying plaintiff was killed. *Id.* In other words, the appellants knew "there were as-yet-unidentified individuals involved in the events they alleged occurred . . . [but] the Appellants did not pursue any discovery that would have allowed them to file a timely amendment of the complaint." *Id.* at 817.

Naturally, if a person is killed by the police, the estate should ask for the names of each police officer who was present when the decedent was killed. But that too is distinct from the facts at hand. Unlike in *Cook,* where the claims rose from a singular, one-time event, the claims in this case are based on an infringement that takes place each time an infringing product is sold. This required Kammok to engage in discovery

10

to find out when and how sales were being made. Kammok did so, including asking Easthills to identify sales made by Easthills and its affiliates. *See* Point I(A), above. Easthills refused then and thereafter to identify sales made by Anymaka Ltd., thus causing Kammok to reasonably believe that only Easthills was involved in the sale of an infringing product.

In both cases cited by Easthills, the party who requested leave to amend its pleading delayed its request for amendment until after the amendments deadline passed, even though it had some knowledge that it had claims against an unnamed party. Here, by contrast, Kammok did not have any knowledge of Anymaka Ltd.'s role in the infringement, and what's more, Kammok filed its motion before fact discovery was closed.[1] Thus, Easthills has failed to cite any case supporting its contention that Kammok's actions were not sufficiently diligent.

## CONCLUSION

Based on the foregoing, the Court should grant Kammok's second motion for leave to amend its complaint.

---

[1] Easthills objects to the timing of the Motion, noting that based on the current scheduling order, the parties would not have sufficient time to propound new discovery. *See* ECF No. 113 at 4. However, this is not a sufficient reason to deny the Motion. *See Minter*, 451 F.3d at 1205 ("Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action."). Should the Court grant Kammok's request for leave to amend, the parties can, with input from the Court, determine a new schedule that gives all parties sufficient time to conduct discovery.

DATED this 1st day of May, 2025.

BY:    /s/ Dominic W. Shaw

Reid Allred
reid@cambridgelaw.com
Douglas Marsh
doug@cambridgelaw.com
CAMBRIDGE LAW, LLC
4610 South Ulster Street, Suite 150
Denver, Colorado 80237
303.488.3338

Erik A. Olson
eolson@mohtrial.com
Dominic W. Shaw
dshaw@mohtrial.com
MARSHALL OLSON & HULL, P.C.
Newhouse Building
Ten Exchange Place, Suite 350
Salt Lake City, Utah 84111
801.456.7655

*Attorneys for Plaintiff*