IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02405-SKC-TPO

KAMMOCK HOLDINGS, LLC,

    Plaintiff,

v.

EASTHILLS, INC.,

    Defendant.

---

### ORDER RE: DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11 (DKT. 86)

---

The parties and their counsel have shared an overly caustic relationship in this litigation. Defendant previously sought Rule 11 sanctions against Plaintiff but later withdrew the request after Plaintiff filed its Amended Complaint dropping its copyright infringement claim. Dkts. 19, 38, 40. Then, Defendant asserted new counterclaims against Plaintiff's *counsel*, which the Court struck on Plaintiff's motion. Dkts. 41, 55.[1]

Now before the Court is Defendant's Motion making a second attempt at Rule 11 sanctions against Plaintiff and its counsel. Dkt. 86. Defendant seeks monetary and

---

[1] While the Court ordered the parties to confer about Defendant's proposed new counter-defendants and counterclaims and gave leave to refile the stricken portion after conferral, Defendant has not renewed its request. Dkt. 55.

1

non-monetary sanctions against Plaintiff and its attorneys for their alleged inadequate pre-suit investigation. *Id.* at p.3. The Court has considered the Motion and its related briefing (Dkts. 92, 95), the docket, and relevant law. No hearing is necessary. The Motion is DENIED as explained below.

### A. LEGAL STANDARDS

Rule 11 provides that by presenting a pleading, written motion, or other paper, to the court, "an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances;" (1) the filing is not presented for any improper purpose; (2) the claims and legal contentions are warranted by existing law or a non-frivolous argument for the extension, modification, or reversal of existing law; and, (3) "the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b).

Rule 11 establishes a standard of objective reasonableness. *Adamson v. Bowen*, 855 F.2d 668, 673 (10th Cir. 1988). The test for imposition of Rule 11 sanctions is whether counsel's conduct was reasonable under the circumstances of the case. *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). It does not require a finding of subjective bad faith on the part of the offending attorney. *Cf. Scott v. Boeing Co.*, 204 F.R.D. 698, 700 (D. Kan. 2002) (noting that an attorney's subjective good

2

faith belief in the merits of an argument will not suffice to satisfy the standard of objective reasonableness).

Ultimately, Rule 11 seeks to curb abuses of the litigation process. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991). It is not intended to function as a fee-shifting provision or to reward parties who are victimized by litigation. *See, e.g., Tidik v. Ritsema*, 938 F. Supp. 416, 426 (E.D. Mich. 1996); *Watson v. City of Salem*, 934 F. Supp. 666, 667 (D.N.J. 1996).[2]

> [I]n determining whether (and what) sanctions are appropriate, a court should consider: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant," [and] (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance." Before a court orders dispositive sanctions, it should also consider the efficacy of lesser sanctions.

*Grady v. Broderson*, No. 13-cv-00752-REB-NYW, 2015 WL 1384371, at *4 (D. Colo. Mar. 23, 2015) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)). "[T]he *Ehrenhaus* factors should be considered even in cases that do not involve dispositive sanctions." *Id.* (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 102 (D. Colo. 1996)). Further, the *Ehrenhaus* factors apply to sanctions

---

[2] Rule 11 imposes certain procedural requirements on parties seeking sanctions. A party must submit the motion for sanctions separately from other motions or requests and specifically describe the conduct that allegedly violates Rule 11(b). The party must serve the motion on the opposing party. If, after 21 days, the offending party does not withdraw the challenged conduct, the party seeking sanctions may then file its motion for sanctions with the court. *See* Fed. R. Civ. P. 11(c)(2). It is undisputed that Defendant complied with the procedural requirements of Rule 11 prior to filing the Motion. Dkt. 86, pp.15-16.

imposed under Rule 11. *Mallett v. Munoz*, No. 14-cv-02323-CMA-MJW, 2015 WL 3396660, at *11 (D. Colo. May 26, 2025) (citing *Mobley v. McCormick*, 40 F.3d 337, 340-41 (10th Cir. 1994)).

## B. ANALYSIS

Defendant argues Plaintiff violated three provisions of Rule 11: (1) Rule 11(b)(1) by presenting its patent infringement claim for an improper purpose; (2) Rule 11(b)(2) because its claim is not warranted under existing law; and (3) Rule 11(b)(3) by failing to perform a reasonable pre-filing investigation. Dkt. 86, pp.6, 14. Defendant wants Plaintiff's patent-infringement claim stricken and recovery of its reasonable attorney fees and costs incurred in filing the Motion. Dkt. 86, p.14. Plaintiff opposes the relief and also seeks its reasonable attorney fees and costs it incurred in defending against the Motion. Dkt. 92, pp.12-15.

### 1. Rule 11(b)(1)

Defendant claims Plaintiff and its counsel violated Rule 11(b)(1) because they asserted Plaintiff's patent infringement claim "solely to add unjustified credibility to its improper DMCA takedown notice submitted to Kickstarter." Dkt. 86, p.9. The Court quickly rejects this argument.

As Plaintiff points out, Defendant fails to direct the Court to any credible evidence demonstrating that Plaintiff asserted its patent infringement claim for an improper purpose. Dkt. 92, p.5. Defendant either merely asserts its position with no record or evidentiary cites, or proclaims Plaintiff's purported improper motive and

4

then cites allegations in its amended counterclaims.³ *See, e.g.,* Dkt. 86, p.13-14; Dkt. 96, at p.5 (citing Dkt. 41, p. 16, ¶37); *id.* at p.9 (citing same). Either way, the Court finds mere allegations are insufficient to support Rule 11 sanctions.

As evidence that the patent infringement claim is unwarranted, Defendant also points to the fact that Plaintiff "was forced to withdraw a major portion of the factual basis underlying its trade dress infringement claim" after it inspected Defendant's product. Dkt. 86, p. 10. But even assuming Defendant's contention is correct, which Plaintiff denies, trade dress claims are distinct from patent infringement claims. The Court, thus, denies Plaintiff's request for sanctions under Rule 11(b)(1).

### 2. Rule 11(b)(2) & (3)

Defendant spends more time arguing that the factual contentions underlying the patent infringement claim lacked evidentiary support at the time Plaintiff filed the Complaint. It adds to this that Plaintiff's counsel failed to perform a reasonable pre-filing patent infringement analysis. It claims this conduct violates Rules 11(b)(2) and (3).

"[A] critical piece of the Rule 11 sanction determination is whether an attorney's beliefs as to the law and the facts were formed after 'an inquiry reasonable under the circumstances.'" *O'Rourke v. Dominion Voting Sys. Inc.*, 552 F. Supp. 3d

---

³ Even more, prior to Defendant filing the instant Motion, the Court struck that particular allegation from Defendant's amended answer and counterclaims. Dkt. 55.

5

1168, 1186 (D. Colo. 2021). While Tenth Circuit precedent governs the imposition of Rule 11 sanctions, issues unique to patent law are informed by the Federal Circuit. *Cf. Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004) (citation omitted) ("In deciding issues not unique to our exclusive jurisdiction, we apply the law of the regional circuit in which the district court sits."). "In the context of patent infringement actions, [the Federal Circuit has] interpreted Rule 11 to require, at a minimum, that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Id.* at 1300-01 (citations omitted).

Defendant contends Plaintiff's pre-suit investigation was inadequate because Plaintiff did not physically obtain Defendant's product to examine it, thus rendering Plaintiff's counsel's infringement analysis insufficient. The Court, however, does not understand the Federal Circuit to have so strident a requirement that a plaintiff must physically inspect a potentially infringing product. Rather, the Federal Circuit has been clear: "we emphasize[ ] that '[t]he *presence of an infringement analysis plays the key role* in determining the reasonableness of the pre-filing inquiry made in a patent infringement case under Rule 11.'" *Id.* at 1302 (quoting *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)) (emphasis added). The *Q-Pharma* court explained its earlier decision in *View Engineering*:

> [Plaintiff] asserts that our decision in *View Engineering* [ ], makes clear that reliance on advertising as a basis for filing an infringement suit is not sufficient under Rule 11. We disagree with that characterization of *View Engineering*. In that case, we affirmed the district court's award of

6

> Rule 11 sanctions because the patentee's reliance on the accused infringer's advertising statements *alone* did not provide an *adequate factual basis* to support the patentee's infringement counterclaim. *Importantly, we held that sanctions were warranted because the patentee had not performed any claim construction analysis or an infringement analysis prior to filing its counterclaim for infringement.*

*Id.* (citations omitted; emphasis added).

Here, Plaintiff's counsel did perform a claim construction analysis by comparing Plaintiff's patent with information that was publicly available about Defendant's product, namely photographs, videos, and gifs published by Defendant (*i.e.*, advertising). Dkt. 92-1, ¶¶8-14; Dkt. 92-3. And as Plaintiff also explains, Defendant's product was not commercially available at the time because it was in a pre-production, funding stage. Dkt. 92-1, ¶¶9-10.

Defendant counters that Plaintiff's "failure to obtain, or even request a sample of [Defendant's product], before initiating this lawsuit" is further evidence of a faulty pre-suit investigation. Dkt. 95, p.2. And it rejects the concept that comparing a patent with advertising about a potentially infringing product can satisfy Rule 11. *Id.* at p.4. While Defendant attempts to distinguish *Q-Pharma*, which Plaintiff cites for the idea that a pre-suit investigation examining advertising materials can be adequate, Defendant misses the mark. While the *Q-Pharma* plaintiff obtained a sample of the allegedly infringing product, it conducted no analysis or reverse engineering on it and instead relied on the product's advertising, labeling, and the ingredients listed there to underpin its patent infringement analysis. *Q-Pharma*, 360 F.3d at 1301-02. The court found the *Q-Pharma* plaintiff "did not file suit based solely on [Defendant's]

7

advertising; critically, it also relied on its own comparison of the asserted claims with the accused product." *Id.* at 1302.

Defendant also contends that Plaintiff's pre-suit infringement notice letter and analysis sent to Defendant shows that Plaintiff's infringement analysis was deficient. Dkt. 86, p.12-13 (citing *Network Caching Tech. LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2002 WL 3212612, at *5-6 (N.D. Cal. Aug 13, 2002)). But the *Network Caching* court noted that the plaintiff there provided "no link between the quoted [marketing literature] passages and the infringement contention that simply mimics the language of the claim." *Network Caching*, 2002 WL 3212612, at *6. Here, Plaintiff's counsel used color-coding in his chart to identify which parts of Plaintiff's patent claim correspond to which parts of Defendant's product. Dkt. 92-3, pp.3-4. The Court finds this, in combination with the rest of patent counsel's pre-suit infringement analysis (*see* Dkt. 92-1, ¶¶12-16), is sufficient for purposes of a pre-suit investigation of potential patent infringement.

The fact that Plaintiff did not obtain a sample of Defendant's product prior to filing suit is not dispositive. Defendant has not directed the Court to any authority in which a party was liable for Rule 11 sanctions for failing to compare an allegedly infringing product with a sample of that product where the product was not commercially available. The Court finds the fact that Defendant's product was not commercially available is important to this Rule 11 analysis. Nor is the Court persuaded by Plaintiff's failure to request a sample or technical specifications from

8

Defendant. Indeed, given the contentious nature of this litigation, the Court's clairvoyance gleans that Defendant would have rejected any such request. To be sure, Defendant never made an offer to Plaintiff to inspect its product or the technical specifications during their pre-suit conferrals.

In sum, "[c]laim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language." *Q-Pharma*, 360 F.3d at 1301. And "it is not for [the Court] to determine whether [Plaintiff's] pre-filing interpretation of the asserted claims was correct, but only whether it was frivolous." *Id.* (citation omitted). Thus, to complete the *Ehrenhaus* factors analysis, the Court finds: (1) Defendant suffered no prejudice because the pre-suit investigation, both factual and legal, was adequate under the circumstances; (2) Plaintiff's pre-suit investigation caused no interference with the judicial process; (3) Plaintiff is not culpable; and (4) the Court has not warned any party in advance of any potential Rule 11 sanctions in this regard.[4]

---

[4] Defendant argues, "[o]nce a litigant moves for a Rule 11 sanction, the burden of proof shifts to the non-movant to show it made a reasonable pre-suit inquiry into its claim." Dkt. 86, p.7 (citing *Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007). The Court notes, however, that *Diego* originated from the District Court for the Western District of Washington and thus is not controlling here. *Diego*, 505 F.3d at 1365; *see also Q-Pharma*, 360 F.3d at 1299 (Tenth Circuit precedent governs the imposition of Rule 11 violations). The Court, however, has not located any Tenth Circuit authority on which party has the burden under a Rule 11 motion asserting an inadequate pre-suit investigation. In any case, Rule 11 sanctions are not warranted here, regardless of who is burdened.

9

"The imposition of Rule 11 sanctions is properly reserved for exceptional circumstances . . . ." *United States ex rel. Maxwell v. Kerr Mc-Gee Oil & Gas Corp.*, 2010 WL 582393, at *8 (D. Colo. Feb. 17, 2010) (citation omitted). There are no exceptional circumstances here.

The Motion is DENIED. The Court FURTHER DENIES Plaintiff's request to be awarded its attorney fees and costs associated with defending against the Motion.

DATED: July 22, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge